## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and**<br><br>**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305**<br><br>    *Plaintiffs,*<br><br>    **v.**<br><br>**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and**<br><br>**DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs**<br><br>    *Defendants.* | **Case No. 1:25-cv-00583-MRD-PAS** |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

6020859

Plaintiffs write to inform this Court of the Ninth Circuit's order, issued today and submitted with this letter as Exhibit A, vacating the preliminary injunction in *Am. Fed'n of Gov't Emps., et al., v. Trump, et al.*, No. 3:25-cv-3070 at Dkt. 60 (N.D. Cal.), which the Parties to this case call "*AFGE II*" in the Motion for Preliminary Injunction briefing (*see* Dkt. 19 at 9 n.1).

As is relevant to this case, the Ninth Circuit rejected the government's channeling defense. *See* Exhibit A at 18–19. As to the *Winter* analysis, the Ninth Circuit's *Mt. Healthy* analysis relates solely to the President's issuance of Executive Order 14251. Secretary Collins's April 11, August 6, and November 7 actions did not form part of the *AFGE II*'s plaintiffs' claims, and the Ninth Circuit did not review those actions. The record before the Ninth Circuit did not include any of the VA-specific evidence that Plaintiffs have submitted in this case. As the concurrence notes, the Ninth Circuit's review was confined to a narrow record, and the Ninth Circuit's disposition is not case dispositive.

6020859

Respectfully submitted,

Dated: February 26, 2026

By:     /s/ Carly Beauvais Iafrate
        Carly Beauvais Iafrate, #6343
        Law Office of Carly B. Iafrate, PC
        408 Broadway, 1st Fl.
        Providence, RI 02909
        (401) 421-0065
        ciafrate@verizon.net


By:     /s/ Travis Silva
        Brook Dooley (pro hac vice)
        Travis Silva (pro hac vice)
        Taylor Reeves (pro hac vice)
        JiLon Li (pro hac vice)
        Alexandra Wheeler (pro hac vice)
        KEKER, VAN NEST & PETERS LLP
        633 Battery Street
        San Francisco, CA 94111-1809
        Telephone:  415 391 5400
        Facsimile:  415 397 7188
        BDooley@keker.com
        TSilva@keker.com
        TReeves@keker.com
        JLi@keker.com
        AWheeler@keker.com


        *Attorneys for American Federation of
        Government Employees National VA
        Council and American Federation of
        Government Employees Local 2305*

2

6020859

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, I electronically filed the foregoing document(s), and they are available for viewing and downloading from the Court's CM/ECF System, and that all participants in the case are registered CM/ECF users and that service will be accomplished by CM/ECF system.

/s/ Travis Silva
_____
Travis Silva

6020859

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; NATIONAL NURSES ORGANIZING COMMITTEE - NATIONAL NURSES UNITED; SERVICE EMPLOYEES INTERNATIONAL UNION; NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.; NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO; AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO, | No. 25-4014 |
| | D.C. No. 3:25-cv-03070-JD |
| *Plaintiffs - Appellees*, | OPINION |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture; UNITED | |

STATES DEPARTMENT OF
DEFENSE; PETER HEGSETH, in
his official capacity as U.S. Secretary
of Defense; UNITED STATES
DEPARTMENT OF ENERGY;
CHRIS WRIGHT, in his official
capacity as Secretary of Energy;
UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES; ROBERT F. KENNEDY,
Jr., in his official capacity as
Secretary of Health and Human
Services; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, in her
official capacity as Secretary of
Homeland Security; UNITED
STATES DEPARTMENT OF
HOUSING AND URBAN
DEVELOPMENT; SCOTT
TURNER, in his official capacity as
Secretary of the U.S. Department of
Housing and Urban Development;
DOJ - UNITED STATES
DEPARTMENT OF JUSTICE;
PAMELA BONDI, Attorney General,
in her official capacity as U.S.
Attorney General; UNITED STATES
DEPARTMENT OF THE
INTERIOR; DOUG BURGUM, in
his official capacity as Secretary of
the Interior; LORI CHAVEZ-
DEREMER, in her official capacity

as Secretary of Labor; MARCO
RUBIO, in his official capacities as
U.S. Secretary of State and Acting
Administrator for the U.S. Agency
for International Development;
UNITED STATES DEPARTMENT
OF THE TREASURY; SCOTT
BESSENT, in his official capacity as
U.S. Secretary of the Treasury;
UNITED STATES DEPARTMENT
OF TRANSPORTATION; SEAN
DUFFY, in his official capacity as
Secretary of Transportation; UNITED
STATES DEPARTMENT OF
VETERANS AFFAIRS; DOUG
COLLINS, in his official capacity as
U.S. Secretary of Veterans Affairs;
UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY; LEE ZELDIN, in his
official capacity as Administrator of
the U.S. Environmental Protection
Agency; UNITED STATES
GENERAL SERVICES
ADMINISTRATION; STEPHEN
EHIKIAN, in his official capacity as
Acting Administrator of the General
Services Administration; NATIONAL
SCIENCE FOUNDATION; SOCIAL
SECURITY ADMINISTRATION;
CHARLES EZELL, in his official
capacity as Acting Director of the
U.S. Office of Personnel

Management; UNITED STATES
DEPARTMENT OF STATE;
UNITED STATES AGENCY FOR
INTERNATIONAL
DEVELOPMENT; SETHURAMAN
PANCHANATHAN, in his official
capacity as Director of the U.S.
National Science Foundation; U.S.
INTERNATIONAL TRADE
COMMISSION; AMY A. KARPEL,
in her official capacity as Chair of the
U.S. International Trade
Commission; LELAND DUDEK,
Acting Commissioner of Social
Security, in his official capacity as
Acting Commissioner of the Social
Security Administration; UNITED
STATES DEPARTMENT OF
EDUCATION; LINDA MCMAHON,
in her official capacity as Secretary of
Education,

*Defendants - Appellants*.

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted January 12, 2026
Pasadena, California

Filed February 26, 2026

Before: John B. Owens, Bridget S. Bade, and Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress;
Concurrence by Judge Owens

## SUMMARY[*]

### Preliminary Injunction / Labor Law

The panel vacated the district court's preliminary injunction enjoining President Trump's Executive Order 14,251, which excludes certain federal agencies and subdivisions from collective bargaining requirements under the Federal Service Labor-Management Relations Statute (FSLMRS) based on national security concerns.

The FSLMRS protects the rights of federal employees to join labor unions, but exempts several federal agencies from coverage and authorizes the President to exclude other agencies and subdivisions from coverage based on national security considerations. Invoking 5 U.S.C. § 7103(b)(1), the President determined that certain agencies "have as a primary function intelligence, counterintelligence, investigative, or national security work," and that the FSLMRS "cannot be applied to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations."

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Under Executive Order 14,251, the agencies designated
for exclusion include, *inter alia*, the Departments of State,
Justice, and Veterans Affairs, the EPA, nearly all of the
Departments of Energy, Defense, and Treasury, and various
subdivisions of the Departments of Agriculture, Homeland
Security, and Health and Human Services.

Plaintiffs, six unions representing roughly 800,000
federal civilian employees, sued the President and various
other federal defendants, alleging that Executive Order
14,251 constituted First Amendment retaliation, as well as
other claims. The district court preliminarily enjoined
Executive Order 14,251 based solely on plaintiffs' First
Amendment retaliation claim, finding a serious question as
to whether Executive Order 14,251 served to retaliate
against the plaintiff unions for filing lawsuits against and
publicly criticizing the current Administration.

The panel agreed with the district court that it had
jurisdiction over this case. Although the government
maintained that plaintiffs should have filed these claims
before the Federal Labor Relations Authority, the panel
explained that it was not "fairly discernible" that Congress
meant for unions representing employees excluded from the
statutory scheme to nonetheless use that scheme to challenge
their exclusion.

Turning to the merits, the panel concluded that plaintiffs
had not demonstrated a likelihood of success or serious
questions on the merits of plaintiffs' retaliation claim.
Assuming without deciding that plaintiffs made out a prima
facie case of retaliation, the panel held that on this record the
government has shown that the President would have taken
the same action even in the absence of the protected conduct.
Executive Order 14,251 discloses no retaliatory animus on

its face and instead expresses that the President's primary concern with union activity was its interference with national security. Accordingly, because Executive Order 14,251 has a legitimate grounding in national security concerns, apart from any retaliatory animus, the government on the existing record has shown that the President would have taken the same actions in the absence of the asserted retaliatory intent.

Because plaintiffs failed to show a likelihood of success on the merits, the panel did not need to consider the remaining preliminary injunction factors—irreparable harm, the balance of equities, and the public interest—but if the panel were to consider those factors, the government has the edge.

Concurring, Judge Owens wrote separately to note that the panel was reviewing a preliminary injunction, which potentially is a distinction with a difference. Because the review of a preliminary injunction is limited to the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, the disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits.

## COUNSEL

Ramya Ravindran (argued), Lane M. Shadgett, J. Alexander
Rowell, and Abigail V. Carter, Bredhoff & Kaiser PLLC,
Washington, D.C.; Catha Worthman and Daniel M.
Feinberg, Feinberg Jackson Worthman & Wasow LLP,
Berkeley, California; Rushab Sanghvi, Office of the General
Counsel, American Federation of Government Employees,
Washington, D.C.; for Plaintiffs-Appellees.

Joshua M. Koppel (argued), Melissa N. Patterson, Tyler J.
Becker, Andrew M. Bernie, and Benjamin T. Takemoto,
Attorneys; Eric D. McArthur, Deputy Assistant Attorney
General; Brett A. Shumate, Assistant Attorney General;
United States Department of Justice, Washington, D.C.;
Defendants-Appellants.

Asim M. Bhansali, Kate E. Lazarus, and Scott W. Taylor,
Kwun Bhansali Lazarus LLP, San Francisco, California;
Elena Goldstein, Democracy Forward Foundation,
Washington, D.C.; for Amici Curiae Former Senior National
Security Officials and Advisors, and Other Interested
Parties.

Nicholas F. Soares, Katheen L. Millian, and Molly
Bernstein, Terris Pravlik & Millian LLP, Washington, D.C.,
for Amici Curiae American Civil Liberties Union &
American Civil Liberties Union of Northern California.

Harold C. Becker and Norman L. Eisen, Democracy
Defenders Fund, Washington, D.C., for Amici Curiae
Former Cabinet Secretaries, Agency Heads, and Other
Federal Officers and Employees.

Barry Winograd, Arbitrator & Mediator, Oakland,
California; Matthew W. Finkin, College of Law, University

of Illinois, Champaign, Illinois; Joshua M. Javits, Arbitrator & Mediator, Washington, D.C.; for Amicus Curiae National Academy of Arbitrators.

Paul Dimick and Madeleine Demeules, Assistant Attorneys General; Elizabeth C. Kramer, Solicitor General; Keith Ellison, Minnesota Attorney General; Minnesota Office of the Attorney General, St. Paul, Minnesota; Kristin K. Mayes, Arizona Attorney General, Office of the Arizona Attorney General, Phoenix, Arizona; Rob Bonta, California Attorney General, Office of the California Attorney General, Oakland, California; Philip J. Weiser, Colorado Attorney General, Office of the Colorado Attorney General, Denver, Colorado; William Tong, Connecticut Attorney General, Office of the Connecticut Attorney General, Hartford, Connecticut; Kathleen Jennings, Delaware Attorney General, Office of the Delaware Attorney General, Wilmington, Delaware; Brian L. Schwalb, District of Columbia Attorney General, Office of the District of Columbia Attorney General, Washington, D.C.; Anne E. Lopez, Hawai'i Attorney General, Office of the Hawai'i Attorney General, Honolulu, Hawai'i; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Anthony G. Brown, Maryland Attorney General, Office of the Maryland Attorney General, Baltimore, Maryland; Andrea J. Campbell, Massachusetts Attorney General, Office of the Massachusetts Attorney General, Boston, Massachusetts; Dana Nessel, Michigan Attorney General, Office of the Michigan Attorney General, Lansing, Michigan; Aaron D. Ford, Nevada Attorney General, Office of the Nevada Attorney General, Carson City, Nevada; Matthew J. Platkin, New Jersey Attorney General, Office of the New Jersey Attorney General,

Case: 25-4014, 02/26/2026, DktEntry: 84.1, Page 10 of 27
5-cv-00583-MRD-PAS   Document 26   Filed 02/26/26   Page 15 of 32 P
1958

10          AM. FED'N OF GOV'T EMPLOYEES V. TRUMP

Trenton, New Jersey; Letitia James, New York Attorney
General, Office of the New York Attorney General, New
York, New York; Jeff Jackson, North Carolina Attorney
General, Office of the North Carolina Attorney General,
Raleigh, North Carolina; Dan Rayfield, Oregon Attorney
General, Office of the Oregon Attorney General, Salem,
Oregon; Peter F. Neronha, Rhode Island Attorney General,
Office of the Rhode Island Attorney General, Providence,
Rhode Island; Charity R. Clark, Vermont Attorney General,
Office of the Vermont Attorney General, Montpelier,
Vermont; Joshua L. Kaul, Wisconsin Attorney General,
Office of the Wisconsin Attorney General, Madison,
Wisconsin; Nicholas W. Brown, Washington Attorney
General, Office of the Washington Attorney General,
Olympia, Washington; for Amici Curiae Minnesota,
Arizona, California, Colorado, Connecticut, Delaware,
District of Columbia, Hawai'i, Illinois, Maine, Maryland,
Massachusetts, Michigan, Nevada, New Jersey, New York,
North Carolina, Oregon, Rhode Island, Vermont,
Washington and Wisconsin.

**OPINION**

BRESS, Circuit Judge:

On March 27, 2025, the President signed Executive Order 14,251, invoking his authority under 5 U.S.C. § 7103(b)(1) to exclude various federal agencies and subdivisions from collective bargaining requirements based on national security considerations. The district court preliminarily enjoined the Executive Order after concluding that the President issued it to retaliate against federal employee unions, in violation of the First Amendment. We stayed the district court's injunction pending appeal. *See Am. Fed'n of Gov't Emps. v. Trump* (*AFGE I*), 148 F.4th 648 (9th Cir. 2025) (per curiam). Consistent with the reasoning in our prior stay order, we now vacate the preliminary injunction.

I

A

As part of the Civil Service Reform Act of 1978 (CSRA), Congress enacted the Federal Service Labor-Management Relations Statute (FSLMRS) to "govern labor relations between the executive branch and its employees." *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) [hereinafter *AFGE 2019*]; *see also Ohio Adjutant Gen.'s Dep't v. FLRA*, 598 U.S. 449, 452 (2023). The FSLMRS is located within Title VII of the CSRA and Chapter 71 of Title 5 of the U.S. Code. *See AFGE 2019*, 929 F.3d at 752; Pub. L. No. 95-454, § 701, 92 Stat. 1111 (1978) (codified at 5 U.S.C. §§ 7101–35).

In the FSLMRS, Congress found that "labor organizations and collective bargaining in the civil service

are in the public interest." 5 U.S.C. § 7101(a). The FSLMRS therefore "expressly protects the rights of federal employees 'to form, join, or assist any labor organization, or to refrain from any such activity,' and imposes on federal agencies and labor organizations a duty to bargain collectively in good faith." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 92 (1983) (first quoting 5 U.S.C. § 7102; and then citing 5 U.S.C. § 7116(a)(5), (b)(5)).

The FSLMRS exempts several federal agencies from coverage, including the FBI, the Government Accountability Office, and the CIA. 5 U.S.C. § 7103(a)(3). Importantly for this case, the statute also authorizes the President to exclude other agencies and subdivisions from coverage based on national security considerations. *See id.* § 7103(b)(1). This portion of the statute reads:

> The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that—
>
> (A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and
>
> (B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.

*Id.*; *see also Am. Fed'n of Gov't Emps. v. Reagan*, 870 F.2d 723, 725 (D.C. Cir. 1989). Since the FSLMRS was enacted

in 1978, every President other than President Biden has signed executive orders that exclude designated agency subdivisions from the FSLMRS under § 7103(b)(1). *See AFGE I*, 148 F.4th at 652.

On March 27, 2025, President Trump signed Executive Order 14,251 (EO 14,251). Exec. Order No. 14,251, 90 Fed. Reg. 14553 (Apr. 3, 2025). Invoking § 7103(b)(1), the President determined that certain agencies "have as a primary function intelligence, counterintelligence, investigative, or national security work," and that the FSLMRS "cannot be applied to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations." *Id.* § 1.

Under EO 14,251, the agencies designated for exclusion include, *inter alia*, the Departments of State, Justice, and Veterans Affairs, the EPA, nearly all of the Departments of Energy, Defense, and Treasury, and various subdivisions of the Departments of Agriculture, Homeland Security, and Health and Human Services. *Id.* § 2. The Executive Order exempted from exclusion "local employing offices of any agency police officers, security guards, or firefighters, provided that this exclusion does not apply to the Bureau of Prisons." *Id.* It appears that EO 14,251 is the largest single effort to date to exclude agencies and subdivisions from collective bargaining on national security grounds.

Upon issuing the Executive Order, the White House posted a "Fact Sheet" to the White House website. White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements* (Mar. 27, 2025), https://perma.cc/Y7HR-4W3H. The Fact Sheet emphasized that the President "is taking action to ensure that agencies

vital to national security can execute their missions without delay and protect the American people." It described how the various excluded agencies were involved in national security functions relating to national defense, border security, foreign relations, energy security, cybersecurity, and so on. The Fact Sheet further explained that collective bargaining agreements and "hostile Federal unions" were impeding national security, including by hamstringing agencies in their ability to address poor performance and employee misconduct.

Citing "widely fil[ed]" union grievances, the Fact Sheet also stated that "[c]ertain Federal unions have declared war on President Trump's agenda" and that "[t]he largest Federal union describes itself as 'fighting back' against Trump." The Fact Sheet further expressed that "President Trump supports constructive partnerships with unions who work with him" but "will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security missions."

The Office of Personnel Management (OPM) issued its own guidance on EO 14,251 in a memorandum addressed to the heads of federal departments and agencies. Memorandum from Charles Ezell, Acting Dir., Off. of Pers. Mgmt., to Heads and Acting Heads of Departments and Agencies (Mar. 27, 2025), https://perma.cc/QH4A-MQ9F (OPM Guidance). The OPM Guidance highlighted provisions of agency collective bargaining agreements (CBAs) that were inconsistent with the President's national security priorities, including provisions that limited performance accountability, return to in-person work, and large-scale reductions in force. OPM's Guidance explained, for example, that CBAs "often create procedural impediments to separating poor performers," and that these

and other CBA requirements interfered with the President's national security objectives.

## B

On April 3, 2025, six unions (collectively, AFGE), which represent roughly 800,000 federal civilian employees, sued the President and various other federal defendants, seeking to invalidate EO 14,251. AFGE asserted that EO 14,251 constituted First Amendment retaliation and viewpoint discrimination, exceeded the President's authority under § 7103(b)(1) (an ultra vires claim), and violated AFGE's due process, contract, and equal protection rights.

On June 24, 2025, the district court preliminarily enjoined EO 14,251 based solely on AFGE's First Amendment retaliation claim, which it viewed as the strongest. The district court found that AFGE "demonstrated a serious question" as to whether EO 14,251 served to retaliate against the plaintiff unions for filing lawsuits against and publicly criticizing the current Administration. The district court relied heavily on what it characterized as the Fact Sheet's expression of "a clear point of view that is hostile to federal labor unions and their First Amendment activities." While the district court stated that it would not "sit in judgment of the President's national security determinations," it concluded that the Order's invocation of the national security authority in § 7103(b)(1) did not rebut the nexus between EO 14,251 and the unions' protected speech. Because AFGE demonstrated a "serious question" going to the merits, and because the balance of the harms and the equities favored AFGE, the district court preliminarily enjoined EO 14,251.

The United States filed an emergency motion in this court to stay the district court's preliminary injunction. After

granting an administrative stay, we heard oral argument and
granted the government's motion for a stay pending appeal.
*See AFGE I*, 148 F.4th at 654. We concluded that even if
AFGE had made out a prima facie claim of retaliation, "on
this record the government has shown that the President
would have taken the same action even in the absence of the
protected conduct." *Id.* at 654–55 (citing *Mt. Healthy City
Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).
In our view, the Executive Order on its face did not express
retaliatory animus, but rather conveyed the "President's
determination that the excluded agencies have primary
functions implicating national security and cannot be
subjected to the FSLMRS consistent with national security."
*Id.* at 655.

In addition, and assuming we could look "beyond the
facial neutrality of the order" and consider the Fact Sheet,
we concluded that "the Fact Sheet conveys an overarching
objective of protecting national security through its
assessment that collective bargaining impedes the
functioning of agencies with national security-related
responsibilities." *Id.* (citation omitted). We therefore held
that the Executive Order and Fact Sheet "fairly indicate that
the President would have issued the Order, regardless of
[p]laintiffs' speech, based on the perceived impact of union
activities and collective bargaining on the sound operation
of agencies and subdivisions with national security-related
missions." *Id.* Because the government was likely to
succeed on the merits of the retaliation claim, and because
the balance of the harms and equities favored the

government, we stayed the district court's preliminary injunction pending appeal. *Id.* at 655–56.[1]

After full briefing and a second oral argument, we now consider the government's appeal of the preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We review the grant of a preliminary injunction for abuse of discretion but review underlying legal principles de novo. *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 934 (9th Cir. 2022). A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff is entitled to a preliminary injunction if it establishes a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *See id.* at 20. In the Ninth Circuit, a preliminary injunction is also appropriate when a "plaintiff demonstrates . . . serious questions going to the merits . . . and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (citation omitted).

II

As an initial matter, we agree with the district court that it had jurisdiction over this case. AFGE's claims plainly arise under federal law. *See* 28 U.S.C. § 1331. But the government maintains that plaintiffs should have filed these

---

[1] Our stay order was consistent with recent D.C. Circuit decisions staying two preliminary injunctions of Executive Order 14,251 involving ultra vires claims. *See Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) [hereinafter *NTEU*]; *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025).

claims before the Federal Labor Relations Authority (FLRA). *See* 5 U.S.C. § 7105(a)(1) (the FLRA "shall be responsible for carrying out the purpose of this chapter"); *see also Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (explaining that "[a] special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action").

Although it is true that Congress "intended the [FSLMRS] statutory scheme to be exclusive with respect to claims within its scope," *AFGE 2019*, 929 F.3d at 755, AFGE's challenges are best viewed as outside the statute's scope because EO 14,251 has excluded the employees of the listed agencies from coverage under Chapter 71 (i.e., the FSLMRS). In issuing the Executive Order, the President pursuant to § 7103(b)(1) determined "that *Chapter 71 of title 5, United States Code, cannot be applied* to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations." EO 14,251, § 1 (emphasis added). The President thus excluded these agencies "from coverage under this chapter" (again meaning Chapter 71 and the FSLMRS). 5 U.S.C. § 7103(b)(1). In these circumstances, it is not "'fairly discernible' that Congress precluded district court jurisdiction" over AFGE's claims, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)), i.e., that Congress meant for unions representing employees excluded from the statutory scheme to nonetheless use that scheme to challenge their exclusion.

Consistent with this understanding, the FLRA has regularly found that it lacks jurisdiction to hear cases brought by a union against an agency excluded from FSLMRS coverage under § 7103(b)(1). *See, e.g.*, *U.S. Att'ys Off. S.D. Tex. v. AFGE Loc. 3966*, 57 F.L.R.A. 750, 750

(2002); *Dep't of the Navy v. Navtelcom Unit Loc. No. 1*, 6 F.L.R.A. 498, 499 & n.6 (1981); *AFGE Loc. 2118 v. Dep't of Energy*, 2 F.L.R.A. 916, 918 (1980). And by recently filing affirmative litigation against unions in federal district courts over EO 14,251, the government itself took the apparent position in those cases that district courts have jurisdiction to decide cases involving agencies excluded from Chapter 71 coverage. *See Dep't of Def. v. AFGE Dist. 10*, 792 F. Supp. 3d 711, 715–16 (W.D. Tex. 2025); *Dep't of Treasury v. NTEU Ch. 73*, 783 F. Supp. 3d 991, 998 (E.D. Ky. 2025). Although the government is not estopped from taking a different position now, its prior litigation conduct underscores that Congress's intent to route these particular claims to the FLRA is not fairly discernible.

Turning to the merits, we conclude that on this record, AFGE has not demonstrated a likelihood of success or serious questions on the merits of its retaliation claim. "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct— i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)). Upon making a prima facie showing, "the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Boquist v. Courtney*, 32 F.4th 764, 777–78 (9th Cir. 2022) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)); *see also Mt. Healthy*, 429 U.S. at 287. "If there

is a finding that retaliation was not the but-for cause of the
adverse action, the claim fails for lack of causal connection
between unconstitutional motive and resulting harm, despite
proof of some retaliatory animus in the official's mind."
*Boquist*, 32 F.4th at 778 (alterations omitted) (quoting
*Hartman*, 547 U.S. at 260).

Assuming without deciding that AFGE has made out a
prima facie case of retaliation, we conclude, as we did when
we stayed the district court's injunction pending appeal, that
"on this record the government has shown that the President
would have taken the same action even in the absence of the
protected conduct." *AFGE I*, 148 F.4th at 654–55 (citing *Mt.
Healthy*, 429 U.S. at 287). The district court seemingly did
not address this issue, but it is an impediment for AFGE on
the record as it now stands.

EO 14,251 discloses no retaliatory animus on its face.
*See id.* at 655. It instead expresses that the President's
primary—if not only—concern with union activity was its
interference with national security, which is a judgment that
§ 7103(b)(1) at least presumptively entrusts to the
Executive. AFGE thus relies heavily on the Fact Sheet.
There may be some question about whether it is proper to
consider that kind of extrinsic evidence in the face of a
neutral Executive Order, particularly when the President is
exercising congressionally delegated national security
authority, for which an appreciable measure of deference is
traditionally afforded. *See Trump v. Hawaii*, 585 U.S. 667,
685–86, 703–05 (2018); *Ziglar v. Abbasi*, 582 U.S. 120, 142
(2017); *AFGE I*, 148 F.4th at 655.

But even considering the Fact Sheet, matters do not
change. As we previously recognized:

> [E]ven accepting for purposes of argument
> that certain statements in the Fact Sheet
> reflect a degree of retaliatory animus toward
> Plaintiffs' First Amendment activities, the
> Fact Sheet, taken as a whole, also
> demonstrates the President's focus on
> national security.   The Fact Sheet first
> explains that the excluded agencies and
> subdivisions serve national security in areas
> including national defense, border security,
> foreign relations, energy security, pandemic
> preparedness   and   response,   and
> cybersecurity.   It then states that the
> FSLMRS allows unions to "obstruct agency
> management," including by impeding the
> removal of employees for "poor performance
> or misconduct," which is contrary to the need
> for "a responsive and accountable civil
> service to protect our national security." The
> Fact   Sheet   thus   conveys   that   EO
> 14,251 advances   national   security   by
> curtailing union activity that undermines the
> agile functioning of government offices with
> national security-related missions. In other
> words, the Fact Sheet conveys an overarching
> objective of protecting national security
> through   its   assessment   that   collective
> bargaining   impedes   the   functioning   of

agencies    with    national    security-related
responsibilities.

*AFGE I*, 148 F.4th at 655 (citations omitted).  The OPM
Guidance on EO 14,251 buttresses this conclusion because
it highlights how collective bargaining has assertedly
undermined the President's ability to oversee the federal
workforce, which is essential "to take care that the law is
faithfully executed and to protect America's national
security."  In short, because EO 14,251 has "a legitimate
grounding in national security concerns, quite apart from
any" retaliatory animus, *Trump*, 585 U.S. at 706, the
government on the existing record has shown that the
President would have taken the same actions in the absence
of the asserted retaliatory intent.

AFGE focuses on particular lines in the Fact Sheet that
we quoted above.  But the law does not require us to read the
Fact Sheet in the worst possible light, especially when
considered alongside the neutral Executive Order and OPM
Guidance, and when affording the President some measure
of deference in the national security context.  *See, e.g.*,
*Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–34
(2010).  The statements in the Fact Sheet on which AFGE
relies do not torpedo the government's "but-for" defense,
especially when there is no basis to conclude that collective
bargaining activities that assertedly bear on national security
can never inform a § 7103(b)(1) determination.  *See* 5 U.S.C.
§ 7103(b)(1)(B) (permitting the President to consider "the
provisions of this chapter," i.e., the FSLMRS, in relation to
"national security requirements and considerations").  On
this record, the government has shown not only that it could
have, but also that it would have, issued EO 14,251 in the
absence of the asserted retaliatory animus.  *See Trump*, 585

U.S. at 706 ("It cannot be said that it is impossible to discern a relationship to legitimate state interests or that the policy is inexplicable by anything but animus." (quotation marks omitted)).

AFGE tries to cast doubt on this conclusion by focusing on those agencies and subdivisions that EO 14,251 excludes from the FSLMRS.  It argues that some of the excluded agencies have no meaningful role in promoting national security and that some police officers, security guards, and firefighters at otherwise excluded agencies are exempted from exclusion under EO 14,251, except for Bureau of Prisons (BOP) personnel, who are exclusively represented by AFGE.  AFGE asks us to infer discriminatory animus based on how EO 14,251 treats different agencies and subdivisions.

Although we express no opinion on plaintiffs' ultra vires claim, which is not before us, AFGE asks us to read too much into the coverage of EO 14,251.  There are various reasons why a President, when exercising national security authority under § 7103(b)(1), might include some agencies and subdivisions but not others in an Executive Order like this, and why one might also distinguish between police officers and BOP personnel.  Even assuming EO 14,251 is over- or under-inclusive, it does not follow that the President would only have issued this Executive Order because of his purported retaliatory animus.  We need not infer the most jaundiced, retaliatory account of the President's actions without greater support in the record.  Regardless, even if the nature of EO 14,251's line-drawing raises some inference of discriminatory animus, there is still substantial indicia in the record—through the Order itself, the Fact Sheet, and the OPM Guidance—that the President still "would have issued the Order, regardless of Plaintiffs' speech, based on the

perceived impact of union activities and collective bargaining on the sound operation of agencies and subdivisions with national security-related missions." *AFGE I*, 148 F.4th at 655.

Because AFGE "has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (alteration and quotation marks omitted) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).   But even if we were to consider them, the government has the edge.

A preliminary injunction would harm the United States because "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).   That is particularly true here, where the government's interest in ensuring the nation's security is "an urgent objective of the highest order." *Humanitarian Law Project*, 561 U.S. at 28. Upon concluding, as we have, that the President would have issued EO 14,251 in the absence of the asserted retaliatory animus, the national security underpinnings of EO 14,251 favor the government.   The government's supporting declarations, which discuss operations at individual agencies, further buttress this conclusion.

It is true that in the absence of a preliminary injunction, AFGE is likely to suffer some irreparable harm resulting from the loss of collective bargaining rights.   In our earlier grant of a stay pending appeal, we relied on OPM's initial instruction to agencies to refrain from terminating CBAs

pending resolution of litigation concerning EO 14,251. *See AFGE I*, 148 F.4th at 656. OPM has since changed its guidance, and we are informed that agencies have started to terminate certain CBAs. Although harm cannot overcome a lack of likelihood of success on the merits, this change in OPM policy means that AFGE has shown more likely harm now than it did before.

But despite the change to OPM's guidance, it remains the case that the harm to the unions would likely be mitigated to a fair extent by reinstating the terminated agreements if the union plaintiffs were to prevail. *Id.*; *NTEU*, 2025 WL 1441563, at *2. And any long-term weakened support for the unions remains speculative. *See AFGE I*, 148 F.4th at 656. AFGE must show that this injury is "likely," not just possible. *See Winter*, 555 U.S. at 20. Because union membership is voluntary and the status of the unions could be restored if AFGE succeeds, AFGE has not demonstrated that it is likely that "as time passes, the benefits of unionization [will be] lost and the spark to organize [will be] extinguished" before a final decision on the merits can be reached. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011). "[T]emporary economic loss alone generally is not a basis for injunctive relief," *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987), and much of AFGE's asserted injury could be repaired if AFGE were to prevail.

"The final two injunction factors—the balance of equities and the public interest—merge where [the government] is a party." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024). And for the reasons we have already explained, on the current record the government's asserted interest in national security

outweighs the interests of the plaintiff unions, considering
the balance Congress struck in § 7103(b)(1).

                    *       *       *

    For the foregoing reasons, the preliminary injunction is
**VACATED.**

---

OWENS, Circuit Judge, concurring:

    I concur fully in the court's opinion.  I write separately
only to note that we are reviewing a preliminary injunction,
which potentially is a distinction with a difference.  "The
propriety of preliminary relief and resolution of the merits
are . . . 'significantly different' issues."  *Parents Involved in
Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 n.10
(2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390,
393 (1981)).  "The purpose of such interim equitable relief
is not to conclusively determine the rights of the parties, but
to   balance   the   equities   as   the   litigation   moves
forward."  *Trump v. Int'l Refugee Assistance Project*, 582
U.S. 571, 580 (2017) (citation omitted).

    Here, the district court did not address the applicability
of *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.
274 (1977), to the question at hand.  "The *Mt. Healthy* but-
for causation inquiry is purely a question of fact."  *Eng v.
Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009).  And based on
the preliminary record before us now, I agree that the
government likely would prevail on this issue, meaning that
the plaintiffs have failed their significant burden.   But
"[b]ecause our review of a preliminary injunction is limited
to 'the law applied by the district court and because the fully
developed factual record may be materially different from

that initially before the district court, our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 876–77 (9th Cir. 2009) (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)).