### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305<br><br>       *Plaintiffs,*<br><br>       **v.**<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS;<br><br>DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs<br><br>       *Defendants.* | **Case No. 1:25-cv-00583-MRD-PAS** |

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION

## INTRODUCTION

The Department of Veterans Affairs and its Secretary are openly defying this Court's injunction, and they claim that there is nothing this Court can do about it. Defendants' conduct is shocking, and they are simply wrong on the law. This Court can and must enforce its injunction.

Defendants have failed, in any way, to comply with the PI Order.[1] Defendants argue that they complied with the PI Order by issuing a one-page memorandum containing the word "reinstated." This is a bad-faith argument. Barest lip service is not compliance. The PI Order clearly requires Defendants to abide by the substantive terms of the Master Agreement with respect to all employees who were covered by the Master Agreement before the Termination. Defendants cannot pretend otherwise when the preliminary injunction motion, Defendants' opposition, Defendants' oral argument presentation, and the PI Order itself all address the application of the Master Agreement—in a meaningful, substantive way—to covered employees. And lest Defendants claim any potential lack of clarity in the PI Order itself, when Defendants sought clarification from the Court, the Court issued an order stating "the Court expects that the Defendants' compliance with the plain language of the preliminary injunction order will not be delayed. To be clear, the pending motion for enforcement is no reason to delay compliance with the Court's March 13, 2026 order to reinstate the Master CBA *in full*." 3/23/26 Text Order (emphasis added). Thus, the Court's intent to require immediate, substantive compliance with the Master Agreement is manifestly clear, and it is undisputed that Defendants have not complied with that directive.

---

[1] Plaintiffs adopt the same defined terms used in their opening Memorandum of Points and Authorities.

1

Defendants argue that the Court lacks jurisdiction to enforce its order.  All of Defendants' arguments are either arguments they raised in opposition to the preliminary injunction—and that the Court then rejected—or are untimely arguments against the injunction itself.  Even so, Defendants cite no case that actually makes this point—probably because their position flies in the face of over two centuries of jurisprudence making perfectly clear that federal courts have jurisdiction to enforce their orders.  The Court has inherent and statutory authority to enforce the preliminary injunction.  That basic fact does not change simply because the government is a party or because the Master Agreement contains a grievance procedure.  Indeed, Defendants' insistence that disputes about compliance with the Master Agreement be sent to arbitration is nothing more than an improper attempt to relitigate their channeling argument, which the Court rejected in the PI Order.

It is plain as day what is happening here: Defendants are defying the PI Order.  The Court should issue remedial orders requiring and verifying immediate compliance.

## ARGUMENT

### A.    The PI Order clearly and unambiguously directed Defendants to reinstate and adhere to the terms of the Master Agreement.

The PI Order is clear and unambiguous.  The Court ordered Defendants to "reinstate the Master CBA" along with "any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA—for the remainder of the agreed-upon term provided in the Master CBA."  Dkt. 30 at 29.[2]  It should go without saying that an order to "reinstate the Master CBA" encompasses a directive to implement and adhere to the terms of that agreement.  After all, the plain meaning of "reinstate" is "to restore to a previous

---

[2] All Pin cites are to the ECF document pagination, not internal pagination.

2

*effective* state."  *See* Merriam-Webster.com Dictionary (emphasis added) (last visited Mar. 26, 2026), https://www.merriam-webster.com/dictionary/reinstate.  And if the original PI Order was not clear enough, on March 23, the Court reiterated that its PI Order requires Defendants to "reinstate the Master CBA *in full*." 3/23/26 Text Order (emphasis added).  The plain language of the PI Order is thus clear: it requires the Master Agreement to be reinstated in substance, not just in form.

It is also clear from the Court's reasoning that compliance with the PI Order requires Defendants to reinstate the substantive benefits conferred by the Master Agreement on the union and on employees covered by the Master Agreement before the Termination.  The PI Order was premised on the Court's finding that Defendants' termination of the Master Agreement has caused Plaintiffs, and the employees they represent, irreparable harm.  *See* Dkt. 30 at 25–26.  This irreparable harm is a result of Defendants' decision to stop adhering to the terms of the Agreement, for example by "halt[ing] the entire grievance process," removing "disciplinary process protections," and "decreas[ing] parental leave time."  *Id.* at 25.  To remedy these harms, the PI Order must be understood to require Defendants to comply in good faith with the substantive terms of the Master Agreement.  Anything less would fail to address the harms caused by the Termination and would render the PI Order meaningless.

Up until the Court issued its PI Order, Defendants demonstrated that they understood that reinstatement of the Master Agreement would require them to adhere to its substantive provisions.  For example, at the hearing on Plaintiffs' Motion, Counsel for Defendants argued, in painstaking detail, that, "*if the CBA is reinstated*," **the government "will have to give back 180,000 square feet of office space, will have to . . . allow employees to engage in union activity during the workday,"** and **"will have to reengage in arbitrations."**  Dkt. 33-2, Ex. A at

3

11 (emphasis added).  Further, counsel for Defendants conceded, "*nearly 2,000 VA employees are going to be able to -- have to be taken off their mission-oriented roles to be engaging in union activity during the day, **and the VA is going to have allow it**.*" *Id.* (emphasis added).  Even now, in their Opposition, Defendants admit that the PI Order should have "restored the parties to the status quo as it existed before the Master CBA's termination"—which would involve providing the substantive protection of the Master Agreement to the more than 300,000 AFGE-represented employees who lost such protections because of the Termination.  Dkt. 34 at 7.  Nonetheless, Defendants' current position is that "reinstating the Master CBA" does not require "adhering to . . . its terms," Dkt. 34 at 6, and that it is now enough to simply declare that the Master Agreement is "reinstated" and nothing more.  Defendants' new position cannot be squared with their prior representations to this Court or with their repeated admissions that the Order requires them to restore the pre-Termination status quo, much less with the crystal-clear language and intent of the PI Order and the 3/23/26 Text Order.[3]

Notwithstanding the foregoing, Defendants have entirely refused to comply with the PI Order.  While Defendants did declare that "the 2023 Master CBA with AFGE is reinstated," they have done literally nothing to implement or adhere to the terms of the Master Agreement, and they do not argue otherwise.  Indeed, Defendants do not even bother to address the myriad examples cited by Plaintiffs of their refusal to comply with the terms of the Master Agreement.

---

[3] Defendants also suggest that "the Court's decision to leave in place the Executive Order, which exempts the vast majority of the VA from the FSLMRS's coverage" somehow excuses their failure to comply with the PI Order, Dkt. 34 at 5, and they argue that "to the extent Plaintiffs seek to enforce any right afforded under the FSLMRS, their motion to enforce is without basis because the Order did not make Plaintiffs subject to the FSLMRS," *id*. This boils down to another version of the argument that "the Termination was lawful because it was compelled by the Executive Order," which was fully briefed and rejected by the Court. *See* Dkt. 17 at 53–54; Dkt. 30 at 24.  Indeed, Plaintiffs and the Court have been crystal clear that this case is about the Termination, not the Executive Order.  Dkt. 30 at 12 ("[T]he Court wants to be clear that it is deeply mindful of the lane it is in and will stay in. This case is not about the constitutionality of the EO.").  Moreover, Plaintiffs are here to enforce the Court's Order and the terms of the Master Agreement, not "right[s] afforded dunder the FSLMRS."

4

*See* Dkt. 33-1 at 10–12.  As such, this is not a case of partial compliance or good-faith efforts to comply.  Nor is it a case of genuine confusion, particularly after the Court's 3/23/26 Text Order.  Defendants are willfully defying the Court's PI Order.

**B.**     **The Court has jurisdiction to enforce the PI Order.**

Defendants argue that the Court is powerless to enforce the PI Order.  Defendants cite two arguments: first, that a court cannot order the United States to specifically perform a contract and second, that compliance disputes should go to a labor arbitrator under the Master Agreement's grievance procedure.

Defendants are wrong; this Court has authority to enforce the PI Order.  "[C]ourts have inherent power to enforce compliance with their lawful orders[.]" *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  "When a court employs the extraordinary remedy of injunction, it directs the conduct of a party, and does so with the backing of its full coercive powers." *Nken v. Holder*, 556 U.S. 418, 428 (2009) (internal citations and quotation marks omitted).  Courts in equity "may administer *complete relief between the parties*." *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) (citing *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928) (emphasis added and in original)); *accord United Cos. Lending Corp. v. Sargeant*, 20 F. Supp. 2d 192, 210 (D. Mass. 1998) ("A court sitting in equity . . . is necessarily empowered to do complete justice as between the parties.").  The "courts are not reduced to issuing injunctions and hoping for compliance.  Once issued, an injunction may be enforced." *Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304, 314–15 (1st Cir. 2025) (quoting *Hutto v. Finney*, 437 U.S. 678, 690 (1978)) (original alterations omitted).[4]  The "court that enters an injunctive order

---

[4] *Rollins* notes that *Hutto* has been abrogated on other grounds.

retains jurisdiction to enforce its order." *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012). At least one other federal court is currently using this authority to supervise the Administration's compliance with preliminary injunctions relating to the restoration of collective bargaining agreements. *Am Fed'n of Gov't Emps. v. Noem*, No. 2:25-cv-00451-JNW, 2026 WL 113599, at *2 (W.D. Wash. Jan. 15, 2026) (granting AFGE's motion to enforce preliminary injunction of DHS's rescission of the collective bargaining agreement for Transportation Security Agency personnel).

In addition to the Court's inherent authority, the APA authorizes "postpone[ment]" as a provisional remedy. 5 U.S.C. § 705. When a court grants that remedy, the statute provides that the Court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." *Id.* Thus, as this Court has noted, under this statute "[a] reviewing court has discretion to take any steps it deems necessary to prevent irreparable injury before a final judgment is reached." *New York v. Kennedy*, 789 F. Supp. 3d 174, 206 (D.R.I. 2025) (citing 5 U.S.C. § 705). Plaintiffs' motion for a preliminary injunction specifically requested relief under Section 705, Dkt. 14, and the PI Order granted relief under the APA.

As this vast array of authorities makes clear, the Court can enforce the PI Order. Having found that Plaintiffs have demonstrated a likelihood of succeeding on the merits of their constitutional and APA claims, the Court has broad inherent authority to compel compliance with the preliminary injunction. *See, e.g.*, *Rollins*, 158 F.4th at 314–15; *Alderwoods Grp.*, 682 F.3d at 970. And, because the Court granted relief under the APA, the Court may issue "all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The

6

relief the Plaintiffs seek by way of this motion to enforce, as further described in this reply brief, easily falls within this broad definition.  Indeed, as Plaintiffs note above, at least one other federal court is currently supervising a preliminary injunction prohibiting the government from tearing up its contractual obligations.  *Noem*, 2026 WL 113599, at *2 (granting motion to enforce preliminary injunction prohibiting rescission of a collective bargaining agreement).  Other courts are supervising the government's compliance with preliminary injunctions that relate to contracts that the government has signed.  *See New York v. Trump*, No. 1:25-cv-39 (JJM) (D.R.I Apr. 4, 2025), Dkt. No. 178 (Defendants' Notice of Compliance), 178–1 at 1 ("On March 6, 2025, the Court entered a preliminary injunction . . . prohibit[ing] all defendants, including FEMA from . . . [r]eissuing, adopting, implementing, giving effect to, or reinstating under a different name the directives in OMB Memorandum M-25-13 . . . with respect to the disbursement and transmission of appropriated federal funds to the States under awarded grants [and] executed contracts[.]") (D.R.I. Apr. 6, 2025).

Defendants argue that it would be "improper as a matter of federal labor law, federal contracting law, and even the ordinary common law of contracts," for the Court to compel compliance with the PI Order.  Dkt. 34 at 8.  To start, Defendants made none of these arguments in opposition to the preliminary injunction motion, so they are waived.  Moreover, this is not a case about labor law,[5] contracting law, or the ordinary law of contracts.  Rather, the PI Order considers a First Amendment claim and an APA claim, and the proper remedies inquiry focuses on what remedies are available in First Amendment and APA cases.  The government's

---

[5] Defendants' citations for the labor law point are to the provisions of the FSLMRS that relate to grievances, and Defendant claim that "Plaintiffs are no longer subject to the FSLMRS by virtue of the Executive Order."  Dkt. 34 at 8 n.1.  To start, the statement contains a factual misstatement—even Defendants' sworn testimony concedes that NVAC continues to represent police officers, firefighters, and security guards.  Dkt. 17-1, ¶¶ 3 n.1, 16(d). Moreover, this argument is a repetition of Defendants' argument that they cannot comply with the PI Order because the Executive Order is currently in effect. This argument fails for the reasons given *supra*, n.3.

authorities are thus beside the point. *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989), was a breach-of-contract/mandamus case asserted directly against the governmental actor. The First Circuit resolved the case on sovereign immunity grounds, but it never considered how a court enforces an injunction that involves a contract. *Pritzker v. Yari*, 42 F.3d 53, 72 (1st Cir. 1994), a case about debtors' rights, not injunctions, is similarly inapposite. Whatever the law is about contract cases generally, there is no indication in any of these cases that the First Circuit intended to limit—or was even thinking about—the extent of a district court's remedial authority to compel compliance with a valid injunction in a constitutional or APA case. In fact, just last year, the First Circuit expressly declined to extend *Coggeshall* to an APA case. *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 56 (1st Cir. 2025).

Defendants' APA cases defeat their sovereign immunity argument. In *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025), the Supreme Court stayed a district court injunction requiring the payment of money, which the Supreme Court suggested belongs in the Court of Federal Claims because of the way the Tucker Act structures the waiver of sovereign immunity relating to claims for monetary relief. [6] But this case is not about paying money. The Master Agreement, with its non-monetary provisions about official time, disciplinary procedures, and leave benefits, is distinguishable. The First Circuit has explained that where, as here, a district court does not "award past due sums" and where "neither the plaintiffs' claims nor the court's orders depend on the terms or conditions of any contract," district court jurisdiction is proper even if the action somehow involves contractual obligations. *Am. Pub. Health Ass'n*, 145 F.4th at 50 (internal quotation marks omitted). In fact, the First Circuit elaborated on this framework

---

[6] Similarly, in *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004), the plaintiffs sought refunds of money.

in *Massachusetts v. Nat'l Insts. of Health*, 164 F.4th 1, 11–12 (1st Cir. 2026)—a case that

Defendants also cite, even though it comes out against the government—which explains why

jurisdiction is appropriate here. While an order requiring the government "to pay money" may

need to be sought in the Court of Federal Claims, "challenges to agency-wide policies . . . belong

in district court." *Id*. This case is a challenge to an agency-wide termination of a labor

agreement, not an action to enforce payment.

Defendants' other argument here is that "Plaintiffs remedy is to file a complaint under the

grievance procedures." Dkt. 34 at 7. This argument has nothing to do with the Court's power to

compel compliance with its Order. This is just another improper attempt to get the Court to

reconsider its PI Order. In their PI Opposition, Defendants raised the same grievance procedure

in support of their channeling argument, Dkt. 17 at 33–34, and the Court considered and rejected

that argument, Dkt. 30 at 6–7. Just as Plaintiffs are not required to bring their underlying claims

through the grievance procedure, they are likewise not required to seek enforcement of the PI

Order through the grievance procedure. It is the court that issues the injunction that can compel

compliance with it, *Alderwoods Grp.*, 682 F.3d at 970; *S.E.C v. Homa*, 514 F.3d 661, 673–74

(7th Cir. 2008), not an arbitrator. Finally, the fact that Defendants continue to assert that

Plaintiffs cannot access a labor arbitrator because they remain outside the FSLMRS, *see* Dkt. 33-

2 at Exs. H, K & L; Dkt. 34 at 8 n.1, makes their position that an arbitrator should police

compliance with a judicial order all the more absurd.

## REMEDY

Plaintiffs' opening papers request a remedial order compelling compliance, reporting, and

a corrective statement from Defendants.

**Order compelling compliance.**  The Court has authority to order Defendants to comply with the terms of the Master Agreement in full for the over 320,000 VA employees that were covered by the Master Agreement prior to its unlawful termination; the Court has in fact already ordered Defendants to do so; and its enforcement order should compel immediate compliance with that command.

**Reporting.**  Given Defendants' obstruction, generalized status reports are insufficient here.  Clear and detailed statements about the status of Defendants' compliance are necessary to inform any subsequent enforcement proceedings.  *See United States v. Saccoccia*, 433 F.3d 19, 30 (1st Cir. 2005) ("[T]the law of civil contempt requires . . . precision.").

First, Plaintiffs request that the Executive Director of the VA Office of Labor-Management Relations[7] and the VA Chief Human Capital Officer[8] shall acknowledge, in writing, having received and read the PI Order and the Court's order on this motion to enforce. *E.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 781 F. Supp. 3d 920, 942 (N.D. Cal. 2025) (granting similar relief).

Second, Plaintiffs request that the Executive Director of the VA Office of Labor-Management Relations and the VA Chief Human Capital Officer shall file with the Court on a weekly basis a sworn declaration describing, with particularity, all steps that Defendants have taken to implement the PI Order.  *E.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 782 F. Supp. 3d 793, 828 (N.D. Cal. 2025).[9]

---

[7] This is the author of Exhibit B to the Wheeler Declaration, Dkt. 33-5 at 14, *i.e.*, the official who "reinstated" the Master Agreement in a one-liner without undertaking any effort to implement it.

[8] This is Defendant's declarant Ms. Therit.  *See* Dkt. 17-1.

[9] These two cases in the Northern District of California have long procedural histories that includes appellate orders staying district court orders for interim relief.  But the merits of those cases are beside the point here, where Plaintiffs are pointing to models for compliance reporting.

**Reinstatement of local supplements and subsidiary agreements.**  The enforcement order should also address Defendants' willful failure to reinstate local supplements and other subsidiary agreements.  The Master Agreement specifically authorizes the VA and local unions to negotiate local supplements.  Dkt. 14-3 at 252-53. The Secretary's Termination letters terminated "the VA-AFGE MCBA, any amendments, local supplemental agreements, and memoranda of understanding at all levels," demonstrating Defendants' understanding that local supplements (including memoranda of understanding) are part of the Master Agreement.  The PI Order includes these agreements within its scope, a point that the Court's March 23, 2026 Text Order reiterates.  Dkt. 30 at 29; 3/23/26 Text Order.  Yet, Defendants concede that they are refusing to reinstate local agreements signed by unions other than NVAC and AFGE Local 2305, Dkt. 34 at 5, and to Plaintiffs' knowledge, no subsidiary or supplemental agreements have been restored.  This is further defiance that should be expressly addressed in an enforcement order.[10]

**Corrective statement.**  Following the model in *Noem*, 2026 WL 113599, at *4, Defendants should be compelled to issue a communication to the roughly 300,000 represented employees that the Master Agreement "remains applicable and binding."

**Attorneys' fees**.  The government's litigation position is a bad-faith position that has required unnecessary compliance litigation.  Plaintiffs will seek a sanction of attorneys' fees at the appropriate time.

---

[10] The citation to *Trump v. CASA, Inc.*, 606 U.S. 831, (2025), in Defendants' clarification motion is a red herring. Defendants did not raise (and therefore waived) a CASA argument in their opposition to Plaintiffs preliminary injunction motion.  Moreover, the very first Section of the Master Agreement states that Plaintiff NVAC is a party to the Master Agreement.  Dkt. 14-3 at 23.  As a party to this case, NVAC can seek enforcement of the Master Agreement and supplemental agreements which are enforceable through the Master Agreement.  Furthermore, "CASA expressly declined to evaluate relief under the APA," *New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 333 (D.R.I. 2025); *accord Nat'l TPS All. v. Noem*, 166 F.4th 739, 759 (9th Cir. 2026), and here the Court granted relief under the APA.  Most importantly, even if there were a *CASA* issue present—and there is not—the PI Order is valid and in force.  Defendants must comply with it.

11

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion and order the relief described above.

Respectfully submitted,

LAW OFFICE OF CARLY B. IAFRATE, PC

Dated: March 26, 2026

By:    */s/ Carly Beauvais Iafrate*
Carly Beauvais Iafrate, #6343
Law Office of Carly B. Iafrate, PC
408 Broadway, 1st Fl.
Providence, RI 02909
(401) 421-0065
ciafrate@verizon.net

Dated: March 26, 2026                By:    */s/ Travis Silva*
Brook Dooley *(pro hac vice)*
Travis Silva *(pro hac vice)*
Taylor Reeves *(pro hac vice)*
JiLon Li *(pro hac vice)*
Alexandra Wheeler *(pro hac vice)*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
BDooley@keker.com
TSilva@keker.com
TReeves@keker.com
JLi@keker.com
AWheeler@keker.com

*Attorneys for American Federation of
Government Employees National VA
Council and American Federation of
Government Employees Local 2305*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, I electronically filed the within opposition and it is available for viewing and downloading from the Court's CM/ECF System, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

/s/ Travis Silva
Travis Silva