

**THE SECRETARY OF VETERANS AFFAIRS
WASHINGTON**

**To:** Dr. Everett B. Kelley, President, American Federation of Government Employees (AFGE), American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), and Mary Jean Burke, National President, National Veterans Affairs Council #53/AFGE

**From:** Douglas A. Collins, Secretary of Veterans Affairs

**Date:** March 26, 2026

**Subject:** Notice of Termination of Collective Bargaining Agreement

This memorandum provides official notice to American Federation of Government Employees (AFGE) that, pursuant to Executive Order (EO) 14251, the Department of Veterans Affairs (VA) is terminating the August 8, 2023, VA-AFGE Master Collective Bargaining Agreement, as well as any amendments, local supplemental agreements, past practices, and memoranda of understanding at all levels (collectively referred to as CBA), for all employees covered by EO 14251, effective the date of this memorandum.[1] Where the CBA covers bargaining unit employees not covered by EO 14251, the CBA will continue in full force and effect under the terms of the agreement.

### I.    Background

On February 28, 1980, the Federal Labor Relations Authority (FLRA) issued a Certification of Consolidation of Units in case number 22-08518 (UC), consolidating various AFGE units and certifying AFGE as the exclusive representative for certain VA employees; thereafter, AFGE's certification of units has been amended and supplemented numerous times by the FLRA.

On March 27, 2025, President Donald J. Trump signed EO 14251, "Exclusions From Federal Labor-Management Relations Programs." EO 14251 amended EO 12171, "Exclusions from the Federal Labor-Management Relations Program," issued November 19, 1979, which sets forth the agencies and subdivisions thereof excluded from collective bargaining under the Federal Service Labor-Management Relations Statute (FSLMRS). Section 2 of EO 14251 exempted police officers, firefighters, and security guards (collectively referred to as Exempted Employees) from its coverage.

The EO also exempts "any subdivisions of the Department[] of … Veterans Affairs for

---

[1] On March 23, 2026, the District Court for Rhode Island granted VA's motion for clarification, confirming its March 13, 2026, order could not "possibly be read" to prohibit VA from terminating the CBA again prior to the end of its 3-year term. *Am. Fed'n of Gov't Emps. Local 2305 v. U.S. Dep't of Veterans Affs.*, No. 1:25-cv-00583-MRD-PAS, Text Order (D.R.I. Mar. 23, 2026).


Defendants'
Exhibit A

which the … Secretary has issued an order suspending the application of this section" excluding VA from FSLMRS coverage. 90 Fed. Reg. at 14554. On April 17, 2025, the Secretary invoked his authority to suspend the application of the EO "for certain employees, thereby bringing those employees under the coverage of the Federal Service Labor-Management Relations Statute." 90 Fed. Reg. 50950. On November 13, 2025, the Secretary rescinded that order, *id.*, and has not reinstated any such order. Resultingly, pursuant to EO 14251, except for the Exempted Employees identified in the EO (that is police officers, firefighters, and security guards), VA is no longer covered by the FSLMRS.

In issuing EO 14251, President Trump determined, consistent with the authority granted to him under 5 U.S.C. § 7103(b)(1), that: (1) VA has a primary function of intelligence, counterintelligence, investigative, or national security work; and (2) the provisions of the FSLMRS cannot be applied to VA in a manner consistent with national security requirements and considerations. EO 14251 has been challenged in court. A preliminary injunction issued on June 24, 2025, by the District Court for the Northern District of California prohibited VA from implementing the EO. However, that injunction was stayed by the Court of Appeals for the Ninth Circuit on August 1, 2025, and reversed on February 26, 2026. Accordingly, VA is now permitted to implement the EO.

On August 6, 2025, pursuant to EO 14251, VA terminated all collective bargaining agreements held with its national unions, except to the extent those agreements covered Exempted Employees. Additionally, effective November 13, 2025, pursuant to EO 14251, VA terminated all collective bargaining agreements held with its local unions, except to the extent those agreements covered Exempted Employees. On February 12, 2026, the Office of Personnel Management (OPM) advised agencies covered by EO 14251 that they should "terminate or modify all CBAs" for units impacted by EO 14251. On March 13, 2026, pursuant to a court order, the CBA was reinstated; however, on March 23, 2026, the Court granted VA's motion for clarification on the court's order, confirming that its March 13 order could not "possibly be read" to prohibit VA from terminating the CBA again prior to the end of its 3-year term.

## II.    Termination of the VA-AFGE CBA

As stated above, this memorandum provides notice that VA is terminating the VA-AFGE CBA, effective March 26, 2026, for all employees except those expressly excluded from EO 14251's coverage by the EO (that is Exempted Employees). The three independent bases for this termination decision are explained below:

### 1.  The President Excluded the VA from the FSLMRS' Coverage

EO 14251 is a valid directive binding on VA that excludes VA from the coverage of the FSLMRS. *See* 5 U.S.C. § 7103(b)(1). This means that, the rights afforded to employees and unions under the FSLMRS—such as an employee's "right … to act for a labor organization in the capacity of a representative" or "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter," *id.* § 7102; or a union's right to be an exclusive representative, *id.* § 7111, or "to act for, and negotiate collective bargaining agreements covering, all employees in the unit," *id.* § 7114—are no longer in effect at VA. Accordingly, pursuant to EO 14251,

except for Exempted Employees, VA is no longer subject to collective bargaining obligations (including CBAs previously negotiated under that statute) and AFGE is no longer the exclusive labor representative for any employee covered by EO 14251 (Non-Exempted Employees).

The CBA is thus terminated for any Non-Exempted Employee because, by operation of law, VA need not, and cannot, continue performance and VA cannot be bound by any contractual or statutory obligation stemming from the FSLMRS as it relates to Non-Exempted Employees or AFGE's representation of Non-Exempted Employees. Additionally, current OPM guidance advises agencies covered by EO 14251 to, "as soon as possible, terminate or modify all CBAs with labor unions for bargaining units impacted by [EO 14251] …."

Accordingly, pursuant to EO 14251, the CBA must be terminated for all VA bargaining unit employees, except Exempted Employees represented by AFGE. Furthermore, consistent with EO 14251 and OPM's guidance, VA will no longer recognize AFGE as the exclusive representative of any Non-Exempted Employee, effective March 26, 2026.

### 2. The CBA Cannot Operate without the FSLMRS

The CBA was drafted with the expectation it would operate and be enforced under the provisions of the FSLMRS. Key provisions of the CBA are incoherent apart from that expectation. For example, the CBA requires midterm bargaining over all proposed changes for which there is a bargaining obligation but does not define those bargaining obligations—leaving that to FLRA determinations.[2] It similarly provides for the parties to advance bargaining disputes to impasse proceedings.[3] Under EO 14251, however, the FLRA no longer has jurisdiction to settle bargaining impasses. VA refrained from terminating the CBA while the validity and applicability of the FSLMRS to VA was being litigated. Now that the preliminary injunction on EO 14251 has been lifted and courts have held the Government is likely to prevail on the merits,[4] VA cannot execute the CBA apart from the underlying statutory framework.

### 3. The President's Determination Regarding VA's National Security Functions, Requirements, and Considerations

The President issued EO 14251, making a national security determination regarding VA, among other agencies, and concluding that the FSLMRS could not be applied to VA in a manner consistent with national security requirements and considerations. Federal law makes VA the backstop health care provider for members of the Armed Forces in times of war or national emergency. See 38 U.S.C. § 8111A. Federal law also authorizes VA to provide medical care during times of national emergency. See 38 U.S.C. § 1785.[5]

---

[2] *See* Article 47, § 2.A.

[3] *See* Article 46, § 3.

[4] *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 167 F.4th 1247, 1252 (9th Cir. 2026) ("Because the government was likely to succeed on the merits of the retaliation claim, and because the balance of the harms and equities favored the government, we stayed the district court's preliminary injunction pending appeal.").

[5] Congress tasked VA with four missions. VA's "Fourth Mission" is to improve the Nation's preparedness

The President is aware of both the important national security role VA performs and how collective bargaining affects VA's ability to perform that mission. In addition to the President's constitutional responsibilities for protecting national security, Congress statutorily tasked the President with determining when collective bargaining and other labor rights afforded under the FSLMRS are incompatible with national security considerations.[6] VA accordingly credits the President's determination, as it must, and concludes the continued application of the FSLMRS to Non-Exempted Employees— including collective bargaining agreements the FSLMRS requires agencies to negotiate and maintain[7]—is inconsistent with national security requirements and considerations. VA is accordingly terminating this CBA on national security grounds.

VA recognizes the interests of AFGE and the employees formerly represented by AFGE. VA understands that these employees and AFGE structured certain expectations surrounding the existence of the CBA, including, but not limited to, work schedules, leave procedures, performance management, and other conditions of employment. Notwithstanding that these interests cannot override the EO, which is binding on VA, VA has reviewed whether current law, rules, regulations, and agency policies provide meaningful safeguards and procedures and determined sufficient safeguards and procedures are in place.

---

to respond to war, terrorism, national emergencies, and natural disasters by developing plans and taking actions to ensure continued service to Veterans, as well as supporting national, state, and local emergency management, public health, safety, and homeland security efforts. This mission includes, but is not limited to: (a) emergency preparedness activities to improve national readiness for disasters, attacks, or conflicts; (b) supporting emergency management operations through the provision of personnel and resources; (c) ensuring continuity of VA's mission-critical services during emergencies; and (d) collaborating with Federal agencies, state and local governments, and private-sector partners to coordinate preparedness and response efforts. In wartime, VA serves as the principal backup to the military health system under P.L. 97-174, including sharing facilities, equipment, and personnel; providing medical care to military personnel and their families; and prioritizing the treatment of battlefield casualties. VA carries out the Fourth Mission through four primary vehicles: (1) the VA–Department of War contingency framework under P.L. 97-174; (2) participation in the National Response Framework; (3) its statutory responsibilities under the National Disaster Medical System, including the coordination of civilian and military casualties through Federal Coordinating Centers; and (4) humanitarian health care assistance authorized for civilians when necessary. All four VA missions are related and interconnected, and obstruction of one necessarily interferes with VA's ability to implement and execute the others.

[6] *See* 5 U.S.C. § 7103(b)(1).

[7] Adherence to the CBA is materially adverse to the determinations the President made in EO 14251 as the CBA contains numerous provisions that significantly impede VA's national security functions, requirements, and considerations, including, but not limited to: Article 47, which delays VA's ability to quickly adapt and respond to threats to its national security functions by requiring it to bargain over changes to conditions of employment not covered by the CBA; Article 12, Section 1(C), which requires VA to provide a minimum of 10 days advance notice before effectuating a temporary detail; Article 13, Section 5, which requires VA to provide 30-days advance notice and bargain prior to effectuating an administrative reassignment or involuntary reassignment mandated by VA's valid operational needs; Articles 43 and 44, which establish a grievance-arbitration process that prevents VA from quickly disciplining or removing employees for poor performance or misconduct, thereby negatively impacting VA's national security functions, requirements, and considerations; and Articles 48 and 51, which require VA to expend limited financial resources to provide paid, non-duty time to union representatives that would otherwise be devoted to VA's national security functions and use limited Agency resources to provide AFGE with office space and resources.

Following the termination of the CBA, employees will remain fully covered by, among other authorities, applicable provisions of title 5, United States Code, and regulations issued by OPM; merit system principles and prohibited personnel practice protections; equal employment opportunity and anti-discrimination laws; workplace safety requirements; and VA's internal policies and directives (other than those required by or found in its CBA), including VA's internal grievance procedure. While these authorities may differ from the rights and obligations contained in the CBA, they provide fair and enforceable standards governing pay, leave, hours of work, performance management, discipline, adverse actions, workplace safety, and employee protections that, unlike the CBA's provisions, may be applied consistently with VA's national security functions, requirements, and considerations.

After considering the above, it is determined that continued adherence to the CBA is inconsistent with EO 14251, including the President's national security determinations therein. The CBA is inconsistent with national security requirements and considerations, as determined by the President, and cannot be applied in a manner that adheres to the President's valid, binding direction in EO 14251.

### III.    Agency Termination Notice

Effective the date of this memorandum and pursuant to EO 14251, the August 8, 2023, VA-AFGE CBA is terminated and no longer in effect except to the extent the CBA covers Exempted Employees. Exempted Employees will continue to be represented by AFGE and subject to the terms of the CBA.

For further information concerning this termination notice, please contact Denise Biaggi-Ayer, Executive Director, Office of Labor-Management Relations at Denise.Biaggi-Ayer@va.gov.


_____          __March 26, 2026___
Douglas A. Collins                                Date