**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
NATIONAL VA COUNCIL; and

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES LOCAL
2305;

      Plaintiffs,

        *v.*

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS; and

DOUGLAS A. COLLINS, in his official
capacity as U.S. Secretary of Veterans
Affairs;

      Defendants.

Civil Action No. 25-CV-583-MRD-PAS

District Judge Melissa R. DuBose

EXPEDITED RELIEF REQUESTED
(LR Cv 9)

**DEFENDANTS' MEMORANDUM OF LAW SUPPORTING EMERGENCY**
**MOTION TO STAY PENDING APPEAL**

## INTRODUCTION

Through Executive Order 14251 ("EO 14251" or "Executive Order"), the President validly excluded the vast majority of employees of the U.S. Department of Veterans Affairs ("VA") from the application of the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. § 7101 *et seq.*, pursuant to the terms of the statute, 5 U.S.C. § 7103(b).  Specifically, the President determined that the VA has as a primary function intelligence, counterintelligence, investigative, or national security work," and that the provisions of the FSLMRS "cannot be applied to [the VA] . . . in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1).  Plaintiffs and this Court recognize that decision as valid, and Plaintiffs have not challenged the President's exclusion order here.

Instead, Plaintiffs challenge the VA's termination and recent re-termination of the Collective Bargaining Agreement, amendments, local supplemental agreements, and memoranda of understanding at all levels (collectively referred to as "CBA"), between the American Federation of Government Employees ("AFGE") and the VA,[1] claiming these terminations violated the Administrative Procedure Act ("APA") and the First and Fifth Amendments.  *See* Compl., ECF No. 1.  On March 13, 2026, this Court granted Plaintiffs' motion for a preliminary injunction, thus requiring the VA to reinstate the CBA.  Mem. and Order ("PI Order"), ECF No. 30.  Subsequently, after clarifying that the injunction could not "possibly be read to order that … the Defendants are wholesale prohibited from terminating the Master CBA again prior to the end of the three-year term governing the contract,"

---

[1] Although Plaintiffs—AFGE affiliates—bring the instant action, the CBA is undisputedly between the VA and AFGE and was signed by the VA Secretary and the National President of AFGE.

Defendants again terminated the CBA. *See* Text Order (Mar. 23, 2026) ("Clarification Order). Nonetheless, the Court found that the VA had violated the terms of the preliminary injunction and issued an additional order. Order ("Enforcement Order"), ECF No. 39.

Both orders were in error and Defendants have appealed to the First Circuit, and plan to seek an emergency stay from the First Circuit if this Court does not grant a stay pending appeal. Specifically, in the PI Order, the Court erred in determining that EO 14251 and the VA's termination—and now re-termination—of the CBA were separate challengeable actions. In light of yesterday's order, it is now clear the Court intends its orders regarding the reinstatement of the CBA to also extend to supervising Defendants' performance of its collective-bargaining duties under that CBA. But the unchallenged Executive Order precludes Defendants from performing those duties. As explained in Defendants' March 26 re-termination notice, the termination of the CBA flows directly from the Executive Order's exclusion of VA employees from the collective-bargaining regime in the FSLMRS. A CBA with a federal agency cannot be performed without the application of the collective-bargaining provisions Congress established in the FSLMRS, which is the source of authority for collective bargaining among federal employees. A CBA requires an exclusive bargaining representative to negotiate with the employing agency over the terms of the CBA and to act on behalf of employees covered by the CBA, but Defendants cannot recognize an exclusive bargaining representative whose bargaining unit employees are now indisputably excluded from the FSLMRS's coverage. Finding otherwise has led to irreconcilable and incongruent results. A collective bargaining agreement cannot stand where an agency's exclusion from the FSLMRS means there is no statutory basis for recognizing the exclusive representative or for negotiating a collective

3

bargaining agreement on behalf of employees excluded from the FSLMRS' coverage.

Had the Court merely ordered Defendants to *reinstate* the CBA—*i.e.*, reverse the VA's formal termination without ordering performance, as Defendants originally understood the PI—Defendants may well not have sought relief from such an order.  The formal existence of a CBA with employees who are excluded from the FSLMRS does not produce the same harms that ordering the performance of a CBA does.  But despite this Court's focus in the PI Order solely on the termination of the CBA, it is now clear that the Court considers this litigation to also control the performance of the VA's collective-bargaining duties governed by the FSLMRS, in a manner irreconcilable with Defendants' duties under the Executive Order, which Plaintiffs purport not to target in this litigation.

The Court also erred in determining that Plaintiffs were likely to succeed on the merits of their First Amendment and APA claims.  First, regardless of Plaintiffs' alleged advocacy or speech, they cannot show that the VA would not have terminated the CBA anyway, based on the President's exclusion of the VA from the FSLMRS.  The Ninth Circuit recognized this inevitable result in litigation over the propriety of the President's Executive Order, *see Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 167 F.4th 1247, 1256–58 (9th Cir. 2026), and this Court should have applied a similar analysis to reject Plaintiffs' claim here.  But even if Plaintiffs were able to make such showing with respect to the VA's original CBA termination, the re-termination of the CBA evidences no animus towards Plaintiffs' speech, explaining that the unchallenged Executive Order alone is reason enough to terminate.

Second and similarly, the VA did not act arbitrarily and capriciously in terminating (and re-terminating) the CBA because the terminations flowed

directly from the President's Executive Order, which, as noted above, is not being challenged in the instant litigation and remains a valid directive.

Additionally, the Court's enforcement order found that the VA violated the terms of the PI, but that too was in error. The Court's original preliminary injunction order only reinstated the CBA, and did not announce that the Court would be policing the VA's compliance with every term of that CBA. By announcing through its March 27 order that it intended not just to order relief regarding the *existence* of the CBA, but also to police the terms of any alleged violation of the CBA—an authority Congress gave exclusively to the Federal Labor Relations Authority (FLRA) and courts of appeals, not district courts—this Court exceeded its jurisdiction and encroached on the Executive Order's exclusion of the VA from the FSLMRS, the validity of which neither the Plaintiffs nor the Court contest. And the Court further erred in concluding that the re-termination of the CBA somehow violated the Court's earlier orders, only days after agreeing with Defendants that the Court's preliminary injunction did not prohibit re-termination of the CBA.

The Court's errors do not merely preserve a status quo. Instead, the injunction affirmatively requires the VA to reinstate and apparently perform under the CBA, even after it was properly re-terminated, in a manner that has irreparably harmful consequences. Specifically, the injunction impinges on the VA's ability to redirect their employees to mission-oriented work that advances national security and will generate enormous costs in reimplementing the CBA that cannot be recovered by Defendants when the CBA is later re-terminated after success in the Court of Appeals, at the risk of being held in contempt by this Court. Finally, the balance of the equities favors a stay to permit the VA to advance its important national security work in a manner dictated by the President.

## BACKGROUND

The Court is familiar with the facts of this case, which are largely undisputed. *See* PI Order at 2–4.

To summarize, on March 27, 2025, the President determined that several agencies, including the VA, have as a primary function intelligence, counterintelligence, investigative, or national security work and that the FSLMRS cannot be applied to those agencies in a manner consistent with national security requirements and considerations. *See Executive Order 14241 of Mar. 27, 2025*, 90 Fed. Reg. 14553 (Apr. 3, 2025) ("Executive Order" or "EO"). The EO contained the required statutory findings for the President to exclude the VA from the FSLMRS' coverage. *See* 5 U.S.C. § 7103(b)(1).

On June 24, 2025, AFGE, the national exclusive bargaining representative for the employees at issue in the instant matter,[2] filed suit in the Northern District of California, including against Defendants the VA and Secretary Collins, challenging their implementation of the Executive Order. *See Am. Fed. of Gov't Emps. v. Trump*, No. 4:25-cv-3070, ECF No. 1 (Compl.). The district court in California originally granted the plaintiffs a preliminary injunction. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 792 F. Supp. 3d 985, 989 (N.D. Cal. 2025). Shortly thereafter, the Ninth Circuit stayed that injunction pending appeal. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648 (9th Cir. 2025). Recently, the Ninth Circuit vacated the preliminary injunction, finding that AFGE was unlikely to succeed on the merits of its claims. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 167 F.4th 1247, 1259 (9th Cir. 2026).

---

[2] Plaintiff NVAC is a council of AFGE; AFGE has previously delegated authority to NVAC to act on its behalf in certain VA matters, but AFGE remains the certified national exclusive bargaining representative.

Meanwhile, on August 6, 2025, based on the Executive Order, the VA announced the termination of its national CBAs for most bargaining unit employees. *See VA Terminates Union Contracts for Most Bargaining-Unit Employees*, VA News (August 6, 2025), https://news.va.gov/press-room/va-terminates-union-contracts-for-most-bargaining-unit-employees/ ("The announcement comes in response to President Trump's executive order that excludes certain federal agencies from labor-management relations programs."). AFGE and Plaintiff NVAC were among the unions that received notice of the termination of the CBA. *See* Ex. C to Am. Compl., ECF No. 13-3 ("pursuant to EO 14251, I am providing notice that VA is terminating the VA-AFGE MCBA . . ."). The VA took numerous steps to implement the termination. *See* Decl. of Tracey Therit, ECF No. 17-1 ¶ 16.

On November 4, 2025, after the Ninth Circuit stayed the preliminary injunction in the California case, Plaintiffs filed their complaint in this action, purporting to challenge only the VA's decision to terminate the CBA, not EO 14251 itself. *See* Compl., ECF No. 1. Three weeks later, Plaintiffs moved for a preliminary injunction, which the Court granted two weeks ago. Pls.' Mot. for Prelim. Inj. and Relief under 5 U.S.C. § 705 ("Motion for PI"), ECF No. 14; PI Order, ECF No. 30. Specifically, the Court found that it had jurisdiction over Plaintiffs' claims, rather than the claims being channeled to the FLRA, that this matter did not represent improper claim splitting with the California case, and that Plaintiffs were likely to succeed on the merits of their APA and First Amendment challenges to the VA's August 2025 termination decision.

Defendants subsequently moved for clarification on the contours of the Court's preliminary injunction. Defs.' Mot. for Clarification or Prelim. Inj. ("Clarification Mot."), ECF No. 32. Specifically, Defendants inquired whether the preliminary injunction prevented the VA from re-terminating the CBA and

7

whether the injunction extended to local unions who did not and could not sue in this Court.

On March 23, 2026, the Court granted Defendants' motion in a text order. Clarification Order.  The Court clarified that "[t]he Court is at a loss to understand how that conclusion and the resulting injunction could possibly be read to order that [] the Defendants are wholesale prohibited from terminating the Master CBA again prior to the end of the three-year term governing the contract." *Id.*; *see also id.* ("To reinstate the Master CBA means that all parties covered by this contract will continue to be covered by this contract until it is terminated or amended in a lawful manner."). The Court also clarified that "the Defendants must reinstate any contract that is not encompassed by the Master CBA and agreements related thereto as identified above." *Id.*

After Defendants' filings, Plaintiffs moved to enforce the PI.  Pls.' Mot. to Enforce the Prelim. Inj. ("Enforcement Mot."), ECF No. 33.  On March 26, relying on the Court's clarification, the VA re-terminated the CBA.  Defs.' Status Report, Exhibit ("Re-termination Letter"), ECF No. 36.  Specifically, in the Re-termination Letter, Secretary Collins cited the President's exclusion of the VA from the FSLMRS in the unchallenged Executive Order, the inability of the CBA to operate without the FSLMRS, and implementation of the President's national security findings in that Executive Order as the "[t]he three independent bases" for the re-termination.  *Id.* at 2–5.

Despite the Defendant's decision to re-terminate, thus availing themselves of the option this Court made clear remained permissible despite the preliminary injunction, on March 27, the Court granted Plaintiffs' enforcement motion, determining that the VA had violated the terms of its preliminary injunction.  Enforcement Order, ECF No. 39.  Specifically, the Court determined that the VA's re-termination was not in compliance with the

Court's order because any termination of the CBA had to be issued "in a lawful manner." *Id.* at 1. However, the Court did not provide any explanation as to why the VA's re-termination was unlawful. Based on the Courts' determination, the Court ordered the re-termination should "not be given any force or effect." *Id.* at 2. And the Court made clear that it had intended its preliminary injunction to govern more than just the existence or termination of the CBA, stating that the VA was required to give effect to the CBA "in both form *and* substance," thus making clear that the Court intends to supervise Defendants' performance of the collective-bargaining duties set out in the CBA. *Id.* at 2 (emphasis in original). Soon after the Court's order, Defendants appealed both the Court's preliminary injunction order and order enforcing that injunction to the First Circuit. Notice of Appeal, ECF No. 42.

Defendants, through this motion, now seek a stay of this Court's preliminary injunction order and its order enforcing that injunction pending their appeal to the First Circuit.

## LEGAL STANDARD

Courts consider four factors in assessing a motion for a stay pending appeal, all of which are similar to the four factors used to assess the basis for preliminary injunctive relief and to determine whether to dissolve or modify preliminary injunctive relief. Courts assess (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S.

9

770, 776 (1987).  When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

A stay is manifestly warranted here.  Defendants are likely to succeed on the merits of their appeal because the Court erred in issuing both the Preliminary Injunction and Enforcement Order.  Further, the VA and the general public are irreparably harmed by the VA's inability to implement the President's Executive Order.

### A.    The VA is Likely to Succeed on the Merits of its Appeal

The VA is likely to succeed on appeal regarding both orders.

#### 1.  *The District Court Lacked Jurisdiction to Enjoin the CBA Terminations*

The VA is likely to succeed in demonstrating that this Court's orders are invalid based on its finding that the CBA could operate while the VA is exempted from the FSLMRS.

Simply put, the CBA cannot be performed, and thus should not continue to exist, while the VA and the vast majority of its employees are excluded from the FSLMRS.  The FSLMRS provides that only a "[a] labor organization which has been accorded exclusive recognition" may "negotiate collective bargaining agreements," 5 U.S.C. § 7114(a)(1), yet without application of the FSLMRS, no union can be recognized as an exclusive representative, *see* 5 U.S.C. § 7103(a)(16) ("'exclusive representative' means any labor organization which— [] is certified as the exclusive representative of employees in an appropriate unit pursuant to section 7111 of this title[.]").  Also, the CBA itself incorporates various provisions of the FSLMRS.  *See, e.g.*, ECF No. 14-1 at 3 (§3(b)); 57 (§2); 220 (§ 3(A)).  In essence, the CBA is impossible to perform outside the authority

Congress granted and the carefully balanced regime Congress established in the FSLMRS.  A federal collective-bargaining agreement with a union Congress has not authorized to be an exclusive representative with respect to employees whom Congress has not authorized to engage in collective bargaining, and which contains a remedial scheme that is no longer applicable, cannot be performed.

The FSLMRS provides limited jurisdictional avenues to litigate alleged violations of CBA provisions.  An employee or union may file a charge with the FLRA alleging an agency has engaged in an unfair labor practice, which can include, inter alia, a failure to negotiate in good faith or comply with any FSLMRS provision.  *See* 5 U.S.C. §§ 7116, 7118(a)(1); 5 C.F.R. §§ 2423.3-2423.6.  The FLRA's General Counsel "shall investigate" any such charge and may file a complaint against the agency before the FLRA. 5 U.S.C. § 7118(a)(1)- (2); *see also id.* § 7104(f)(2).  Under this statutory scheme, an employee or union may also file a grievance through procedures that must be included in all collective bargaining agreements, culminating in an arbitration.  Arbitration awards can, with some exceptions, be appealed to the FLRA.  *See id.* §§ 7121–7122.  With certain exceptions, an FLRA final order is subject to judicial review in a court of appeals.  *Id.* § 7123(a).

The President's Executive Order excluded the VA from the FSLMRS.  Neither Plaintiffs nor the Court contest the continued validity of the Order.  Indeed, Plaintiffs are AFGE affiliates.  AFGE challenged the Executive Order directly in the Northern District of California, and while the district court there granted a preliminary injunction, that injunction was stayed by the Ninth Circuit and ultimately reversed.  *See Am. Fed'n of Gov't Emps.*, 167 F.4th 1247.  Plaintiffs do not challenge the validity of the President's exclusion of the VA from FSLMRS coverage in this suit, and this Court did not purport to question

11

that exclusion.  PI Order at 11.  The pathway Congress established for enforcement of a CBA is therefore gone—a result that Plaintiffs contend they are not challenging.  But the result of the elimination of that statutory pathway should not be the judicial creation of a new enforcement regime in district court—as then-Judge Roberts put it, "what you get under the [Civil Service Reform Act]"—of which the FSLMRS is a part—"is what you get."  *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005).

Nevertheless, by extending its preliminary injunction well beyond the mere *existence* of a CBA—the ostensible subject of this litigation—the Court has in effect created a shadow collective-bargaining-enforcement regime unlike anything Congress contemplated in the FSLMRS.  This Court has invented a means for Plaintiffs to enforce a CBA that became unenforceable by operation of law with the EO:  challenge the termination of said CBA, and then seek specific performance of the many collectively bargained duties in that CBA through this Court's contempt power.  But as Defendants pointed out in their opposition to the motion to enforce, the Court does not have jurisdiction to order specific performance of the CBA.  *See* Defs.' Resp. to Pls.' Mot. to Enforce the Prelim. Inj. at 5–9, ECF No. 34.  To the extent Plaintiffs sought to enforce any right afforded under the FSLMRS, the valid Executive Order removed the VA from application of the FSLMRS.

Additionally, the Court does not have jurisdiction to enforce each and every term of the CBA, amounting to a novel contract remedy of "general performance."  That is improper under federal labor law, federal contract law, and even common law.  *See id.* at 7–8 (citing cases).  Quite simply, the "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations."  *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989).

12

### 2. *The District Court Erred in Concluding that Plaintiffs Were Not Claim-Splitting*

The VA is likely to succeed in demonstrating that Plaintiffs' action here constitutes improper claim-splitting given AFGE's action challenging the President's Executive Order and its implementation in the Northern District of California.  As this Court recognized, "[t]he principle against splitting claims between different courts says that all claims pertaining to the same, single transaction or a series of related transactions between the same parties need to be adjudicated together, as part of the same case."  PI Order at 10 (citing *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998)).  Yet when the Court analyzed that principle in its preliminary injunction order, it badly erred.

In the Northern District of California case challenging the President's Executive Order, AFGE specifically sought relief in the form of a declaratory judgment "that the [President's] Exclusion Order, the Exclusion Memorandum, and *the associated termination of federal CBAs and grievances* violates the First Amendment, Fifth Amendment, and is ultra vires."  Compl. at 41, *Am. Fed. of Gov't Emps. v. Trump*, No. 4:25-cv-3070, ECF No. 1 (N.D. Cal. Apr. 3, 2025) (emphasis added).  AFGE is a party to the CBA at issue in this case, whereas the nominal plaintiffs here—the AFGE affiliates NVAC and AFGE Local 2305— are not. Am. Compl., Ex. A at 2 § 1, ECF No. 13-1 (Master Agreement between the VA and AFGE (Aug. 8, 2023)).  And in the Northern District of California litigation, AFGE specifically sought relief as to the "associated terminations" of CBAs as a result of the President's Executive Order excluding agencies subject to those CBAs from the FSLMRS' bargaining requirements.

Yet this Court reasoned that somehow the Plaintiffs here were not claim-splitting because the CBA terminations here occurred later, after the California

13

district court had inexplicably lost jurisdiction during the appeal of that court's preliminary injunction order.  PI Order at 11.  This Court did not explain how the district court actually lost jurisdiction over the case—it did not—nor acknowledge that AFGE sought relief there as to CBA terminations resulting from the Executive Order.  Moreover, the VA's terminations of the CBA here are inevitably part of the same transaction, namely the President's Executive Order excluding the VA from the FSLMRS' protections.

### 3.  *The Court Erred in Determining that Plaintiffs are Likely to Succeed on their First Amendment Claim*

The Court determined that Plaintiffs were likely to succeed on their First Amendment challenge to the VA's August 2025 termination because, taking into account a number of extraneous documents beyond the facially-neutral termination notice, that termination allegedly demonstrated animus towards Plaintiffs' speech.  *See* PI Order at 12–18.  This was error.

First, and most evident, the VA re-terminated the CBA, as the Court affirmed it could, based on reasons having nothing to do with Plaintiffs' speech. *See* Re-termination Letter at 3–5.  This mooted Plaintiffs' original First Amendment claims and the Court erred in carrying those reasons into the re-termination, particularly without any explanation.  Indeed, the Court provided no analysis of why this new termination was not conducted "in a lawful manner." Enforcement Order at 1.

The Court also erred in determining the VA retaliated against Plaintiffs in the first instance.  Instead, the Court should have denied Plaintiffs' preliminary injunction motion by determining that the termination flowed from the President's Executive Order, which itself was based on national security considerations and not animus, just as the Ninth Circuit did.  *See Am. Fed'n of Gov't Emps.*, 167 F.4th at 1256–58.  Because the termination of the CBA was

the natural result of the President's exclusion of the VA from the FSLMRS's collective-bargaining regime, it too was based on permissible grounds.  *See* Ex. C to Am. Compl., ECF No. 13-3 (Secretary Collins stating that "pursuant to EO 14251, I am providing notice that VA is terminating the VA-AFGE MCBA . . .").

This is only made clearer through the re-termination, as the Secretary's Re-Termination Letter expressly grounds the termination on "three independent bases" that have nothing to do with retaliation or Plaintiffs' speech:  the President's removal of the VA from the FSLMRS, the CBA's inability to operate without the FSLMRS, and implementation of the President's national security determinations.  Re-termination Letter at 2–5. When a court invalidates an agency action, "the agency can 'deal with the problem afresh' by taking *new* agency action" supported by "new reasons." <u>DHS v. Regents of the Univ. of California</u>, 591 U.S. 1, 21 (2020) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)).  And that is true here:  the Court deemed the first termination unlawful because the Court concluded it "was motivated by retaliation for the Plaintiffs' advocacy on behalf of their membership" based on various statements surrounding the termination, the fact that the Office of Personnel Management (OPM) Guidance at the time directed agencies not to terminate CBAs, and the VA allegedly "favored some unions over others" in the April 11 Exemption Order.  PI Order at 14–18.  The re-termination, however, was based on the President's removal of the VA from the FSLMRS, the CBA's inability to operate without the FSLMRS, and implementation of the President's national security determinations.  Re-termination Letter at 2–5.  Without FSLMRS coverage, the CBA could not be performed.  In addition, various features the Court relied on in finding animus with respect to the first termination are no longer applicable (and were not when the re-termination occurred).  For example, the Court's animus finding

15

relied in part on the VA's actions not being consistent with OPM's Guidance that existed at the time of the first CBA termination; that Guidance instructed agencies to not terminate CBAs at that point. PI Order at 16–17 & n.7. However, in February 2026 (*i.e.*, approximately one month before the VA re-terminated the CBA), OPM issued updated guidance instructing agencies covered by EO 14251 to terminate their CBAs. *Id.* at 16–17. The Court's animus finding also relied in part on the VA's alleged picking and choosing among its unions, based on the April 11 Exemption Order, *id.* at 17, but that order has been rescinded, and the bargaining agreements for all unions representing employees subject to the President's Executive Order have been terminated. Exhibit A, Decl. of Mark Engelbaum ¶ 10(j).

The Court therefore erred in determining that Plaintiffs are likely to succeed on their First Amendment retaliation claim.

### 4. The Court Erred in Determining that Plaintiffs are Likely to Succeed on their APA Challenge

#### a. The Original Termination did not Violate the APA

The Court determined that Plaintiffs were likely to succeed on their APA claim because the VA did not sufficiently explain its termination reasoning, did not sufficiently base that reasoning on the President's national security determinations, and that the termination arbitrarily included some unions, but not others. PI Order at 19–24.

First, no further explanation was needed for the termination because, again, the termination was the natural result of Defendants' execution of the President's Executive Order after the Ninth Circuit allowed it to take effect as to the VA. The President is not an "agency" under the APA, 5 U.S.C. § 701(b)(1), and the President's actions therefore "are not subject to [the APA's] requirements" and "are not reviewable" under the APA, *Franklin v.*

16

*Massachusetts*, 505 U.S. 788, 800-801 (1992).  Plaintiffs cannot evade that conclusion by purporting to challenge the VA's termination, which merely carries out the President's decision.  As this Court acknowledged, the VA's August 6, 2025 termination came mere days after the Ninth Circuit stayed a preliminary injunction AFGE had obtained enjoining the implementation of the Executive Order.  PI Order at 15.  This Court acknowledged that "[t]iming is important," but then inexplicably brushed it aside.  *Id.*  Moreover, the Court erred in concluding that the VA needed to give national-security reasons for its termination.  PI Order at 23 ("Without any mention of the basis authorized by the FSLMRS and the EO for terminating coverage of Chapter 71 protections and therefore the collectively bargained agreements between unions and agencies or subdivisions, the Court concludes that the reasons on which the Defendants relied in August to explain the termination and the perceived benefits thereof cannot be a reasonable explanation for this agency action.").  The President already made the national security determination, as the statute, 5 U.S.C. § 7103(b), contemplates, and Defendants had no obligation to make independent national-security findings.

Even if the APA's reasonable explanation requirement applied, Secretary Collins "acted within a zone of reasonableness" when terminating the CBA.  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  In doing so, he publicly stated, and the Plaintiffs acknowledge, that the Secretary's "basis for ordering the Termination was the Executive Order."  Pls. Mem. of Points and Authorities in Support of Mot. for Prelim. Inj. at 23, ECF No. 14-1.  Given the President's statutorily authorized determination in EO 14251 that most of the VA should not be subject to the requirements of the FSLMRS, it was reasonable, not arbitrary or capricious, to cancel the CBA because of the Executive Order.

17

Even on its own terms, the Court's arbitrary-and-capricious finding erroneously relied on incorrect factual premises. The Court determined that the termination was arbitrary and capricious because it unevenly excepted VA employees covered by certain unions. *See* PI Order at 21–22. But the VA terminated all the relevant CBAs on November 13, 2025, eliminating any alleged unevenness by the time the Court's order was issued in March 2026, thus eliminating the basis for the Court's ruling. *See* 90 Fed. Reg. 50950 (Nov. 13, 2025).

Overall, Secretary Collins' reasonable decision to implement the Executive Order by cancelling the CBA for the employees covered by the Executive Order was not arbitrary and capricious. Despite the Court's parsing of the Secretary's "efficiency concerns" vs. national security concerns, *see* PI Order at 22–24, no more was needed to uphold reasoned decision making than pointing to the President's determinations.

### b. *The re-termination did not violate the APA*

In re-terminating the CBA, the Secretary explained in depth that he was terminating the CBA because it became unenforceable by operation of the Executive Order, that the CBA could not operate while the VA is excluded from the FSLMRS, and that the termination was warranted given the President's national security determinations regarding the agency's mission. Re-termination Letter at 2–5. The Court in finding that the re-termination violated the preliminary injunction, provided no explanation why the re-termination was allegedly "unlawful" or otherwise failed to comply with the APA.

18

### 5. *The Court's Order Granting the Motion to Enforce Is Erroneous*

Even accepting the premise that the CBA could stand alongside the President's Executive Order, which excluded the VA from the FSLMRS, the Court erred in determining that the VA violated the terms of the preliminary injunction. Specifically, the preliminary injunction said nothing regarding performance, requiring only that the VA "reinstate the Master CBA—as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA." PI Order at 29. Defendants did exactly that. The Court then affirmed that the VA could terminate the CBA pursuant to lawful grounds. Defendants did exactly that. Nevertheless, the Court determined Defendants violated the PI without explanation, stating only that "[t]he re-termination letter issued yesterday is not in compliance with this Court's clarification that 'all parties covered by [the CBAs] will continue to be covered by this contract until it is terminated or amended *in a lawful manner*.'" Enforcement Order at 1 (emphasis in original).

First, it was error to determine that merely re-terminating the CBA constituted a violation of the preliminary injunction. The Court never explained why the re-termination was unlawful. And, as argued below, it was lawful. *See infra* at Section A.6.

Second, Plaintiffs' alleged violations of the CBA, *see* Enforcement Mot. at 9–11, were no grounds to find a violation of the preliminary injunction. The key defect with Plaintiffs' allegations, and the Court's order, is that both conflate *reinstating* the Master CBA with *adhering* to each and every one of its terms in existence before issuance of the President's Executive Order. As Defendants have previously pointed out, the CBA contains its own provisions for addressing alleged violations of the CBA (which rely on the provisions of the FSLMRS,

19

including FLRA review and carefully limited pathways to review of FLRA orders in the courts of appeal), and this Court does not have jurisdiction to hear breach of contact claims (whether collective-bargaining-related or not) against the government—let alone to order a novel contract remedy of "general performance."  *See* Defs.' Resp. to Pls.' Mot. to Enforce the Prelim. Inj., ECF No. 34.

Moreover, following the Court's order on March 23, 2026, clarifying that the VA was permitted to re-terminate, the VA did re-terminate, rendering moot the motion to enforce.  The motion sought only prospective, not retrospective, relief.  Mot. to Enforce at 1.

Reference to *AFL-CIO v. Noem*, No. 2:25-CV-00451-JNW, 2026 WL 113599 (W.D. Wash. Jan. 15, 2026), does not save Plaintiffs' claims.  *See* Pls.' Resp. to Defs.' Status Report at 1, ECF No. 37.  That Court determined that the Secretary of Homeland Security's recission of a CBA directly violated the terms of the existing preliminary injunction.  *See id.* at *3.  Here, the Court's preliminary injunction did not prevent the VA from re-terminating the CBA. The Court made this clear in granting Defendants' motion for clarification.  *See* Clarification Order ("The Court is at a loss to understand how that conclusion and the resulting injunction could possibly be read to order that (1) the Defendants are wholesale prohibited from terminating the Master CBA again prior to the end of the three-year term governing the contract").  Furthermore, the scope of the unions' challenge is materially different between the two cases, leading to understandably different preliminary relief.  Whereas the unions in *AFL-CIO v. Noem* challenged *both* the CBA termination and the Homeland Security Secretary's authority to suspend collective bargaining (TSA operates under the Aviation Transportation Security Act, not the FSLMRS), the Plaintiffs in this case challenge *only* the CBA termination. Notwithstanding the

20

Government's disagreement with the *AFL-CIO v. Noem* court, the relief in this case is necessarily narrower because Plaintiffs do not challenge the VA's exclusion from the FSLMRS pursuant to EO 14251 (i.e., provisions of the CBA that require application of the FSLMRS cannot be performed).

In granting Plaintiffs' motion to enforce, the Court ruled that the VA's re-termination of the CBA on March 26, 2026 had not been done "*in a lawful manner.*" ECF No. 39 at 1. But the Order provided no basis for that finding, and of course the VA maintains that its re-termination was lawful. "Every order granting an injunction . . . must," among other things, "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "These specificity requirements are not 'mere[ly] technical' but are 'designed to prevent uncertainty and confusion . . . and to avoid' basing a 'contempt citation on a decree too vague to be understood.'" *NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam)).

### 6. *VA's Re-termination Was Proper*

The Court's Enforcement Order invalidating the re-termination erred in failing to recognize the legitimate terms on which the VA re-terminated the CBA. Again, the Court explicitly recognized that the VA could re-terminate the CBA. *See* Text Order (Mar. 23, 2026). The letter sent by Secretary Collins to Plaintiffs lays out the legitimate reasons for terminating the CBA, namely that (1) the President excluded the VA from FSLMRS coverage; (2) the CBA cannot operate without the FSLMRS; and (3) the continued application of the FSLMRS and CBAs entered under it to employees covered by EO 14251 (*i.e.*, employees excluded from the FSLMRS' coverage) is inconsistent with the President's determinations regarding the VA's national security functions. *See* Re-

21

termination Letter at 2–5.  The Court provided no explanation as to why the re-termination was unlawful.  This too was error.

## B.    The VA will be Irreparably Harmed Absent a Stay

This Court's preliminary injunction and subsequent enforcement order impinge on Defendants' ability to redirect VA employees to mission-oriented work that advances national security.

The Court's orders threaten the VA with contempt if it does not abide by each and every provision of the CBA for hundreds of thousands of employees until the Court says otherwise.  This Court's enforcement order makes this clear by requiring Defendants' "reinstatement of and compliance with the Master CBA, along with any amendments, local supplemental agreements, and memoranda of understanding related thereto … both form *and* substance." Enforcement Order at 2.  Unlike the original terms of the preliminary injunction, which required only reinstatement and did not extend the Court's supervision to performance of the collective-bargaining duties in the CBA, the enforcement order announced this Court's intention to supervise such performance under threat of contempt.  The Court specifically directed the VA that "the currently pending grievances and arbitrations submitted under the Master CBA will continue to be processed." *Id.*  Mandating immediate compliance with the CBA provisions causes *immediate* harm to the VA for a number of reasons discussed below.  *See infra.*  And as this Court's enforcement states expressly, any attempt to re-terminate the CBA absent a specific order of this Court allowing such action will be met with immediate contempt proceedings.  In fact, this Court has already ordered Defendants to show cause by "Tuesday, March 31" as to why the "the re-termination letter ostensibly filed as a Status Report on March 26 to be in blatant violation of the Preliminary

22

Injunction Order in place and therefore in *contempt* of this Court." *Id.* The show-cause hearing on this issue is scheduled for Friday, April 3. *Id.*

Moreover, the Court's order requiring the VA to apply every provision of the CBA is a windfall to Plaintiffs—it returns the parties to the pre-Executive Order status quo, not the status quo before the August 6, 2025 CBA termination challenged here. Even before the CBA termination, the VA began requesting that FLRA proceedings and grievance arbitrations under the CBA be stayed or held in abeyance pending litigation on the Executive Order, and stopped collecting union dues from employees' paychecks. Engelbaum Decl. ¶ 10(b)–(d). And here, it is unclear whether the Court's orders will require compliance with grievance arbitration awards, even where the FLRA will not currently hear the VA's exceptions given the Executive Order. *Id.* ¶ 11(h)(ix). The "purpose of a preliminary injunction is to preserve the status quo," not return the parties to a world that did not exist before the agency action at issue. *See CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 621 (1st Cir. 1995).

This Court's preliminary injunction and enforcement orders cause irreparable harm because compliance will require the VA to take immediate steps and incur immediate losses that will not be recoverable later. For example, following the CBA's termination, "the VA reclaimed over 180,000 square feet of office space, worth approximately $5.4 million." Engelbaum Decl. ¶ 11(a). And the VA repurposed that space to be "used for mission-related work, including expanding administrative and clinical services in several facilities across the country to provide and facilitate Veteran care." *Id.* Under the Court's orders, the VA must now immediately return that space, negatively impacting Veteran care and other mission-related work. *Id.* The Court's orders will also require the VA to allow nearly 2,000 employees—the majority of whom work in direct patient-care roles—to return to spending some or all of their

23

working hours on official time completing union activities, rather than their VA-assigned duties. *Id.* ¶ 11(b). This will cost taxpayers tens of millions of dollars this year alone. *Id.* And this Court's orders require the VA to immediately resume collecting union dues from employees when the VA lacks information on which employees are now paying their membership dues directly to Plaintiffs. *Id.* ¶ 11(c). The VA has not been collecting such dues for nearly a year and has no information on which employees remain dues-paying members of the union. *Id.* This will result in double payment of dues for many employees and will cause the VA irreparable financial harm because it could be held financially responsible for the employees' double payment of dues; regardless, the VA will face significant administrative costs to re-implement dues collection. *Id.* Plaintiffs have not agreed to pay back any such costs should Defendants prevail, and thus these funds would be unrecoverable absent a much larger bond than the one the district court ordered here ($1,000). *See Am. Ass'n of Public Health*, 145 S. Ct. at 2659 (citing *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers)).

The irreparable harm is exacerbated here because, as the President's here-unchallenged Executive Order makes clear, these harms to the VA implicate national security. The clear congressional purpose of § 7103(b)(1) is to allow the President to guarantee the effective operation of agencies relevant to national security without the constraints of collective bargaining. "The interest in preserving national security is an urgent objective of the highest order." *Trump v. International Refugee Assistance Project*, 582 U.S. 571, 581 (2017) (per curiam) (quotation marks omitted). To interfere with the President's assessment of the government's investigative, intelligence, and national-security functions "would appreciably injure [the Nation's] interests." *Id.* at 582; *see also Winter*, 555 U.S. at 31 (holding that it would be "cold comfort" to

24

allow the Navy to request relief from a preliminary injunction on an emergency basis if the injunction "actually results in an inability to train and certify sufficient naval forces to provide for the national defense" (alteration and quotation marks omitted)).  This is why the Ninth Circuit and two D.C. Circuit stay panels have determined that the Government would be irreparably harmed absent a stay of orders enjoining the President's Executive Order.  *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 655–56 (9th Cir. 2025); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-1020, 2025 WL 1742853 at *3 (D.C. Cir. June 20, 2025) (per curiam) (staying preliminary injunction of Section 3 of the Executive Order); *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025) (staying preliminary injunction of Section 2 of the Executive Order).

As the VA's re-termination notice explains, several provisions of the VA's CBA make the VA less able to fulfill its congressionally-mandated "Fourth Mission" to improve the nation's preparedness for war, national emergencies, and the like.  Re-termination Notice at 3–4 & n.5; *see also* Engelbaum Decl. ¶¶ 5–7, 11(f), (h).  Many of these CBA provisions delay VA's ability to quickly adapt and respond to threats to its national security functions.  For example, the CBA requires the VA to bargain over changes to conditions of employment; requires ten-days' notice before effectuating a temporary detail and thirty-days' notice before effectuating an administrative reassignment or involuntary reassignment; creates a grievance and arbitration process that prevents VA from quickly disciplining or removing employees for poor performance or misconduct; and requires allowing employees to conduct union business on official government time.  Re-termination Notice at 4 & n.7.

The VA thus satisfies the third factor—i.e., that it will suffer irreparable harm absent a stay.

**C.      The Remaining Factors Favor a Stay**

Finally, the remaining two factors favor a stay.  As noted above, once an applicant for a stay satisfies the first two factors, the traditional stay inquiry calls for assessing (1) the harm to the opposing party, and (2) weighing the public interest. *Nken v. Holder*, 556 U.S. 418, at 435.  But when the government is a party, "[t]hese factors merge." *Id.*  These last two factors favor a stay pending appeal.  While this Court found that Plaintiffs have been harmed by declining union membership and the loss of the benefits previously available under the CBA, ECF No. 30 at 26, this Court's preliminary injunction and enforcement order constitute an extraordinary intrusion into the President's statutory authority to determine whether agencies with a primary intelligence, investigative, or national security function should be excluded from coverage under Chapter 71.  National security is a greater public interest than the rights of labor organizations.  By reinstating the CBA and ordering that its provisions be followed substantively, the Court is effectively requiring the VA to continue acting as though the FSLMRS has the same force, effect, and applicability to employees who are expressly excluded from its coverage by operation of the President's Executive Order.

**CONCLUSION**

For the reasons identified above, Defendants respectfully request that this Court stay its preliminary injunction and enforcement order pending resolution of Defendants' appeal to the U.S. Court of Appeals for the First Circuit.

26

Dated: March 29, 2026

Respectfully submitted,

UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS; and
DOUGLAS A. COLLINS, in his
official capacity as U.S. Secretary of
Veterans Affairs,

By their attorneys,

CHARLES C. CALENDA
United States Attorney

*/s/ Tyler J. Becker*
Tyler J. Becker
(VA Bar No. 97636)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
Office of the Assistant Attorney General
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 514-4052
Tyler.Becker@usdoj.gov

Andrea Hyatt
Assistant U.S. Attorney
One Financial Plaza, 17th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5001 (Fax)
Andrea.Hyatt@usdoj.gov

27

## CERTIFICATE OF SERVICE

I hereby certify that, on March 29, 2026, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 304.

*/s/ Tyler J. Becker*

TYLER J. BECKER
Counsel to the Assistant Attorney
Geneal

28