# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305<br><br>*Plaintiffs,*<br><br>**v.**<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and<br><br>DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs<br><br>*Defendants.* | **Case No. 1:25-cv-00583-MRD-PAS** |

## OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY PENDING APPEAL

6105036

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

LEGAL STANDARD..............................................................................................................6

ARGUMENT............................................................................................................................6

      A.    Defendants fail to make a strong showing that they are likely to win reversal of the preliminary injunction....................................................................6

          1.    Defendants are unlikely to show that the Court lacked jurisdiction to enjoin the Termination................................................................................6

          2.    Defendants are unlikely to show that this Court abused its discretion when it rejected the claim-splitting argument..............................9

          3.    Defendants fail to demonstrate that they are likely to win reversal of the Court's First Amendment determination. .......................................10

          4.    Defendants are unlikely to demonstrate that the Court erred in ruling that the Termination violated the APA............................................10

      B.    Defendants fail to make a strong case that they are likely to win reversal of the Enforcement Order or that the Court erred by blocking the "re-termination." ................................................................................................................12

      C.    Defendants fail to demonstrate irreparable harm...................................................16

      D.    The balance of the equities and the public interest cut in Plaintiffs' favor............19

EFFECT OF THIS COURT'S FORTHCOMING ORDER ........................................................19

CONCLUSION........................................................................................................................20

CERTIFICATE OF SERVICE ................................................................................................21

6105036

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AFGE v. Noem*,
   2026 WL 113599 (W.D. Wash. Jan. 15, 2026)....................................................................14, 15

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   167 F.4th 1247 (9th Cir. 2026) ..............................................................................6, 9, 10, 13

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*,
   145 F.4th 39 (1st Cir. 2025)................................................................................................9, 13

*AngioDynamics, Inc. v. Biolitec AG*,
   780 F.3d 420 (1st Cir. 2015)....................................................................................................16

*Carrozza v. CVS Pharmacy, Inc.*,
   992 F.3d 44 (1st Cir. 2021)............................................................................................7, 9, 11

*Coggeshall Dev. Corp. v. Diamond*,
   884 F.2d 1 (1st Cir. 1989)..........................................................................................................9

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*,
   551 F.3d 10 (1st Cir. 2008)......................................................................................................14

*Conservation L. Found., Inc. v. Longwood Venues & Destinations, Inc.*,
   415 F. Supp. 3d 240 (D. Mass. 2019) ......................................................................................9

*DHS v. Regents of the Univ. of California*,
   591 U.S. 1 (2020)....................................................................................................................15

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012)......................................................................................................................9

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005).....................................................................................................17

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
   445 U.S. 375 (1980)................................................................................................................13

*Hawkins v. Dep't of Health & Hum. Servs. for New Hampshire, Com'r*,
   665 F.3d 25 (1st Cir. 2012)......................................................................................................16

*J.G.G. v. Trump*,
   2025 WL 3198891 (D.D.C. Nov. 14, 2025) ...........................................................................14

ii

*Nat'l Treasury Emps. Union v. Vought*,
    2025 WL 3771192 (D.D.C. Dec. 30, 2025)..................................................................14

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025).........................................................................................6, 11

*New York v. Trump*,
    2026 WL 734941 (1st Cir. Mar. 16, 2026) ......................................................................13

*Nken v. Holder*,
    556 U.S. 418 (2009).............................................................................................................3

*Ohio v. Env't Prot. Agency*,
    603 U.S. 279 (2024)...........................................................................................................12

*Rhode Island State Council of Churches v. Rollins*,
    158 F.4th 304 (1st Cir. 2025).....................................................................................6, 9, 13

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)...........................................................................................................15

*Shillitani v. United States*,
    384 U.S. 364 (1966)........................................................................................................9, 13

*Somerville Pub. Schs. v. McMahon*,
    139 F.4th 63 (1st Cir. 2025)................................................................................................6

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
    788 F.3d 25 (1st Cir. 2015).......................................................................................7, 9, 11

*Unite Here Loc. 217 v. Sage Hosp. Res.*,
    722 F. Supp. 2d 169 (D.R.I. 2010)......................................................................................6

**Federal Statutes**

5 U.S.C. § 705....................................................................................................................9, 13, 15

**Constitutional Provisions**

First Amendment ............................................................................................................... *passim*

6105036

**INTRODUCTION**

Defendants' Motion to Stay relies on two untenable arguments. First, Defendants argue that the Court should stay its well-reasoned preliminary injunction order because the Master CBA is "irreconcilable" with Executive Order 14251 and "impossible to perform outside … the FSLMRS." Dkt. 45-1 at 3, 10–11. Next, Defendants continue to draw a distinction between "reinstating" the Master CBA in form only (which Defendants suggest they would accept) and "adhering" to it in substance (which Defendants apparently cannot abide), and they argue that the Court overstepped by requiring "adherence" to the Master CBA in form *and* substance.

No appellate court is likely to accept these arguments. To start with the claim that the Court's preliminary injunction is "irreconcilable" with Executive Order 14251, Defendants did not raise this argument in opposition to Plaintiffs' motion for a preliminary injunction. As such, the argument is waived and cannot be the basis for a reversal. But the argument also fails on the merits. Defendants never explain how adhering to the Master CBA, which Defendants negotiated and signed, is irreconcilable with the Executive Order, which does not mention collective bargaining agreements, much less require their termination. Nor do Defendants explain how the Master CBA is "impossible to perform" if the employees represented by Plaintiffs are no longer covered by the FSLMRS. To the contrary, for nearly three months (between March 27, 2025, when the Executive Order issued, and June 24, 2025, when it was enjoined by a federal court in California) Defendants left the Master CBA in place, and adhered to its terms, even though the Executive Order was in effect. Moreover, after the California court's injunction was stayed on July 7, such that the Executive Order was again in effect, Defendants left the Master CBA in place until August 6. There is thus no legal or practical reason why Defendants cannot adhere to the Master CBA now.

1

6105036

Defendants' insistence on a distinction between *reinstatement of* and *adherence to* the Master CBA fares no better.  Again, this argument is unlikely to lead to reversal because Defendants did not raise it in opposing Plaintiffs' request for a preliminary injunction.  To the contrary, one of Defendants' main arguments in opposition to Plaintiffs' preliminary injunction motion was to assert that compliance with the requested injunction would be onerous.  In doing so, Defendants described in detail how *substantive* adherence to the Master CBA would look, belying any claim that Defendants were surprised to learn that the preliminary injunction required Defendants to adhere to the terms of the Master CBA.  Moreover, the preliminary injunction clearly requires that the Defendants reinstate the substantive provisions of the Master CBA; the word "reinstate" is clear and unambiguous. In short, when they profess that they thought that all that was at stake in Plaintiffs' preliminary injunction motion was nominal reinstatement of the Master CBA, Defendants are fooling no one.

Defendants likewise fail to show how they can meet the demanding standard for a stay pending appeal.  *First,* Defendants cannot show a likelihood of succeeding on the merits of their appeal from the Court's preliminary injunction.  They argue that the Court lacked jurisdiction to require reinstatement of the Master CBA, but the most relevant appellate authority holds that jurisdiction is proper.  Defendants argue that this Court erred in rejecting their claim-splitting defense, but they fail to acknowledge that that is a discretionary doctrine, let alone show how the Court abused its discretion in rejecting the defense.  Defendants argue that they are likely to flip the First Amendment analysis, but they will have the same flaw on appeal that they had in this Court—they failed to introduce any evidence to show that they would have ordered the Termination even in in the absence of Plaintiffs' protected speech and conduct.  Defendants argue that the Court's APA ruling was incorrect, but their main argument—that the Secretary's

2

6105036

action is unreviewable because he was following the President's orders—is foreclosed by binding First Circuit precedent.

Defendants likewise fail to show that they will succeed on their appeal from the Court's enforcement order. That order is not even appealable, and, in any event, Defendants' argument relies on authority that the First Circuit has held to be inapplicable to APA claims. Defendants argue that the Court permitted them to re-terminate the Master CBA, but they ignore critical text in the relevant order—the phrase "lawful manner"—as well as the rule that a defendant seeking relief from an injunction must move for such relief, not engage in self-help.

Defendants do no better on the other three prongs of the *Nken* analysis. Their irreparable harm argument reduces to asserting that they will bear costs when they comply with the Master CBA. But the cost of compliance is not itself a harm, particularly when the issue is complying with an agreement that Defendants signed. And, given the grave harms that Plaintiffs substantiated at the preliminary injunction phase, the balance of the equities tips sharply in Plaintiffs' favor.

Defendants' Motion to Stay is meritless. It should be denied in an order that also clarifies that the Court will continue to enforce the preliminary injunction pending appeal.

## BACKGROUND

The facts are well known to the Court and parties. On March 27, 2025, the President issued Executive Order 14251, which purported to exclude certain federal agencies and subdivisions thereof, including Defendant, the Department of Veterans Affairs ("VA"), from coverage under the Federal Service Labor-Management Relations Statute ("FSLMRS" or "Chapter 71"). The application of Executive Order 14251 to Plaintiffs was enjoined by order of the United States District Court for the Northern District of California between June 24, 2025,

3

6105036

and July 7, 2025, when the District Court's injunction was stayed by the United States Court of Appeals for the Ninth Circuit.

Executive Order 14251 does not mention, much less require, the termination of collective bargaining agreements.  Between March 27. 2025, and June 24, 2025, during which time the Executive Order was not enjoined, Defendants took no action to terminate the Master Agreement between the VA and Plaintiffs. Moreover, after the Ninth Circuit stayed the District Court's injunction on July 7, 2025, Defendant VA Secretary Douglas Collins did not act, instead waiting until August 6 to issue the Termination.

Thereafter, Plaintiffs filed suit and sought a preliminary injunction.  On Friday, March 13, 2026, the Court issued a thorough, 29-page memorandum and order granting Plaintiffs' preliminary injunction motion.  The Court ordered:

> The Defendants shall reinstate the Master CBA—as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA—for the remainder of the agreed-upon term provided in the Master CBA.

Dkt. 30 at 29.

Since issuing the Preliminary Injunction, the Court has resolved two motions.  On Friday, March 20, 2026, Defendants filed a "motion for clarification."  Dkt. 32.  Defendants asked the Court to "clarify" that the preliminary injunction "does not enjoin re-termination of the Master CBA for other reasons" and does not apply to local supplemental agreements and memoranda of understanding between the VA and AFGE affiliates other than Plaintiffs.  *Id*. at 2.  The Court resolved the motion in a minute order stating that the preliminary injunction order could not be "read to order that (1) the Defendants are wholesale prohibited from terminating the Master CBA again prior to the end of the three-year term governing the contract or (2) the Defendants must reinstate any contract that is not encompassed by the Master CBA and agreements related thereto

4

6105036

as identified above." 3/23/26 Text Order.  In the following sentence, the Court added: "To reinstate the Master CBA means that all parties covered by this contract will continue to be covered by this contract until it is terminated or amended in a ***lawful manner***." *Id.* (emphasis added).

Also on Friday, March 20, Plaintiffs filed a motion to enforce the preliminary injunction. Dkt. 33.  Plaintiffs documented that, in the week following the Court's preliminary injunction order, Defendants had failed to abide by the terms of the Master CBA and that Defendants' only effort at compliance with the preliminary injunction was to issue a statement that the Master CBA was "reinstated." Dkt. 33-1 at 10–12.  In opposition, Defendants argued that the preliminary injunction requires only that they state that the Master CBA is "reinstated" and does not require them actually to adhere to the Master CBA.  Dkt. 34 at 5–6. Defendants also asserted that the Court lacks jurisdiction to require Defendants to adhere to the Master CBA.  *Id.* at 8. The Court set a hearing on Plaintiffs' motion to enforce for the morning of Friday, March 27.

At approximately 7:00 p.m. ET on Thursday, March 26, the night before the hearing on Plaintiffs' motion to enforce, without advance notice to Plaintiffs and without seeking the Court's input, Defendants purported to "re-terminate" the Master CBA effective immediately. Dkt. 36. On Friday, March 27, after holding a hearing, the Court issued a short order granting the motion to enforce.  Dkt. 39.  The Court enforced the preliminary injunction by requiring Defendants to comply with the reinstated Master CBA "in both form *and* substance."  *Id.* at 2 (emphasis in original).  The Court also ordered Defendants to show cause why the March 26 re-termination was not a violation of the preliminary injunction order and "in contempt" of the Court.  *Id.*  Hours after that hearing, Defendants filed a notice of appeal, Dkt. 42. Then, in the early hours of Sunday, March 29, Defendants filed this motion to stay and requested that the

Court to issue a decision the following day, Monday, March 30. Dkt. 45. Defendants have since "respectfully request[ed] a ruling by 12pm on Friday, 4/3."

## LEGAL STANDARD

A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and relief is not granted as "a matter of right." *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). "The appellants bear the burden of satisfying the well-established four-factor test for obtaining the extraordinary relief that is a stay of a preliminary injunction pending appeal." *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 68 (1st Cir. 2025). "To meet its burden for a stay, the government must satisfy four well-established requirements. It must make: (1) a strong showing that it is likely to succeed on the merits; (2) a showing that it will be irreparably injured absent a stay; (3) a showing that the issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) a showing that the public interest lies with it, not the plaintiffs." *Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (internal alterations, quotation marks, and citation omitted). District courts apply the same standard. *E.g.*, *Unite Here Loc. 217 v. Sage Hosp. Res.*, 722 F. Supp. 2d 169, 172 (D.R.I. 2010).

## ARGUMENT

**A.      Defendants fail to make a strong showing that they are likely to win reversal of the preliminary injunction.**

**1.      Defendants are unlikely to show that the Court lacked jurisdiction to enjoin the Termination.**

Defendants make three unconnected arguments about the Court's jurisdiction.

Defendants re-run their channeling argument. Dkt. 45-1 at 12. The Court rejected that argument, relying in part on *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 167 F.4th 1247, 1255 (9th Cir. 2026), a Ninth Circuit opinion also rejecting the same channeling argument in a

6

6105036

case about Executive Order 14251.  *See* Dkt. 30 at 9.  Further, the Court correctly applied the

*Thunder Basin* factors (which Defendants do not even cite) and noted, among other concerns,

that "the FLRA is not actually available as a tribunal the Plaintiffs can utilize for the claims

pending before this Court."  Dkt. 30 at 7.  Given that there is no countervailing authority,

Defendants are unlikely to prevail in reversing this Court's jurisdictional ruling.

Defendants argue that "the CBA cannot be performed, and thus should not continue to

exist, while the VA and the vast majority of its employees are excluded from the FSLMRS."

Dkt. 45-1 at 10.  As a result of this exclusion, Defendants assert, the "pathway Congress

established for enforcement of a CBA is therefore gone."  *Id.* at 12; *see also id.* at 11.  This

seems more like a merits argument than a jurisdictional one, but either way, Defendants failed to

make this argument in opposition to the preliminary injunction motion.  They therefore waived

it, meaning that this argument is unlikely to lead to a reversal.  *Sparkle Hill, Inc. v. Interstate

Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015) (arguments not raised in opening brief are waived);

*Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 59 (1st Cir. 2021) ("[A]ppellants cannot raise an

argument on appeal that was not 'squarely and timely raised in the trial court.'") (quoting

*Thomas v. Rhode Island*, 542 F.3d 944, 949 (1st Cir. 2008)).  Even if a court does consider this

argument, it will fail because Defendants never explain why the Master Agreement cannot exist

because certain provisions incorporate statutes in the FSLMRS.  *See* Dkt. 45-1 at 10 (citing ECF

No. 14-1 at 3 (§ 3(b)); 57 (§ 2); 220 (§ 3(A)).[1]  Defendants do not explain how or why they are

unable to comply with the Master CBA's contractual terms in the absence of FSLMRS coverage.

The FSLMRS's force is not necessary for Defendants to include an appropriate representative in

---

[1] As best Plaintiffs can tell, Defendants intended to cite Dkt. 13-1, not 14.1, and that the pin cites are citing the Master CBA's internal pagination.

7

a discussion about a grievance;[2] for Defendants to recognize the right to join a union (a right independently protected by the First Amendment);[3] or for Defendants to participate in grievances through statutory procedures unaffected by the Executive Order or included as a matter of contract in the Master CBA.[4]  Not only did Defendants leave the Master CBA in force for months after the President issued Executive Order 14251, other agencies did the same, leaving their collective bargaining agreements in place for over six months after the Ninth Circuit stayed the Northern District of California's preliminary injunction of the Executive Order.  Schwartz Decl., ¶¶ 4-11.  Thus, the government, including Defendants, consistently understands collective bargaining agreements to have force and validity outside the FSLMRS framework.[5]

Defendants assert that "by extending its preliminary injunction well beyond the mere *existence* of a CBA—the ostensible subject of this litigation—the Court has in effect created a shadow collective-bargaining-enforcement regime unlike anything Congress contemplated in the FSLMRS" which, Defendants claim, is impermissible because "the Court does not have jurisdiction to order specific performance of the CBA." Dkt. 45-1 at 12.[6]  Again, the Court's

---

[2] *See* Dkt. 13-1 at Master CBA p. 3, Art. 1, § 3(b).

[3] *See* Dkt. 13-1 at Master CBA p. 57, Art. 17, § 2.

[4] *See* Dkt. 13-1 at Master CBA p. 220, Art. 43, § 3(A).

[5] In making this argument, Defendants fatally undermine the channeling argument they pressed before the Court in opposing the preliminary injunction.  *Compare* Dkt. 17 at 21 ("Congress has channeled the dispute Plaintiffs raise in this case to the Federal Labor Relations Authority") *with* Dkt. 45-1 at 12 ("[T]he pathway Congress established for enforcement of a CBA is therefore gone.").

[6] Defendants' reference to the "ostensible subject of this litigation" is a mischaracterization.  Plaintiffs' case and the remedy Plaintiffs seek have always been about having the Termination rescinded, causing the Master CBA to be reinstated and substantively applied to the relationship between the VA and covered employees.  *See* Dkt. 1 at 34–35; Dkt. 13 at 35; Dkt. 14; Dkt. 14-1 at 1–4; Dkt. 19 at 2.  Throughout this case, Defendants demonstrated their understanding that Plaintiffs sought an order compelling compliance with the Master CBA, not mere "paper reinstatement" with no real-world effects.  Dkt. 17 at 52–53; Dkt. 33-2, Ex. A at 11 (pin cites to ECF document pagination).

8

6105036

supposed inability to order "specific performance" is a merits argument against the preliminary injunction itself, and Defendants' failure to raise this argument at the proper point means that it is unlikely to lead to a reversal. *Sparkle Hill*, 788 F.3d at 29; *Carrozza*, 992 F.3d at 59. And, even if this argument is considered on the merits, it will fail. The Court's jurisdiction to enforce the preliminary injunction is beyond clear. 5 U.S.C. § 705; *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Rollins*, 158 F.4th at 314–15.[7] Defendants' citation to *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989), does not move the needle in light of the First Circuit's on-point decision declining to extend *Coggeshall* to the APA context. *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 56 (1st Cir. 2025).

### 2.    Defendants are unlikely to show that this Court abused its discretion when it rejected the claim-splitting argument

Defendants fail to show that Plaintiffs split a claim. Plaintiffs demonstrated that the agency action challenged here arose after the California case was filed and even after the California court granted the preliminary injunction. Dkt. 19 at 4–7. Defendants cite no case from any jurisdiction where claim-splitting was applied to bar a claim on those facts. The absence of any case on point shows that Defendants are unlikely to establish the necessary predicates for this defense.

Furthermore, claim-splitting is a discretionary doctrine. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 14 (2012); *accord Conservation L. Found., Inc. v. Longwood Venues & Destinations, Inc.*, 415 F. Supp. 3d 240, 242 (D. Mass. 2019) (doctrine is discretionary). Even if a claim is split—and that is not the case here—the Court exercised its discretion when it ruled that "the Plaintiffs need not wait to adjudicate the Secretary's distinct, discrete action of terminat[ing] the

---

[7] *Am. Fed'n of Gov't Emps., AFL-CIO, et al. v. Trump, et al.,* No. 3:25-cv-03070-JD (N.D. Cal.).

6105036

Master CBA." Dkt. 30 at 11. Defendants cite no case in which the First Circuit even reviewed a lower court for abusing its discretion in connection with the claim-splitting doctrine, let alone a case in which the First Circuit reversed. Without any cases to support their argument, Defendants are unlikely to prevail in showing that the Court's rejection of the claim-splitting defense was an abuse of discretion.

### 3. Defendants fail to demonstrate that they are likely to win reversal of the Court's First Amendment determination.

As to the Termination, Defendants' sole argument is to point to the Ninth Circuit decision in *American Federation of Government Employees v. Trump*, 167 F.4th 1247, 1255 (9th Cir. 2026). But Defendants can find no solace there. As the Court well knows, the Ninth Circuit case raises different claims, and it focuses on the Executive Order, without considering the Termination. And the Ninth Circuit opinion that Defendants purport to rely on took pains to limit itself to the specific record in that case at that point. It should come as no surprise that different cases with different records at the preliminary injunction stage may yield different results. The record before this Court included evidence of Defendants' animus and retaliatory intent, and the Court's preliminary injunction order relies on this evidence. Dkt. 30 at 14–15. The preliminary injunction order faults Defendants for "provid[ing] little counterevidence to indicate the termination was not retaliatorily motivated and/or would have occurred in the absence of the Plaintiffs' grievances, litigation conduct, and advocacy," an evidentiary gap that Defendants have never filled. Dkt. 30 at 15–16. Having offered nothing more than an obviously distinguishable case and having ignored the bulk of the Court's First Amendment analysis, Defendants fail to demonstrate the likelihood of a reversal on appeal.

### 4. Defendants are unlikely to demonstrate that the Court erred in ruling

10

6105036

**that the Termination violated the APA.**

Defendants' first argument is that "no further explanation was needed for the Termination because, again, the Termination was the natural result of Defendants' execution of the President's Executive Order" and "Plaintiffs cannot evade that conclusion by purporting to challenge the VA's termination, which merely carries out the President's decision." Dkt. 45-1 at 16–17. In other words, Defendants argue the APA does not apply to this case because (in their view) the Secretary was implementing presidential orders. However, binding First Circuit precedent rejects this argument. *Trump*, 133 F.4th at 70 n.17. Thus, this argument does not demonstrate a probability of reversal.

Defendants next argue that the Court should infer that the Secretary's action was reasonable because it came after the Ninth Circuit stayed the California injunction. Dkt. 45-1 at 16–17. Defendants raised this argument for the first time at oral argument on the preliminary injunction motion. Because it was not properly presented to this Court, it is unlikely to be a basis for reversal. *Sparkle Hill, Inc.*, 788 F.3d at 29; *Carrozza*, 992 F.3d at 59. Even so, Defendants fail to explain (in the motion or anywhere else) why this timing supports their position. As the Court noted, the Ninth Circuit's stay order did not signal the end of the litigation, whereas the then-operative OPM guidance was that agencies should not terminate collective bargaining agreements. The Court's finding of arbitrary and capricious action relied in part on its finding that the Secretary acted in contravention of OPM guidance as of the Termination, which was in place notwithstanding the timing of the Ninth Circuit's order. Dkt. 30 at 17.

Defendants then argue that the Secretary acted within a "zone of reasonableness." Dkt. 45-1 at 17. But Defendants' argument ignores key parts of the PI Order. For example, the Court noted the requirement that agency actions be reasonably explained, the fact that little to no explanation was provided here, and ultimately cited that fact (as one of many factors) in

11

6105036

explaining why the Termination was "neither reasonable nor reasonably explained" and thus violative of the APA.  Dkt. 30 at 20, 24; *see Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024).  Defendants offer no explanation for why this ruling is likely to be reversed.  Defendants make no effort to address Plaintiffs' argument that the Termination misapplied the plain text of Section 2 of the Executive Order by limiting the force of that provision to police officers, security guards, and firefighters, without effectuating the text about "immediate, local employing offices."  Dkt. 14-1 at 25–29.  Further, Defendants misstate the import of the fact that in April 2025 the Secretary improperly initially excepted certain unions from the Executive Order's coverage.  Defendants claim that the November 2025 rescission action eliminated "any alleged unevenness."  Dkt. 45-1 at 18.  But Plaintiffs had argued that the Secretary's treatment of other unions was evidence of animus and discrimination, Dkt. 14-1 at 25–29, and the Court accepted this as evidence of arbitrary and capricious action, *id.* at 24.  Defendants offer no argument to counter the inference that Plaintiffs presented and that the Court drew.

> **B.      Defendants fail to make a strong case that they are likely to win reversal of the Enforcement Order or that the Court erred by blocking the "re-termination."**

The Motion to Stay seeks to stay the Enforcement Order, Dkt. 45 at 2.  Defendants argue that (1) the Court lacks jurisdiction to enforce the preliminary injunction (Dkt. 45-1 at 12); (2) the Court's issuance of the Enforcement Order contradicted the Court's order granting Defendants' clarification motion ("the 3/23 Text Order"), which, in Defendants' view, pre-cleared the re-termination (Dkt. 45-1 at 19); and (3) the Court erred on the merits by ordering Defendants not to implement the re-termination (*id.* at 14–15 (arguing that First Amendment claim was mooted by re-termination's inclusion of "new reasons"), *id.* at 18 (cursory APA argument), *id.* at 19 (arguing that preliminary injunction required only technical reinstatement of rather than substantive compliance with Master CBA)).

6105036

None of these arguments will succeed.  As a threshold matter, Defendants cannot appeal an order enforcing a preliminary injunction because it is not a "final judgment." *See New York v. Trump*, --- F.4th ---, 2026 WL 734941, at *18 (1st Cir. Mar. 16, 2026).  Defendants offer no theory of appellate jurisdiction.  This alone defeats any argument that Defendants are likely to succeed on the merits of this portion of their appeal.  But even if the First Circuit reviews the Enforcement Order, Defendants do not show the likelihood of a reversal.

**The Court had jurisdiction to issue the Enforcement Order**.  As explained above, the Court has jurisdiction to enforce the Preliminary Injunction.  5 U.S.C. § 705; *Shillitani*, 384 U.S. at 370; *Rollins*, 158 F.4th at 314–15; *Am. Pub. Health Ass'n*, 145 F.4th at 52, 56.  Defendants argue that the FSLMRS remedial procedures strip the Court of jurisdiction, Dkt. 45-1 at 12, but this is yet another version of Defendants' channeling argument, which has been rejected by this Court and by the Ninth Circuit.  *See* Dkt. 30 at 9; *Am. Fed'n of Gov't Emps., AFL-CIO*, 167 F.4th at 1255.

**The 3/23 Text Order did not authorize the re-termination**.  The 3/23 Text Order made clear that the preliminary injunction requires that "all parties covered by this contract will continue to be covered by this contract until it is terminated or amended in a ***lawful manner***." *Id.* (emphasis added).  Defendants' decision to re-terminate the Master CBA effective immediately was not a "lawful manner" of terminating the Master CBA because at the time Defendants issued the re-termination, they were under this Court's order to "reinstate" the Master Agreement.  Dkt. 30 at 29.

It is an "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980).  When a party under

13

injunction believes that changed circumstances warrant modification or termination of the injunction, the "lawful manner" of avoiding performance is to file a motion seeking relief.  The "standard that the district court must apply when considering a motion to dissolve a preliminary injunction is whether the movant has made a showing that changed circumstances warrant the discontinuation of the order."  *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008) (internal alterations, quotation marks, and citation omitted).  The government knows that this requirement applies to it in circumstances such as these.  In *AFGE v. Noem*, 2026 WL 113599 (W.D. Wash. Jan. 15, 2026), after the court preliminarily enjoined the DHS's directive to terminate a collective bargaining agreement, the government rescinded the initial termination and replaced it with a second termination that sought the same result as the enjoined directive. *Id.* at *1. There, as here, the agency sought to implement the second termination without first going to court.  The court rejected defendants' argument that, because the agency's first directive "was rescinded, the injunction no longer applie[d] and therefore cannot be 'improperly appl[ied] to the" second directive. *Id.* at *3. The court held that defendants' "framing sidesteps the obvious: the [second directive] seeks the same results as its predecessor only with new reasoning." *Id.*  And, "[w]hile a new rationale may be enough to show that rescinding the injunction is necessary, it is not a valid justification for the agency's unilateral decision to abandon its obligations under the injunction." *Id.* (quotation marks and citations omitted); *see also Nat'l Treasury Emps. Union v. Vought*, --- F. Supp. 3d ---, 2025 WL 3771192, at *17 (D.D.C. Dec. 30, 2025) (changed circumstances are "not a valid justification for the agency's unilateral decision to abandon its obligations under the injunction"). *J.G.G. v. Trump*, 2025 WL 3198891, at *2 (D.D.C. Nov. 14, 2025) ("Disagreements with judicial

14

decisions must be resolved through motions . . . not through unilateral noncompliance").[8]  Given this well-established rule, Defendants acted unreasonably and contrary to the preliminary injunction and the 3/23 Text Order when they purported to put the re-termination into immediate effect on March 26 without first seeking judicial approval.

**The re-termination does not moot Plaintiffs' claims.**  Citing *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 21 (2020), and *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947) ("*Chenery II*")), Defendants argue that they were entitled to re-terminate the Master CBA without judicial approval so long as they gave "new reasons."  Dkt. 45-1 at 15.  This argument, of course, sidesteps the requirement to seek relief from an injunction, as discussed above, but even so, the *Chenery II* principle cannot save Defendants.  To start, neither *Regents* nor *Chenery II* involved a constitutional claim.  This case, by contrast, is a constitutional case, with the Court having found that Plaintiffs are likely to succeed on their First Amendment claim.  Defendants offer no case extending the *Chenery II* principle to a First Amendment claim.  They also fail to offer any case extending the *Chenery II* principle to a preliminary injunction case or a case involving provisional relief under section 5 U.S.C. § 705.  So, there is no authority to support Defendants' argument that the agency can moot a claim through "new action" while litigation over the initial action is ongoing.

Furthermore, the re-termination also fails to stand up to scrutiny.  Of course, Defendants' failure to file a motion for relief from the preliminary injunction means that this issue has not been briefed and will not be properly before the First Circuit.  But it is notable that the re-

---

[8] Defendants' efforts to distinguish *Noem* are unpersuasive.  Dkt. 45-1 at 20.  The fact that *Noem* challenged a slightly broader set of agency actions than Plaintiffs do here does not change the requirement to seek relief before avoiding the terms of an injunction.

15

termination does not cite any source of authority for the Secretary's action.  Executive Order 14251 does not order the termination of any collective bargaining agreement, and the Master CBA provision contains no termination clause.  These basic deficiencies, in addition to the absence of appellate jurisdiction, show that Defendants are unlikely to succeed in obtaining review, let alone reversal, of the Enforcement Order.

> C.      Defendants fail to demonstrate irreparable harm.

Defendants' irreparable harm argument boils down to three main points. First, Defendants' assert that being directed to comply with the Master Agreement "under threat of contempt" constitutes irreparable harm.  Dkt. 45-1 at 22.  Defendants start this argument by claiming that "the original terms of the preliminary injunction [] required only reinstatement and did not extend the Court's supervision to performance of the collective-bargaining duties in the CBA." *Id.* As explained above, and in Plaintiffs' Motion to Enforce briefing, Dkt. 33-1 at 7–8, Dkt. 35 at 3–5, the PI Order required Defendants to reinstate the Master Agreement, which included reinstatement and compliance with its substantive terms. Dkt. 30 at 29. Defendants' attempts to re-define the scope of the PI Order after the fact are disingenuous.

To bolster their argument, Defendants try to cast the specter of contempt as inflicting irreparable injury.  But this reference to "contempt" is substantially overblown.  Of course, injunctions are enforceable through contempt proceedings. *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015); *Hawkins v. Dep't of Health & Hum. Servs. for New Hampshire, Com'r*, 665 F.3d 25, 31 (1st Cir. 2012).  Indeed, Plaintiffs expect Defendants to expeditiously comply with the preliminary injunction and the Enforcement Order and will not hesitate to invoke the Court's jurisdiction if circumstances so dictate.  However, the Court is currently holding the contempt proceeding regarding the re-termination in abeyance, which disposes of the argument advanced by Defendants.  3/30/26 Text Order.  And while Defendants

16

6105036

assert that the Court's Enforcement Order "states expressly" that "any attempt to re-terminate the CBA absent a specific order of this Court allowing such action will be met with immediate contempt proceedings," Dkt. 45-1 at 22, the Court's Enforcement Order says no such thing. Dkt. 39. While Defendants' unilateral effort to re-terminate the Master CBA violated the preliminary injunction, Defendants are free, as is any litigant, to bring a motion to modify or dissolve the preliminary injunction.

Second, Defendants assert that the Court's PI Order "is a windfall to Plaintiffs" because it goes beyond returning the parties to the pre-Termination status quo." Dkt. 45-1 at 23. Defendants point to two provisions of the Master Agreement that they now admit to breaching prior to the August 6, 2025 Termination: (1) a provision involving the automatic deduction of membership dues via payroll and (2) provisions relating to FLRA and grievance proceedings. *Id.* But Defendants cannot leverage their prior breach of the Master Agreement as an argument for why compliance now would cause irreparable harm. And neither the administrative cost of re-instituting dues collection nor compliance with FLRA and grievance proceedings rises to the level of irreparable injury in any event.[9]

Defendants also complain about the cost of complying with the Master Agreement, but such costs do not alone constitute irreparable harm. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005). For example, Defendants raise the cost of returning VA workspace to the union and providing official time to union leadership. Dkt. 45-1 at 23–24. Defendants already made this argument twice before, *see* Dkt. 17 at 52–53; Dkt. 33-2, Ex. A at

---

[9] As for the FLRA and grievance proceedings, Defendants' claim is, again, a mischaracterization. All Defendants' evidence points to is Defendants' litigation positions before the FLRA and arbitrators seeking to hold proceedings in abeyance after the President issued Executive Order 14251. Dkt. 45-2 at 23–25. Loss of a procedural litigation position is not an irreparable harm, and Defendants offer no authority to support such a claim.

6105036

11 (Pin cites to the ECF document pagination), and this Court rejected it, Dkt. 30 at 27–28. Moreover, Defendants' claim that it will be overly burdensome to return facility space is overblown. The Court will recall that Plaintiffs' preliminary injunction motion was supported by, among other evidence, declarations from local union leaders. Dkts. 14-5 – 14-8. Plaintiffs have surveyed these local union leaders, it appears that the VA still has not made any facility space available to the unions (further defying the preliminary injunction) and that such space could be re-allocated to union use with relative ease. Burke Decl. ¶¶ 6–10. The only new argument Defendants make involves automatic dues deductions for union members; the VA claims that it does not want to be "financially responsible" for duplicative payments made by members. Setting aside the fact that a financial harm is not irreparable, Plaintiffs have the solution to this purported problem—Plaintiffs already bear the cost, through technology safeguards they implemented years ago, of avoiding such duplicative payments. Schwartz Decl. ¶ 14. Implementing those safeguards requires nothing more from Defendants than reinstating long-standing, established procedures and restoring the kinds of communications they engaged in with Plaintiffs prior to the Termination. *Id.*

Third and finally, Defendants rehash their "deference to the President's national security determinations" arguments. The Court already noted that these arguments are more appropriate for litigation over the Executive Order itself, rather than agency action. Dkt. 30 at 27 n.11. And for all of Defendants' puffery about the "Fourth Mission," it is notable that even in the re-termination, the Secretary did not make any independent determination about "national security," but rather relied on the Executive Order itself, which does not require terminating any collective bargaining agreements. Dkt. 36-1 at 3-4.

18

6105036

**D.        The balance of the equities and the public interest cut in Plaintiffs' favor.**

Neither the balance of equities nor the public interest weigh in favor of a stay. Defendants again fall back on the President's national security determination as the reason that the public interest factor tilts in their favor. Dkt. 45-1 at 26. But simply invoking national security, without offering any evidence or explanation for why compliance with the Master Agreement actually compromises national security, is insufficient. On the balance of equities, Plaintiffs presented substantial evidence of concrete, proven harm suffered by both the union and represented employees stemming from the Termination. Such harm included, among other things, the loss of family leave benefits and procedural protections in disciplinary proceedings. *See* Dkts. 14-2 – 14-8. As this Court recognized, disciplinary proceedings "once concluded, have an immediate and irreparable effect on the employee(s) in question" and [p]arents cannot turn back the clock to have more time with an infant prior to returning to work." Dkt. 30 at 26. None of the purported harm to the VA from reimplementing the Master Agreement outweighs the real harm that Plaintiffs will suffer in the absence of the preliminary injunction.

**EFFECT OF THIS COURT'S FORTHCOMING ORDER**

In light of Defendants' procedural machinations to date, Plaintiffs respectfully submit that the Court's forthcoming order on this Motion to Stay must make crystal clear that the preliminary injunction and Enforcement Order remain in effect and will remain in effect unless stayed or reversed by a higher court. In particular, the Court should make clear that its 3/30/26 Text Order ruling that the "contempt proceeding is held in abeyance pending the Circuit's disposition of the appeal" is limited to the previously-contemplated contempt proceeding regarding the re-termination. The Court must preserve a mechanism—*i.e.*, contempt proceedings—to enforce the preliminary injunction pending appeal to the extent it is in force pending appeal.

19

6105036

## CONCLUSION

The Motion to Stay lacks merit and should be denied.

Respectfully submitted,

Dated: April 1, 2026          By:    */s/ Carly Beauvais Iafrate*
Carly Beauvais Iafrate, #6343
Law Office of Carly B. Iafrate, PC
408 Broadway, 1st Fl.
Providence, RI 02909
(401) 421-0065
ciafrate@verizon.net

Dated: April 1, 2026          By:    */s/ Travis Silva*
Brook Dooley *(pro hac vice)*
Travis Silva *(pro hac vice)*
Taylor Reeves *(pro hac vice)*
JiLon Li *(pro hac vice)*
Alexandra Wheeler *(pro hac vice)*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
BDooley@keker.com
TSilva@keker.com
TReeves@keker.com
JLi@keker.com
AWheeler@keker.com

*Attorneys for American Federation of Government Employees National VA Council and American Federation of Government Employees Local 2305*

20

6105036

## CERTIFICATE OF SERVICE

I certify that on April 1, 2026, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Travis Silva
Travis Silva

21

6105036