**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305<br><br>    *Plaintiffs,*<br><br>    **v.**<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and<br><br>DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs<br><br>    *Defendants.* | **Case No. 1:25-cv-00583-MRD-PAS** |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE</u>

6267502

**INTRODUCTION**

Defendants plan to stop complying with this Court's Preliminary Injunction[1] on August 8, 2026.  Plaintiffs file this motion to obtain an order to prevent this violation of the Preliminary Injunction.

In this case, Plaintiffs challenge the VA's August 6, 2025 termination of the Master Agreement, the collective bargaining agreement between NVAC and the VA that covers over 300,000 VA employees.  In granting the Preliminary Injunction, this Court ruled that the VA's termination of the Master Agreement was likely unlawful.  Then, when the VA purported to re-terminate the Master Agreement after the Preliminary Injunction was issued, this Court issued the Enforcement Order striking down the VA's "re-termination" as unlawful.  The VA asked the First Circuit to stay the Preliminary Injunction and Enforcement Order pending appeal, and the First Circuit denied the VA's motion as to the Preliminary Injunction and the relevant portion of the Enforcement Order.  Thus, the Preliminary Injunction and Enforcement Order, as relevant, remain in effect.

Nonetheless, the VA is now planning a second re-termination of the Master Agreement. The Preliminary Injunction requires Defendants to reinstate the Master Agreement "for the remainder of the agreed upon term."  The Master Agreement's "agreed upon term" is plainly described in its "Duration of Agreement" provision, which keeps the Master Agreement in force

---

[1] The Preliminary Injunction is set forth in the order issued on March 13, 2026, at docket entry 30.  "Enforcement Order" refers to the order issued on March 27, 2026, at docket entry 39.  The "FSLMRS" refers to the Federal Service Labor-Management Relations Statute.  "NVAC" is Plaintiff American Federation of Government Employees National Veterans Affairs Council. The "Burke Decl." is the concurrently filed Declaration of Mary-Jean Burke in Support of Plaintiffs' Motion to Enforce.  The "VA" refers to Defendant United States Department of Veterans Affairs.  Pin cites to docket entries are to ECF pagination.

1

while the Parties negotiate a successor Master Agreement.  This continuation provision is a standard contract term that maintains an existing contract pending negotiations over a successor contract.

On May 19, 2026, the VA notified NVAC that it wanted to renegotiate the Master Agreement.  NVAC responded and began negotiating in good faith.  Yet, despite the clear language of the Preliminary Injunction and the Duration of Agreement provision, Defendants informed Plaintiff NVAC on July 15 and confirmed in writing on July 24 that they intend, yet again, to re-terminate the Master Agreement on August 8, 2026 (the expiration date of the Master Agreement's initial three-year term).  This second re-termination would violate the Preliminary Injunction's requirement that the Master Agreement remain in effect "for the remainder of the agreed upon term."  The imminence of the August 8 date and Defendants' clear intent to violate the Preliminary Injunction make this dispute ripe for resolution.  The Court's intervention is necessary to enforce the Preliminary Injunction.

## BACKGROUND

### A.    Prior litigation

In March 2025, President Trump issued Executive Order 14,251 (the "Executive Order"), which "declar[ed] that the VA . . . met the criteria for exclusion from [FSLMRS] coverage." Dkt. 30 (Preliminary Injunction) at 2.  Defendants terminated the Master Agreement on August 6, 2025, citing the Executive Order.  *See id*. at 3.

Plaintiffs filed this lawsuit in November 2025 and then filed a motion for a preliminary injunction seeking to enjoin the termination on First Amendment and Administrative Procedure Act grounds.  *See* Dkts. 14 (Preliminary Injunction Mot.), 14-1 (MPA ISO Preliminary Injunction Mot.).  On March 13, 2026, the Court issued the Preliminary Injunction.  The Court

6267502

noted "the ample support the Plaintiffs provide[d] to show that the Defendants' termination of the Master CBA was motivated by retaliation" and found that, apart from "one, vague, post hoc statement . . . there is zero indication from the Defendants that the termination decision would have been made or implemented without the retaliatory motive." Dkt. 30 at 15, 18.  The Court thus ruled that Plaintiffs had shown a likelihood of success on the merits of their First Amendment claim.  The Court also ruled that "Plaintiffs are likely to succeed on the merits of their . . . arbitrary and capricious claim" because the termination was "neither reasonable nor reasonably explained."  *Id.* at 24.  The Court required Defendants to "reinstate the Master CBA . . . for the remainder of the agreed upon term provided in the Master CBA."  Dkt. 30 at 29.

On March 26, 2026, Defendants attempted to re-terminate the Master Agreement (the "Re-termination") without seeking prior approval from the Court.  *See* Dkt. 36-1 (VA's Notice of Termination).  The Court granted Plaintiffs' motion to enforce the Preliminary Injunction, *see* Dkts. 33 (Mot. to Enforce), 33-1 (MPA ISO Mot. to Enforce), held that the Re-termination was "not in compliance" with its prior orders, and struck down the Re-termination.  *See* Dkt. 39 (Enforcement Order).

Defendants appealed both the Preliminary Injunction and the Enforcement Order and moved to stay those orders pending appeal.  Dkt. 42 (Notice of Appeal).  The First Circuit denied Defendants' motion to stay the Preliminary Injunction.  Order of Court, *Am. Fed'n of Gov't Emps. Local 2305 v. U.S. Dep't of Veterans Affairs*, No. 26-1321, Dkt. 00118447694 (1st Cir. May 16, 2026) (the "1st Cir. Stay Order").  The First Circuit also denied Defendants' motion to stay the "unlawfulness determination in [the] enforcement order."  *Id.*  The Preliminary

3

6267502

Injunction and the Enforcement Order's ruling that the Re-termination was unlawful are thus both in effect.[2]

**B.      The VA's current attempt to re-terminate the Master Agreement**

On May 19, 2026, the VA provided notice of its intent to renegotiate the Master Agreement.  The Master Agreement's initial three-year term expires on August 8, 2026, but the Master Agreement contains a Duration of Agreement provision that automatically extends the term of the Master Agreement while these negotiations are pending:

> This Agreement shall remain in full force and effect for a period of three years after its effective date. It shall be automatically renewed for one year periods unless either party gives the other party notice of its intention to renegotiate this Agreement no less than sixty nor more than one hundred twenty days prior to its termination date. Negotiations shall begin no later than 30 days after these conditions have been met. ***If renegotiation of an Agreement is in progress but not completed upon the terminal date of this Agreement, this Agreement will be automatically extended until a new agreement is negotiated***.

Dkt. 14-3 at 311 (Master Agreement, Duration of Agreement provision, § 2) (emphasis added). NVAC promptly acknowledged VA's letter in writing.  Burke Decl., Ex. B.  The VA and NVAC began negotiating by focusing on preliminary matters, such as the arrangements for ground rules negotiations, including through letters written by NVAC to the VA dated June 5, June 12, June 17, June 26, June 30, and July 8.  Burke Decl., Ex. C.

During the negotiations, on July 15, 2026, the VA informed NVAC that, as of August 8, 2026, the VA would no longer honor the Master Agreement for what it calls "non-exempt employees."  Burke Decl., ¶ 7.  At that time, the VA's position was that, notwithstanding the Preliminary Injunction and notwithstanding the Duration of Agreement provision, starting August 8, 2026 the Master Agreement will apply only to approximately represented 3,000 police

---

[2] The First Circuit stayed other portions of the Enforcement Order.

4

6267502

officers, firefighters, and security guards.  *Id.*  Nearly 300,000 bargaining unit employees would thus lose coverage under the Master Agreement on August 8.  *See id.*  This is the same outcome that the VA attempted to obtain when it initially terminated the Master Agreement on August 6, 2025, and when it attempted to re-terminate the Master Agreement on March 26, 2026.

Then, on July 24, 2026, the VA sent NVAC written correspondence taking an even more aggressive position.  The VA now asserts that it will re-terminate the Master Agreement on August 8 for everybody, including the police officers, firefighters, and security guards, who both sides agree are exempt from the Executive Order and the original August 2025 termination.  The VA claims this second re-termination is authorized because, in the VA's view, NVAC "failed and refused to meet within the 30-day window mandated by the" Master Agreement.  Burke Decl., Ex. D at 2.  The VA also claims the Master Agreement "cannot legally be extended or applied beyond August 8, 2026, to employees whose positions have been excluded from the FSLMRS' coverage by operation of EO 14251," *i.e.*, the very employees to whom this Court ordered the VA to provide Master Agreement coverage.  *Id*. at 3.

## LEGAL STANDARD

Courts may issue further orders "to compel compliance with a [prior] court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005).  To enforce a court order, the plaintiff must show that (1) Defendants "had notice of the order," (2) "the order was clear and unambiguous," (3) Defendants "had the ability to comply with the order", and (4) Defendants "violated the order."  *New York v. Trump*, 777 F. Supp. 3d. 112, 116 (D.R.I. 2025) (citing *Hawkins v. Dep't of Health and Human Servs.*, 665 F.3d 25, 31 (1st Cir. 2012) and granting motion to enforce preliminary injunction against multiple governmental defendants, including Defendants here), *aff'd*, 171 F.4th 1, 30 (1st Cir. Mar. 16, 2026).

6267502

## ARGUMENT

### A.    Factor 1: Notice

There is no dispute that Defendants had actual notice of the Preliminary Injunction.  The order was electronically served upon them, and Defendants moved to stay the Preliminary Injunction pending appeal.  *See* Motion for Stay Pending Appeal and Administrative Stay, *Am. Fed'n of Gov't Emps. Local 2305*, No. 26-1321, Dkt. 00118427758 (1st Cir. Apr. 6, 2026).

### B.    Factor 2: Clear and Unambiguous

The Preliminary Injunction directs Defendants to "reinstate the Master CBA . . . for the remainder of the agreed-upon term provided in the Master CBA."  Dkt. 30 at 29.  The "agreed-upon term" is a clear reference to the Master Agreement and its Duration of Agreement provision, which requires that the Master Agreement will remain in force during any subsequent negotiations.  *See* Dkt. 14-3 at 311.  The Parties are currently in the process of setting ground rules and negotiating a successor collective bargaining agreement.  *See* Burke Decl. ¶¶ 6-7.  The Duration of Agreement specifies that while "renegotiation of an Agreement is in progress but not completed upon the terminal date of this Agreement, this Agreement will be ***automatically extended*** until a new agreement is negotiated" (emphasis added).  As such, the Master Agreement's term "automatically extend[s]" while these discussions continue.

This is a common contractual provision.  Parties routinely agree to a contract term that extends the force of a contract's initial term pending negotiations over a successor contract, *i.e.*, a term that keeps the same contract in place while the parties negotiate a new one.  Courts uphold such provisions as part of the initial contract's term.  For instance, in *Central States, Southeast and Southwest Areas Pension Fund v. Auffenberg Ford, Inc.*, the Seventh Circuit affirmed exclusion of an oral agreement that contradicted a collective bargaining agreement's continuation clause which "stat[ed] that all the terms and provisions of the CBA would remain in

6

6267502

effect until a new CBA was negotiated."  637 F.3d 718, 719 (7th Cir. 2011); *see Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 362 (6th Cir. 2014) (similar); *cf. Am. R. Co. of Porto Rico v. Ponce & G.R. Co.*, 246 F. 925, 926–27 (1st Cir. 1917) (agreeing to extend a contract "continu[es] such original agreement, with all its covenants, conditions and provisions, without change, except as to the date of the expiration thereof").  Here, the Parties bargained to include in the Master Agreement a temporal provision that includes any time spent negotiating a successor Master Agreement.  And the Preliminary Injunction's clear and unambiguous temporal boundary is precisely that "agreed upon term."

### C.      Factor 3: Ability to Comply

Defendants can comply with the Preliminary Injunction.  In fact, after the Court entered the Preliminary Injunction, the VA issued a "Bulletin" and accompanying guidance that effectuated the reinstatement of the Master Agreement.  *See* Dkt. 49-9 at 3–4.

### D.      Factor 4: Violation

Defendants have written to AFGE's National President to state that "effective August 8, 2026, with respect to employees covered by EO 14251, the [Master Agreement] and all other expired agreements will be terminated in their entirety."  Burke Decl., Ex. D at 2; *see also id.* at 2–3 (terminating Master Agreement as to permissive subjects with all AFGE-represented employees).  The "employees covered by EO 14251" are the same people who received coverage under the Master Agreement through the Preliminary Injunction; in other words, this action will undo the Court's order.

### E.      Defendants' counterarguments lack merit.

None of Defendants' proffered or likely counterarguments has merit.

6267502

### 1.    This motion is timely.

Defendants may argue that relief should be withheld because they have not yet violated the Preliminary Injunction.  But where, as here, a party has "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity," the legal question of whether the activity violates the law is ripe for judicial review.  *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 826 (1st Cir. 2020) (analyzing ripeness in the pre-enforcement context).  Indeed, a court may issue an order to enforce following notification that a defendant intends to violate a court order.  *See AngioDynamics, Inc. v. Biolitec AG*, 946 F. Supp. 2d 205, 212, 216 (D. Mass. 2013) (ordering penalties for civil contempt—analyzed under the same *Hawkins* standard), *aff'd as to imposition of sanctions, vacated and remanded as to their unlimited accrual*, 780 F.3d 420, 428 (1st Cir. 2015).  Defendants' plans are "concrete" enough for the Court to consider this motion.  Defendants have stated that they intend to cease recognizing the Master Agreement's coverage on a specific date, August 8, 2026, that is less than two weeks away.  There is no reason to wait until August 8 for the Court to act.  Indeed, delaying resolution of this motion would inject needless confusion into the VA's and the unions' operations and the lives of the more than 300,000 employees who rely upon the Master Agreement.  All parties and the public interest are well served by having the Master Agreement consistently in place with no lapse in its force.

### 2.    Negotiations began within the 30-day period specified by the Master Agreement.

The VA claims that it may re-terminate the Master Agreement on August 8 because NVAC "failed and refused to meet within the 30-day window mandated by the" Master Agreement.  Burke Decl., Ex. D at 2.  This argument also lacks merit.

8

6267502

Negotiations started on May 19, within the "30-day window."  The Duration of Agreement provision provides: "Negotiations shall begin no later than 30 days after these conditions have been met."  Dkt. 14-3 at 311 (Master Agreement, Duration of Agreement provision, § 2).  Negotiations began on May 19, when the VA did more than provide notice of its intent to renegotiate the Master Agreement.  The VA's May 19 correspondence also included the VA's initial proposals.  Burke Decl., Ex. A.  That action marked the beginning of negotiations.  NVAC responded to acknowledge the VA's communication on May 27 and responded substantively on June 5, June 12, and June 17, confirming that negotiations commenced within the 30-day period required by the Master Agreement.  Burke Decl., Exs. B, C.  There is no requirement to meet in person to commence negotiations.  In fact, courts have ruled that negotiations for a successor collective bargaining agreement may occur before the parties meet for in-person negotiations.  *See Newspaper Guild of Salem, Local 105 of Newspaper Guild v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1276 (1st Cir. 1996); *see also Reinauer Transp. Cos. v. United Marine Division, I.L.A., Local 333, A.F. of L.*, 112 F. Supp. 940, 943 (S.D.N.Y. 1953) (providing that negotiations for a "new agreement" began either when the defendant union served its request to commence negotiations or when the plaintiff "arranged the time and place for the first meeting").

### 3. The VA forfeited its "independent" argument about the FSLMRS's force.

The VA argues that the FSLMRS precludes the VA from applying the Master Agreement to non-exempt employees after August 8.  This argument is untimely and erroneous.

The VA has forfeited this argument.  If a party has an argument against the imposition of a preliminary injunction, it must advance that argument when the preliminary injunction is being decided—not in post-injunction proceedings.  *See State v. United States Dep't of Hous. & Urb.*

9

6267502

*Dev.*, 171 F.4th 473, 488 (1st Cir. 2026) (same rule in the motion to dissolve context); *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (similar).  Defendants advanced this "the statute doesn't allow it" argument in support of their stay request at the First Circuit, but the First Circuit held that "the defendants did not make this argument in opposing the motion for a preliminary injunction" and rejected it as untimely.  *Am. Fed'n of Gov't Emps. Local 2305*, 177 F.4th 1, 11 (1st Cir. 2026).  That is the law of the case, and this Court should reject this argument on that basis.

The argument fares no better on the merits, even if it had been timely raised.  As the First Circuit observed, the VA left the Master Agreement in place for months after the Executive Order was issued, and the VA fails to explain how its prior conduct does not undermine its claim that the FSLMRS and Executive Order somehow make it impossible for the VA to follow the Master Agreement.  *Id.*

### 4. The requested relief is consistent with the First Circuit's Stay Order and this Court's purpose in issuing provisional relief.

Plaintiffs' requested relief is consistent with the First Circuit's order disposing of Defendants' stay motion.  On May 16, 2026, the First Circuit denied Defendants' motion to stay the Preliminary Injunction.  It also denied Defendants' motion to stay the Enforcement Order "with respect to their challenge to the District Court's unlawfulness determination."  It granted Defendants' motion to stay the Enforcement Order's "directive that the defendants 'comply with the CBA, along with any amendments, local supplemental agreements, and memoranda of understanding related thereto . . . in both form and substance,' as well as its directive that the defendants 'continue to . . . process' 'the currently pending grievances and arbitrations submitted under the . . . CBA.'"  1st Cir. Stay Order (brackets and other alterations omitted).

10

6267502

This motion seeks to compel compliance with the Preliminary Injunction, not with the stayed portion of the Enforcement Order.  The specific text that Plaintiffs seek to enforce is the requirement that the Preliminary Injunction remain in effect throughout the "agreed upon term" of the Master Agreement.  That phrase is found in the Preliminary Injunction, not the Enforcement Order.  Plaintiffs request that the Court enforce the Preliminary Injunction while "renegotiation of an Agreement is in progress" because those negotiations will "not [be] completed upon the terminal date of this Agreement" and so the Master Agreement "will be automatically extended until a new agreement is negotiated."  Dkt. 14-3 at 311.  That is the "agreed upon term" that establishes the temporal boundary of the Preliminary Injunction, and the "agreed upon term" is not implicated by any stayed portion of the Enforcement Order.

Finally, enforcing the Preliminary Injunction would prevent further attempts by the VA to gut the scope of provisional relief granted by the Court.  As the Court may recall from the Preliminary Injunction briefing, one of the issues in the case is Plaintiffs' challenge to Defendants' arbitrary interpretation of the phrase "immediate, local employing offices of any agency policy officers, security guards, or firefighters" in the Executive Order.  Dkt. 14-1 at 31–32.  Plaintiffs argued that this phrase in Section 2 of the Executive Order precludes the VA from withdrawing FSLMRS coverage to hundreds of thousands of employees who lost Master Agreement coverage under the August 6, 2025 termination.  *Id.* at 32.  Defendants assert that this phrase exempts only those employees in the positions of police officers, security guards, and firefighters from the Executive Order (and offer no explanation for the meaning of the phrase "local employing offices").  *See* Dkt. 30 at 20–21.  At the Preliminary Injunction stage, the Court ruled that it "need not resolve any ambiguity on this record" regarding this issue because "it conclude[d] the Plaintiffs have shown a likelihood of success on the merits of this APA claim

11

6267502

regardless of the actual scope of Section 2." *Id.* at 21. Thus, the Court already decided that the appropriate provisional remedy is to restore Master Agreement coverage to all covered bargaining unit employees (not just police officers, firefighters, and security guards) while Plaintiffs' case is being litigated.

The VA continues to assert that Executive Order 14251 exempts police officers, firefighters, and security guards—but no others—from its scope. Burke Decl., Ex. D at 3 (referring to "Non-Exempted Employees"). This is tantamount to the VA deciding the Section 2 issue on its own, without giving the Parties an opportunity to further develop the record on the Section 2 issue or allowing the Court to consider that record. That is obviously improper. If the VA wants to resolve the Section 2 issue, it must participate in litigation and obtain a judgment in its favor.

## REMEDY

Plaintiffs respectfully request that the Court issue a remedial order requiring Defendants to comply with the Master Agreement, with respect to all of Plaintiffs' represented employees, "for the remainder of the agreed upon term" as defined in the Master Agreement. Filed concurrently with this motion is a proposed order for the Court's consideration.

## CONCLUSION

The Court should grant the motion to enforce.

6267502

Respectfully submitted,

Dated:  July 28, 2026

By:    */s/ Carly Beauvais Iafrate*
Carly Beauvais Iafrate, #6343
Law Office of Carly B. Iafrate, PC
408 Broadway, 1st Fl.
Providence, RI 02909
(401) 421-0065
ciafrate@verizon.net

Dated: July 28, 2026

By:    */s/ Travis Silva*
Brook Dooley *(pro hac vice)*
Travis Silva *(pro hac vice)*
JiLon Li *(pro hac vice)*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
BDooley@keker.com
TSilva@keker.com
JLi@keker.com

*Attorneys for American Federation of Government Employees National VA Council and American Federation of Government Employees Local 2305*

13

6267502