IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305<br><br>    *Plaintiffs,*<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and<br><br>DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs<br><br>    *Defendants.* | Case No. 1:25-cv-00583-MRD-PAS |

<u>DECLARATION OF MARY JEAN BURKE IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE</u>

6267532

I, Mary Jean Burke, declare:

1.      I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.      I am a retired physical therapist at Richard L. Roudebush VA Medical Center in Indianapolis, Indiana.  I was hired to provide in-patient physical therapy in an acute care setting and have since worked in several units.  In total, I worked for the Department of Veterans Affairs for 30 years.

3.      I am President of the American Federation of Government Employees, AFL-CIO National Veterans Affairs Council ("NVAC").  I have served in this position since November 2025.  Previously, I served as the NVAC First Executive Vice President from 2007 to 2025 and NVAC Health and Safety Representative from 2003 to 2007.  Furthermore, I am the Chief Negotiator for NVAC for purposes of negotiating a successor agreement to the 2023 Master Agreement.  I am familiar with this above-captioned case and have previously submitted testimony in connection with it.  I am submitting this declaration in support of Plaintiffs' Motion to Enforce.

4.      On May 19, 2026, Kurt Martin, Deputy Director of the Office of Labor-Management Relations at the United States Department of Veterans Affairs ("VA"), emailed me a letter from Mark Engelbaum, the VA's Assistant Secretary for Human Resources and Administration.  The letter "notice of VA's intent to renegotiate the MCBA" and it contained "management's initial ground rule proposals."  A true and correct copy of Mr. Martin's email and the attached letter is attached hereto as **Exhibit A**.

1

6267532

5. On May 27, 2026, National President of AFGE, Everett Kelley, responded to Mr. Martin's email and Mr. Engelbaum's letter. A true and correct copy of Mr. Kelley's email, which contains the May 19, 2026 email from Mr. Martin, is attached hereto as **Exhibit B**.

6. Following this initial exchange, NVAC and the VA began negotiating over preliminary matters, including arrangements for ground rules bargaining. During the course of these discussions, I sent letters to the VA dated June 5, June 12, June 17, June 26, June 30, and July 8. True and correct copies of these letters are attached hereto as **Exhibit C**.

7. Ground rules bargaining began on July 14, 2026. During a July 15 bargaining sessions (which I attended), Mr. Martin stated that as of August 8, 2026, VA will no longer honor the Master Agreement except as to "exempt employees." (The VA uses the term "exempt employees" to refer to the approximately 3,000 police officers, firefighters, and security guards represent by AFGE. They represent about 1% of NVAC's more than 300,000 represented employees.) Furthermore, Mr. Martin stated at this session that the VA intends to effectuate the re-termination immediately on August 8, including by denying eligibility for official time to NVAC representatives currently engaged in negotiation over a successor agreement to the 2023 Master Agreement. If NVAC representatives are denied official time, they would have to utilize personal leave time (e.g., vacation) to attend negotiations.

8. On July 24, 2026, the VA sent NVAC a letter taking an even more aggressive position. This letter from Mr. Engelbaum stated that as of August 8, 2026, the VA intends to re-terminate the Master Agreement as to "[a]ll [e]mployees," including police officers, firefighters, and security guards because NVAC purportedly "failed and refused to meet within the 30-day window mandated by the MCBA[.]" A true and correct copy of Mr. Engelbaum's letter, including its attachments, is attached hereto as **Exhibit D**. The suggestion that NVAC failed to

2

6267532

participate in negotiations is false.  Section 2 of the Duration of Agreement article in the Master Agreement (which I helped to negotiate) requires that "Negotiations shall begin no later than 30 days after these conditions have been met."  Negotiations began on May 19, when the VA sent NVAC its initial ground rules proposals.  The VA's suggestion also ignores NVAC's responsive correspondence set forth in Exhibits B and C to this declaration.

Executed this 28th of July 2026, at Indianapolis, Indiana.  I declare under penalty of perjury that the foregoing is true and correct.

*Mj burke*
Mary Jean Burke

3

6267532

# EXHIBIT A

| **From:** | Martin, Kurt P. |
|---|---|
| **To:** | Kellee@afge.org |
| **Cc:** | MJ Burke; Picerno, Michael G. |
| **Subject:** | VA/AFGE 2023 MCBA Reopener and Initial Ground Rules |
| **Date:** | Tuesday, May 19, 2026 10:26:00 AM |
| **Attachments:** | AFGE MCBA Renegotiation Letter_05.19.26.pdf |
| | VA_AFGE_Proposed Ground Rules_Agency1_5.19.26.docx |

Good afternoon Dr. Kelley –

Please see the attached letter reopening the parties' 2023 MCBA for renegotiations and management's initial ground rule proposals.

Please let me know if you have any questions.

Regards,

Kurt P. Martin
U.S. Department of Veterans Affairs | Office of Labor-Management Relations (LMR)

Tel: (202) 809-7741 | Email: Kurt.Martin@va.gov
Was LMR helpful today?
Please let us know by completing our LMR Customer Satisfaction Survey:
LMR Customer Satisfaction Survey

This e-mail (including any attachments) may contain information that is private, confidential, or protected by law.  If you received this e-mail in error, you are notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately and destroy the e-mail and any attachments.



Assistant Secretary for Human Resources and Administration
Washington DC 20420

May 19, 2026

Dr. Everett B. Kelley
National President
American Federation of Government Employees
80 F Street, NW
Washington, DC 20001

Dear Dr. Kelley:

This letter is regarding the 2023 master collective bargaining agreement (MCBA) between the Department of Veterans Affairs (VA or Department) and the American Federation of Government Employees (AFGE). I am providing timely notice of VA's intent to renegotiate the MCBA.

Pursuant to the Duration of Agreement, the MCBA has a 3-year term with a terminal date of August 8, 2026, (terminal date) and provides that negotiations shall begin within 30 days of such notice to renegotiate. The Department is prepared to begin bargaining within that timeframe and to proceed expeditiously toward renegotiating a successor agreement.

By operation of Executive Order (EO) 14251, as of the terminal date, the 2023 MCBA or any successor agreement will only extend to employees in positions that remain covered by Chapter 71 of title 5 of the United States Code (Labor Statute) (this is, employees exempted from EO 14251 (Exempted Employees)) and will not extend to employees whose positions are excluded from the Labor Statute's coverage (that is, Non-Exempted Employees). The MCBA cannot legally be extended or applied beyond the terminal date to Non-Exempted Employees because the only legal authority for the MCBA is the Labor Statute and the MCBA cannot exist outside the Labor Statute's statutory framework. If AFGE interprets the Rhode Island District Court's Orders in conjunction with EO 14251 differently, please advise VA of your position no later than May 26, 2026.

Michael Picerno, Senior Advisor, Office of the Secretary, has been designated as the Department's Chief Negotiator for these negotiations. Please identify an AFGE representative he should contact regarding negotiations as soon as possible, but no later than 5 business days after the date of this letter.

Please ensure any future correspondence concerning this matter is directed to Mr. Picerno at Michael.Picerno@va.gov.

Sincerely,

MARK ENGELBAUM
Digitally signed by MARK ENGELBAUM
Date: 2026.05.19 09:39:42 -04'00'

Mark R. Engelbaum

**Initial Agency Proposal (A1)**
**5/19/2026**

**Ground Rules Memorandum of Understanding between the Department of Veterans Affairs (Department or VA) and American Federation of Government Employees (AFGE)**

## Section 1: Purpose

A.    This Memorandum of Understanding (MOU) constitutes the entire understanding and agreement between the Department of Veterans Affairs (VA, Department, or Agency) and American Federation of Government Employees (AFGE or Union) (referred to collectively as the Parties) for conducting negotiations of a Master Collective Bargaining Agreement (MCBA or Agreement).

## Section 2: Participants

A.    Bargaining Team: Neither Party may have more than five (5) team members, including their Chief Negotiator, at any negotiation session or impasse proceeding. Each Party shall designate its own Bargaining Team members. Each Party must serve, in writing by email, the names, location, and contact information of their respective Bargaining Team members within ten (10) calendar days of the effective date of this MOU. To minimize disruption to organizational operations, AFGE Bargaining Team members who are Bargaining Unit Employees cannot come from the same healthcare system or facility.

B.    Chief Negotiator: Each Party will designate a Chief Negotiator. Only the respective Chief Negotiators, or their designated alternates, have the authority to bind their respective Party on the finality of an Article. Chief Negotiators will provide leadership to and be responsible for the conduct of their Bargaining Team including alternates. Each Chief Negotiator or designated alternate Chief Negotiator will be individually responsible for maintaining professional decorum and order during all discussions, calling caucuses, reaching agreements on contract language, initialing, dating and signing agreed-upon Articles, maintaining communication between the Parties between negotiating sessions, requesting assistance, and any other logistical issues.

C.    Alternates: Either Chief Negotiator may substitute alternates for any members of his or her Bargaining Team at his or her discretion, including the role of Chief Negotiator. Alternates will attend negotiating sessions only when they are replacing a Bargaining Team member and will have full authority for the member they replace. The Union must provide the Department's Chief Negotiator, in writing by email, the names, location, and contact information of their respective Alternates within ten (10) calendar days of the effective date of this MOU. Additionally, AFGE's Chief Negotiator will provide written notice to the Department's Chief Negotiator at least one week prior to the scheduled negotiation session when an AFGE alternate will be a bargaining unit employee.

D.    Note-takers: Each Party may designate a Note-taker to take notes and maintain records of the negotiations. Note-takers are one (1) of the five (5) Bargaining Team members of

1

**Initial Agency Proposal (A1)**
**5/19/2026**

each Party's respective Bargaining Team and may participate as a Bargaining Team member at the bargaining table during negotiations. Each Party is responsible for making and keeping its own notes and records and may use electronic transcription tools to do so.

E.  Subject Matter Experts (SMEs): SMEs must be mutually agreed upon two (2) business days in advance by the Chief Negotiators. SMEs are not bargaining team members and are required to abide by these ground rules. SMEs who are VA employees will be on duty time.

F.  The Parties will neither disclose nor cause to be disclosed in a public forum (e.g., informational picketing, media outlets, social media, etc.) any Agency or Union proposals, nor quote or paraphrase any Agency or Union officials from any bargaining sessions, nor use any bargaining team member's name, image, or likeness without their consent. This is not intended to prevent or limit the Parties from disclosing bargaining matters that are routinely disclosed to third parties such as the FLRA or FSIP in the normal course of bargaining.

## Section 3: Bargaining Location and Schedule

A.  All bargaining will be conducted virtually on Microsoft Teams or equivalent virtual platform as determined by the Department. All Bargaining Team members will appear on camera throughout the duration of each negotiation session in a private setting that prevents the disclosure of information during negotiations.

B.  Bargaining will commence on the first Monday following the exchange of proposals. Unless mutually agreed otherwise, the Parties will meet for two (2) consecutive weeks of table bargaining followed by a one (1) week interval away from the table until they reach agreement, are declared at impasse, or 120 calendar days have passed from the first day of bargaining, inclusive of federal holidays and weekends, at which time bargaining shall terminate, whichever event occurs first. The Parties will not bargain on a federal holiday.

C.  The schedule for bargaining shall be Monday through Friday (first week in cycle), Monday through Thursday (second week in cycle), 10 a.m. to 5 p.m., Eastern Time.

D.  Breaks: One (1) hour lunch breaks will be by mutual agreement of the Chief Negotiators. Comfort breaks will be determined by the Chief Negotiators. Upon mutual agreement of the Chief Negotiators, the Parties may work later than 5:00 pm. The Parties agree that the bargaining team members that are bargaining unit employees are not entitled to overtime or compensatory time.

E.  Bargaining sessions may be abbreviated, extended, terminated, or rescheduled by mutual agreement of the Chief Negotiators.

## Section 4: Proposals

2

**Initial Agency Proposal (A1)**
**5/19/2026**

A.    Either Party may propose to reopen any existing Articles in the Master Agreement, propose to rollover any existing Articles, propose no more than two new Articles not found in the 2023 Master Agreement, or propose that Articles in the 2023 Master Agreement not appear in the new Master Agreement.

B.    All proposals will only contain the rights and obligations of the Parties, not otherwise provided for in law, rule, regulation, or policy, and will not contain aspirational or hortatory language, statements of purpose, policy or intent. While law, rule, regulation, or policy may not be restated or paraphrased in a proposal, it may be referenced when a party proposes negotiable procedures and appropriate arrangements related to it.

C.    Each Party will submit a complete set of electronic proposals in Microsoft Word format no later than thirty (30) calendar days following the effective date of this MOU. No new proposals shall be issued after that deadline, except upon mutual agreement by the Chief Negotiators.

D.    If a Party desires to roll over an existing Article with no changes, it will submit the existing Article as a part of its proposals in Section 4(C).


**Section 5: Procedures**

A.    General:

    1.    Bargaining Method: All bargaining will be traditional.

    2.    Caucuses: The Bargaining Team requesting a caucus (i.e., caucusing team) will leave the virtual negotiation session. The caucusing team will notify the other team no less than five (5) minutes before rejoining the negotiation session. Each Party will make every effort to restrict the number of caucuses and will provide a reasonable estimate on the anticipated length of the caucus. No caucus will exceed one (1) hour unless the Chief Negotiators mutually agree otherwise. Chief Negotiators will ensure that the timing, number, and length of caucuses are reasonable, necessary, and used effectively.

B.    Bargaining Procedures:

    1.    Before presenting an Article, each party will identify the next Article it intends to open and present for negotiation (the on-deck article).

    2.    Each party will present its opened Article and have one Article open at a time for negotiation (for a total of 2 Articles being open for discussion at the table - one Agency-introduced article, one Union-introduced Article). The Parties will continue negotiating on an open Article until negotiations are complete - i.e., they either reach agreement or determine there is no further movement on the Article. Once

3

**Initial Agency Proposal (A1)**
**5/19/2026**

negotiation of an open Article has completed, the Party that introduced the Article will then present its next Article, following the same process. This procedure will continue until all Articles have been negotiated. Each proposed Article will be presented before any discussion on its substance takes place. Neither Party will read the Article aloud during its presentation.

3.  Presentation of Articles during Bargaining: Proposals and counter proposals will be identified as either Union or Agency, dated, and numbered successively. The Party presenting the proposal or counter proposal will project it on the Teams screen, explain it, and provide the meaning of the proposed language. Prior to presenting any counter proposals, the presenting Chief Negotiator will email the other Party's Chief Negotiator a copy of the counter proposal.

4.  Memorializing Agreements on Articles: The Parties will indicate "Parties agree MM/DD/YY" and highlight the phrase at the end of each section of any agreed upon language in their respective counter proposal(s). Agreement is reached on an Article when the Parties have agreement on all proposals in the Article, excluding any proposal pending collateral third-party action or review consistent with Section 7 below. When agreement is reached on an Article, the Microsoft Word document will then be saved and labeled as "Agreement" and dated by the presenting Party and emailed to the opposing Party's Chief Negotiator during the negotiation session. The presenting Chief Negotiator or designee will then convert the Microsoft Word document to an Adobe.pdf document. The presenting Chief Negotiator will initial, date and sign the .pdf document. After signing, the presenting Chief Negotiator or designee will email the signed .pdf document to the opposing Chief Negotiator. The opposing Chief Negotiator will initial, date, and sign the .pdf document, and the opposing Chief Negotiator or designee will email the final version of the agreement to the presenting Chief Negotiator. The Chief Negotiators will initial and sign the agreed to Articles without using PIV credentialing. No signed Article may be reopened without mutual consent of both Parties.

5.  After the Parties reach agreement on all Articles, the Agency will compile and transmit the agreement to the Union. The Chief Negotiators or designees will meet to conduct a review of the Agreement for grammar, spelling, formatting, and to ensure all agreed upon language is included, not to exceed five (5) business days following transmittal. The Agreement will be emailed to both Bargaining Teams upon completion.

**Section 6: Mediation Procedures**

A.  The Parties shall engage in concentrated mediation with an FMCS mediator for a period of up to two weeks, to occur no later than the final two scheduled bargaining weeks of the 120-day period.

4

**Initial Agency Proposal (A1)**
**5/19/2026**

B.  Mediation shall be conducted virtually on dates and at times established by the mediator. The Parties shall maintain full availability for mediation sessions consistent with, at a minimum, the bargaining schedule set forth in Section 3.

## Section 7: Ground Rule and Bargaining Disputes

A.  Ground Rule disputes: Disputes arising under this MOU concerning the interpretation of these Ground Rules shall not extend any timelines in the MOU.

B.  Negotiability: If unable to resolve a negotiability issue, the Union may request, or the Agency may provide on its own accord, a written assertion of non-negotiability. If the Union files a negotiability appeal with the Federal Labor Relations Authority (FLRA), it must do so within fifteen (15) days of receipt of the Agency's written assertion. While any such petition is pending, the Parties will continue bargaining on all other proposals. The Parties will commence bargaining on the proposal within five (5) business days of the negotiability dispute being resolved, consistent with the bargaining schedule.

C.  Collateral third-party actions: A third-party action filed by either Party concerning these negotiations, including any negotiability disputes or impasse proceedings, will not delay further bargaining while the action is pending, except by mutual agreement. Additionally, any proposal, provision, or Article being disputed before a third party will be severed from all other agreed to proposals, provisions, and Articles. All other agreed to proposals, provisions, and Articles will constitute the entire Agreement between the Parties, subject only to Agency Head Review. If a third party orders the Parties back to the table to negotiate over a disputed proposal, provision, or Article, the Parties agree to begin negotiations on the disputed proposal, provision, or Article within five (5) business days of the order. The Parties agree to amend and incorporate into the Agreement any subsequently agreed to or ordered proposals, provisions, or Articles, subject only to Agency Head Review. Amending the Agreement to incorporate newly agreed to or ordered proposals, provisions, or Articles will not change the effective date of the MCBA.

## Section 8: Execution of the Final Agreement

A.  Within five (5) business days of transmittal of the Agreement to the Bargaining Teams as described in Section 5(B)(5), the Chief Negotiators will execute the Agreement.

B.  Upon the effective date of the Agreement, all other existing local and national collective bargaining agreements and past practices between the Parties terminate.

## Section 9: Effective Date of Ground Rules MOU

**Initial Agency Proposal (A1)**
**5/19/2026**

A.  This MOU is effective upon execution (signed and dated) by both Parties. The Chief Negotiators may amend any provision of this MOU by mutual written consent.

B.  Upon the effective date of these ground rules, further local supplemental negotiations and agreements are prohibited. Bargaining over Agency-initiated changes may continue as appropriate, i.e., only those changes that trigger a statutory duty to bargain under the Federal Service Labor-Management Relations Statue (FSLMRS).

# EXHIBIT B



**From:** Everett Kelley <Kellee@afge.org>
**Sent:** Wednesday, May 27, 2026 8:59 AM
**To:** Martin, Kurt P. <Kurt.Martin@va.gov>
**Cc:** MJ Burke <mjburke@afgenvac.org>; Picerno, Michael G. <Michael.Picerno@va.gov>
**Subject:** Re: VA/AFGE 2023 MCBA Reopener and Initial Ground Rules

Mr. Martin,

We are in receipt of the May 19 letter from Mark Engelbaum. The negotiation of any successor term agreement must comply with the terms of the VA/AFGE Master Agreement, including the Duration of Agreement article. We do not agree with the contention that the VA/AFGE Master Agreement or the negotiation of a successor term agreement would only apply to "exempt" employees as interpreted by VA. Due to the holiday weekend, we are still developing a formal response and will provide one next week. In the meantime, please continue to direct all correspondence concerning this matter to NVAC President MJ Burke and myself. Thank you.

Sincerely,

Everett Kelley

**From:** Martin, Kurt P. <Kurt.Martin@va.gov>
**Sent:** Tuesday, May 19, 2026 11:26 AM

**To:** Everett Kelley <Kellee@afge.org>
**Cc:** MJ Burke <mjburke@afgenvac.org>; Picerno, Michael G. <Michael.Picerno@va.gov>
**Subject:** VA/AFGE 2023 MCBA Reopener and Initial Ground Rules

**This Message Is From an External Sender**
This message came from outside your organization.

Report Suspicious

Good afternoon Dr. Kelley –

Please see the attached letter reopening the parties' 2023 MCBA for renegotiations and management's initial ground rule proposals.

Please let me know if you have any questions.

Regards,

Kurt P. Martin
U.S. Department of Veterans Affairs | Office of Labor-Management Relations (LMR)

Tel: (202) 809-7741 | Email: Kurt.Martin@va.gov
Was LMR helpful today?
Please let us know by completing our LMR Customer Satisfaction Survey:
LMR Customer Satisfaction Survey

This e-mail (including any attachments) may contain information that is private, confidential, or protected by law.  If you received this e-mail in error, you are notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately and destroy the e-mail and any attachments.

# EXHIBIT C



# NATIONAL VETERANS AFFAIRS COUNCIL
American Federation of Government Employees
Affiliated with the AFL-CIO

*Out of Many/One Union*
AFGE NVAC / AFL-CIO

June 5, 2026

Michael Picerno
Chief Negotiator
Department of Veterans Affairs
Michael.Picerno@va.gov

      RE:    Ground Rules Bargaining Arrangements

Dear Mr. Picerno:

Thank you for your email dated May 29, 2026. The Union appreciates the Department's readiness to move forward with negotiations over a successor term agreement, and we share your commitment to a productive and timely process. In accordance with Section 4 of the Duration of Agreement Article of the Master Agreement, and as outlined in Article 47, we are eager to establish mutually agreeable ground rules to ensure a smooth negotiation process.

We recognize that the Department initiated negotiations by submitting its ground rules proposals with its Notice to Reopen dated May 19, 2026. With the negotiation initiation timeline now satisfied, there remain several important matters, either not addressed by Article 47 or explicitly left to the Parties' agreement, that require our joint attention.

Regarding bargaining team composition, we note your plan to include five Department representatives. Given the complexity and number of issues raised in this successor agreement negotiation, we believe it is both reasonable and necessary for the Union to have six negotiators for the ground rules discussions. This approach is consistent with the number the Union had during the negotiations of ground rules for the renegotiation of the 2011 Master Agreement.

On the matter of meeting format, Article 47 clearly provides for face-to-face negotiations with the Department responsible for travel and per diem. While we understand the convenience of virtual meetings, the Parties are under no obligation to bargain virtually. We believe the purpose of in-person negotiations is important for us to reach agreement. Therefore, we insist on adherence to the contractual requirement for face-to-face sessions. To facilitate this, we propose alternating meeting locations between the Veterans Affairs Central Office and the American Federation of Government Employees' Headquarters, both of which are in Washington, DC. Additionally, we request that the host party provide a private

caucus room for the visiting party, separate from the main (Department/Union) negotiation room, to allow for confidential discussions as needed. We also propose that both rooms (i.e., the negotiation room and the caucus room) be equipped with a projector and the necessary equipment to facilitate the presentation of proposals.

Given the travel involved, it is essential that we agree on practical dates and times. The proposed start date of June 1st is, among other things, not feasible due to travel logistics. However, we are open to your suggestion of an 8-hour day instead of the 8-1/2 hour days including a break for lunch listed in Article 47. We are also amenable to a 9am/5pm start and stop time, which aligns with our mutual interests. To further accommodate travel, we propose negotiating ground rules Tuesday through Thursday, with travel on Monday and Friday at a frequency of one week per month. We suggest discussion of dates beginning in July or August 2026.

Finally, as provided in Article 47, when traditional bargaining is used, the Union's written proposals will be submitted prior to bargaining. We propose to provide our written initial proposals within 24 hours of the commencement of the first bargaining session, ensuring both Parties have adequate time for review and preparation.

We are confident that, by working together in good faith and adhering to established agreements, we can reach accord on these arrangements promptly. We look forward to your response and to a successful negotiation process.

Sincerely,

Mary Jean Burke
President and Chief Negotiator
National VA Council #53





**NATIONAL VETERANS AFFAIRS COUNCIL**

American Federation of Government Employees

Affiliated with the AFL-CIO

*Out of Many/***One Union**

AFGE NVAC / AFL-CIO

June 12, 2026

Michael Picerno
Chief Negotiator
Department of Veterans Affairs
Michael.Picerno@va.gov

        RE: Ground Rules Bargaining Arrangements

Dear Mr. Picerno,

        Thank you for your June 10, 2026 correspondence and for stating your willingness to move forward in good faith on several important aspects of our arrangements for ground rules negotiations. Your letter appears to confuse ground rules negotiations with what we are currently engaged in, which is discussion of the arrangements for ground rules negotiations, what we like to call ground rules for ground rules. We are discussing how we will negotiate the ground rules.

        To that end, we appreciate the Department's agreement to: provide a separate caucus room; ensure necessary equipment in both rooms; receive the Union's submission of written initial proposals no later than 24 hours prior to the Parties' first ground rules negotiations session; and, allow the Union to bring up to six representatives to the table for ground rules negotiations. These agreements reflect our shared commitment to a productive and respectful bargaining process.

        We must dispute the Department's interpretation of the Master Agreement regarding arrangements for ground rules negotiations. The Union disagrees with the Department's narrowing of the term "arrangements" to mean "only scheduling provisions." The language of the Duration of Agreement Article explicitly uses "arrangements," and requires that they be in accordance with Article 47. Article 47 encompasses several logistical and procedural matters, including face-to-face negotiations and travel, paid for by the Department. This interpretation is not only consistent with the plain language of the Master Agreement but is also supported by the precedent for the Parties' prior ground rules negotiations, including for the renegotiation of the 1997 Master Agreement and 2011 Master Agreement.

        Further, we also dispute your assertion that we have not already satisfied the requirement in the Duration of Agreement Article to begin negotiations "no later than 30 days" after a party provides notice to of its intention to renegotiate the Master Agreement. The Department provided its ground rules proposals contemporaneously with its May 19, 2026 Notice to Renegotiate the Master Agreement. Then, on May 29, 2026, you sent us an email with your opening proposals for the arrangements governing ground rules negotiations. On June 5, 2026, the Union provided responsive proposals. Therefore, we have satisfied the contractual requirement to begin negotiations within 30 days. While Section 3 - Reopener of the Duration of the Agreement Article

PO Box 2209 Salem, VA 24153 · (540) 345-6301

requires the Parties to "meet" within 30 days, that Section applies to mid-term negotiations where the Parties agree to add to, amend, or modify the Master Agreement. That Section does not apply here concerning a renegotiation of the Master Agreement.

The arrangements detailed in Article 47 are intended to ensure a fair and effective bargaining process. Unilateral reinterpretation or disregard for these provisions undermines the integrity of our collective bargaining relations and sets a concerning precedent for pending negotiations. Adherence to these established and agreed upon arrangements is not only a matter of contractual obligation but also of mutual respect and trust between the Parties.

Regarding the scheduling of negotiations, the Statute requires that we meet at reasonable times and places. The Department's proposed schedule provided just five days' notice for in-person bargaining in Washington, DC, with the Union being required to fund travel costs for its representatives. Plainly, this is not reasonable. We are available to meet in person during the week of July 13, 2026, as you offered. We are also available to meet in person during the week of August 10, 2026. Travel will be on Monday and Friday, with bargaining from Tuesday through Thursday from 9am to 5pm. It appears we have agreement to alternate locations between AFGE and VA Headquarters in Washington, DC for each week-long session. In accordance with Article 47, the Department is required to pay the travel and per diem costs for ground rules negotiations. By suggesting Washington, DC, the Union will only need travel orders for three of our six negotiators.

In conclusion, we urge the Department to honor both the letter and spirit of our Master Agreement and the Statute and to work with us in a manner that upholds the principles of fairness, respect, and collaboration. We look forward to continuing our discussions and reaching mutually agreeable arrangements for ground rules negotiations.


Sincerely,

Mary Jean Burke
President and Chief Negotiator
National VA Council #53



AFGE National VA Council

# NATIONAL VETERANS AFFAIRS COUNCIL
### American Federation of Government Employees
### Affiliated with the AFL-CIO

*Out of Many/***One Union**
AFGE NVAC / AFL-CIO

June 17, 2026

Michael Picerno
Chief Negotiator
Department of Veterans Affairs
Michael.Picerno@va.gov

   RE: Ground Rules Bargaining Arrangements

Dear Mr. Picerno:

   We have been patient, understanding that you are new to negotiating arrangements and ground rules for a successor agreement with AFGE. However, to be frank, there is no basis for your current disagreements. The Department is wasting time by demanding a meeting that is not required and insisting on violations of the provisions of the Duration of Agreement Article and Article 47. Negotiations must proceed based on mutual agreement of the Parties, yet from the outset, the Department continues to make unilateral demands and ultimatums.

   You have started using the term "session" instead of "meeting," but this does not change the outcome. There is no requirement for a session or meeting to occur within 30 days; that requirement applies only to reopeners, not renegotiations. Negotiations cover the entire process, including establishing ground rules, face-to-face bargaining, preparation, facilitation, approved travel time, mediation, impasse, and third-party proceedings. We have already exchanged several proposals about the arrangements for ground rules negotiations. This means we have met the requirements to begin negotiations within 30 days. Now, you seem to be demanding a different timeline for our counterproposals on ground rules. The sooner we schedule our first meeting, the sooner we can provide our proposals.

   Article 47 has only a few requirements for negotiating ground rules. One is that meetings must be face-to-face. Another is that the Department must pay travel and per diem. Virtual meetings do not count as face-to-face bargaining. Insisting otherwise is incorrect and shows bad faith. The travel provision in Article 47 would be meaningless if virtual meetings were considered face-to-face bargaining. This face-to-face requirement has been in the Master Agreement since 1997, before virtual bargaining existed. The Department also recognized the difference between virtual and face-to-face meetings during the renegotiation of the 2011 Master Agreement, and the requirement remained unchanged in the 2023 Master Agreement. Therefore, ground rules negotiations must be face-to-face, with the Department paying the travel and per diem costs. This is our final statement on this matter. We have tried to avoid filing a grievance, but your actions leave us no choice.

   You have also raised mid-term bargaining. While mid-term bargaining has no relevance in this discussion, we will address it. Obviously, the Union does not use the same team for ground

UNION LABEL

PO Box 2209 Salem, VA 24153 · (540) 345-6301

rules negotiations as for mid-term bargaining. We offered to meet face-to-face for mid-term negotiations during the weeks of June 15, June 22, and June 29, so those dates were not also available for ground rules bargaining. The Department's mid-term team has not refused our scheduling offer, and we are ready to meet once travel orders are provided. Thank you for confirming that the Department received our mid-term scheduling offer, is available those weeks, and can produce travel orders quickly, but is simply refusing to do so. This shows the Department is acting in bad faith for mid-term negotiations. We hope this does not also happen with ground rules negotiations.

We do not want to prolong discussions about these ground rules arrangements. We agree on matters where Article 47 is silent (such as locations, timing of counter proposals, rooms, and equipment). We also agree on matters that Article 47 explicitly left open for agreement (the number of negotiators). The only remaining issue is compliance with the requirements for face-to-face bargaining and travel paid for by the Department.

We note that your June 10 correspondence offered the week of July 13 for face-to-face negotiations at AFGE Headquarters in Washington, DC. In our June 12 correspondence, the Union then agreed to face-to-face negotiations during that offered week. Those dates, while not included in your June 16 email, are quickly approaching given the intervening holidays. Please let us know whether the Department will provide the travel orders for that mutually agreeable session, at which time the Union will provide the names of the negotiators who will be traveling to Washington, DC. As we indicated previously, the Union remains available for face-to-face negotiations during the week of August 10. The travel orders will also need to include the procedures for non-VA employees to make travel arrangements and secure reimbursement from the Department.


Sincerely,

Mary Jean Burke
President and Chief Negotiator
National VA Council #53



AFGE National VA Council

# NATIONAL VETERANS AFFAIRS COUNCIL

American Federation of Government Employees

Affiliated with the AFL-CIO

*Out of Many/***One Union**

AFGE NVAC / AFL-CIO

June 26, 2026

Michael Picerno
Chief Negotiator
Department of Veterans Affairs
Michael.Picerno@va.gov

RE:   Ground Rules Bargaining Arrangements

Dear Mr. Picerno:

To avoid any delay, the travel orders for the week of July 13th need to be for MJ Burke, Barbara Casanova, and Tinita Cole. To my knowledge, only Ms. Cole has a Concur profile and credit card. I do not know if Barb and I still have a Concur profile, so reimbursement will need to be set up. AFGE Headquarters is located at 80 F St. NW, Washington, DC. We will provide a formal response to your remaining requests shortly.

Sincerely,

Mary Jean Burke
President and Chief Negotiator
National VA Council #53

PO Box 2209 Salem, VA 24153 · (540) 345-6301



# NATIONAL VETERANS AFFAIRS COUNCIL

American Federation of Government Employees

Affiliated with the AFL-CIO

June 30, 2026

Michael Picerno
Chief Negotiator
Department of Veterans Affairs
Michael.Picerno@va.gov

RE:  Response to June 25, 2026 Letter

Dear Mr. Picerno:

Your letter dated June 25, 2026 accuses the Union of engaging in dilatory tactics and failing to meet statutory obligations to bargain in good faith. These accusations are baseless and contradicted by our documented communications since the Department's May 19 Renegotiation Notice and the requirements of both the Master Agreement and the Federal Service Labor-Management Relations Statute ("Statute").

You have now moved from the contractual requirement of beginning negotiations within 30 days to the statutory requirement to meet at reasonable times. Your shifting justifications do little to change the outcome that the Union has acted in good faith and met all contractual and statutory requirements. We promptly responded to the Department's Renegotiation Notice as evidenced by our letters on June 5, June 12, and June 17. We reached agreement on the ground rules team composition, submission of proposals, and room requirements. We repeatedly sought to reach agreement on the scheduling of meetings, while the Department sought to dictate a format contrary to the parties' agreement as outlined in the Master Agreement.

As you know, the Union represents a national bargaining unit of hundreds of thousands of VA employees, and negotiations require travel and coordination among multiple representatives. Where schedules are planned six months to a year in advance, the ability to assemble a bargaining team for a subject of this magnitude, coordinate schedules, and meet within 60 days is plainly above and beyond what should be reasonably expected under these circumstances. It is also consistent with the logistical realities of national-level bargaining. The Union's Ground Rules Team consists of the highest elected officials of the Union, who have significant commitments and responsibilities. The Department's demand for immediate meetings with minimal notice, or to dictate the frequency and format of sessions, disregards the need for reasonable logistical planning and mutual agreement.

The Statute obligates both parties to meet at reasonable times and places and to bargain in good faith, which means *a sincere resolve to reach agreement*. It does not empower one party to unilaterally dictate the terms, schedule, or format of negotiations. It certainly does not allow one party to exalt itself and command that the other provide an offering of good faith at its altar. The

PO Box 2209 Salem, VA 24153 · (540) 345-6301



**AFGE National VA Council**

# NATIONAL VETERANS AFFAIRS COUNCIL
American Federation of Government Employees
Affiliated with the AFL-CIO

*Out of Many/**One Union***
AFGE NVAC / AFL-CIO

July 8, 2026

Michael Picerno
Chief Negotiator
Department of Veterans Affairs
Michael.Picerno@va.gov

      RE:     Response to July 2, 2026 Letter

Dear Mr. Picerno:

Thank you for your July 2, 2026 letter. I would like to clarify that I am fully familiar with the services provided by the FMCS, having served as 1st Executive Vice President and participated in the execution of two Master Agreements over the past 18 years. The Union recognizes the value of mediators and is open to discussing the potential benefits of early mediation or facilitation, provided both parties agree on the scope and timing of such involvement. However, at this stage, we do not believe the presence of a mediator is necessary, as we remain committed to reaching agreement through direct negotiations.

Regarding the selection of our bargaining representatives, the Union maintains the right to choose its own team members. Our priority is to select experienced negotiators who have a proven record of concluding agreements. It is inappropriate for the Department to dictate or influence the composition of the Union's bargaining team.

With respect to scheduling the sessions, the Union's next availability for negotiations is in August. This is a reasonable timeframe. While the Department has had time to prepare its schedule for bargaining sessions, the Union learned of the renegotiations with the Department's May 19, 2026 notice. Our team already had commitments. We request confirmation of the Department's availability for negotiations during the week of August 10th.

Sincerely,

Mary Jean Burke
President and Chief Negotiator
National VA Council #53

PO Box 2209 Salem, VA 24153 · (540) 345-6301

# EXHIBIT D



**Assistant Secretary for Human Resources and Administration**
Washington DC 20420

July 24, 2026

Everett Kelley
President, American Federation of Government Employees
80 F Street, NW
Washington, DC 20001

Dear Dr. Kelley,

The Department writes to address two distinct but related matters concerning the 2023 master collective bargaining agreement (MCBA) between the Department of Veterans Affairs (VA or Department) and the American Federation of Government Employees (AFGE): (1) the Union's failure to satisfy the contractual requirement that negotiations begin within 30 days of the Department's notice to renegotiate and the resulting effect on the MCBA's automatic extension provision; and, (2) the application of the MCBA to employees whose positions are excluded from coverage under the Federal Service Labor-Management Relations Statute (FSLMRS) by operation of Executive Order (EO) 14251.

### (1) The Union's Failure to Timely Negotiate Voided the MCBA's Automatic Extension Provision for All Employees

The FSLMRS defines collective bargaining as a mutual obligation to "meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement." 5 U.S.C. § 7103(a)(12). The FSLMRS also independently imposes on each party an affirmative obligation to "meet" in satisfaction of its duty to negotiate in good faith. *See id.*

The MCBA became effective August 8, 2023. Section 2 of the Duration of Agreement article (Attachment A) establishes the MCBA "will remain in full force and effect for a period of three years after its effective date" (i.e., until August 8, 2026) and that the MCBA "shall be automatically renewed for one year periods" *unless* either party provides "notice of its intention to renegotiate [the MCBA] no less than sixty nor more than one hundred twenty days prior to its termination date." Section 2 requires such negotiations "shall begin no later than 30 days after these conditions have been met." Section 2 further states that "[i]f renegotiation of an Agreement is in progress but not completed upon the terminal date of [the MCBA], [the MCBA] will be automatically extended until a new agreement is negotiated."

On May 19, 2026, the Department provided timely written notice to the Union of its intention to renegotiate the MCBA. (Attachment B, Exhibit 2). The notice reminded the Union that Section 2 of the Duration of Agreement article in the MCBA requires the parties to begin negotiations within 30 days (e.g., no later than June 18, 2026) of the



notice to renegotiate. *Id.* The Department also provided the Union with its initial ground rules proposals on that same date, May 19, 2026. (Attachment B, Exhibit 1).

On May 27, 2026, the Union acknowledged receipt of the Department's notice to renegotiate but did not offer any dates for the parties to meet and begin negotiations. (Attachment B, Exhibit 4).

Following the Union's acknowledgement, on May 29, 2026, VA offered to meet to begin ground rules negotiations prior to June 18, 2026. Specifically, the Department offered to start virtual negotiations on June 1, 2026, and communicated its continuing availability and willingness to meet Monday through Friday thereafter until negotiations were complete. (Attachment B, Exhibit 5). In response to VA's offer, and despite the contract's requirement that the parties meet within 30 days of the renegotiation notice, the Union rejected VA's proposed dates and, instead, proposed "dates beginning in July or August 2026." (Attachment B, Exhibit 7). Further, despite acknowledging the convenience of virtual negotiations, the Union insisted all negotiations be conducted in-person. *Id.* On June 10, 2026, in response to the Union's insistence that the parties meet in-person, VA offered to meet with the Union in-person on June 15-17, 2026. (Attachment B, Exhibits 7 – 9). On June 12, 2026, the Union advised VA it would not meet the week of June 15, claiming VA's offered dates, which would have enabled the Union to comply with the MCBA's requirements, were "not reasonable." (Attachment B, Exhibit 11). Instead, the Union agreed to meet with VA the week of July 13, 2026 (i.e., more than three weeks after the parties were contractually required to begin negotiations). *Id.* Resultingly, the parties did not begin negotiations until July 14, 2026, thereby failing to begin negotiations within the 30-day period required under Section 2 of the Duration of Agreement article.

In sum, despite the Department's repeated offers to begin negotiations prior to June 18, 2026, the Union continually refused to meet with VA and offered no days or times to meet during the 30 day period required by Section 2 of the Duration of Agreement article.

The automatic extension provision found within Section 2 of the Duration of Agreement article is contingent upon negotiations beginning no later than 30 days after a party gives timely notice of their intention to renegotiate the MCBA. Because the Union failed and refused to meet within the 30-day window mandated by the MCBA, automatic extension will not occur.

As a result, all collective bargaining agreements between the parties will expire and not automatically extend beyond the MCBA's terminal date of August 8, 2026. Thus, effective August 8, 2026, with respect to employees covered by EO 14251, the MCBA and all other expired agreements will be terminated in their entirety. Furthermore, because the MCBA is not automatically extending past August 8, 2026, effective August



8, 2026, VA is, with respect to employees excluded from EO 14251's[1] coverage, terminating, and will no longer adhere to, the provisions in these expired agreements dealing with permissive subjects, including, but not limited to, bargaining below the level of recognition and any article or provision concerning the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work.

### (2) Independently, MCBA's Automatic Extension Provision Cannot Be Applied to Employees Covered by EO 14251

Independent of the foregoing, and as previously communicated in the Department's May 19, and May 29, 2026, correspondence, the MCBA and any other collective bargaining agreements and related past practices by and between AFGE and VA cannot legally be extended or applied beyond August 8, 2026, to employees whose positions have been excluded from the FSLMRS' coverage by operation of EO 14251 (i.e., Non-Exempted Employees). Even if the MCBA and other collective bargaining agreements could legally be extended to such employees beyond August 8, 2026, the Department is not obligated to agree to such an extension, and it is choosing not to extend the agreements with regard to such employees, who now lack collective-bargaining rights under the FSLMRS.[2]

The Duration of Agreement article in the MCBA also cannot operate with respect to employees excluded from FSLMRS coverage. The Duration provision states that if "renegotiation … is in progress but not completed by the terminal date" (i.e., August 8, 2026), the MCBA "will be automatically extended *until a new agreement is negotiated.*" (emphasis added). No new agreement will be negotiated with respect to employees excluded from FSLMRS coverage by operation of EO 14251. AFGE has insisted that negotiations continue with respect to such employees, but VA is not obligated to and will not negotiate a "new agreement" with respect to such employees. (*See* Attachment B, Exhibit 20 wherein the Union claims to continue to represent and bargain on behalf of "… a national bargaining unit of hundreds of thousands of VA employees.…"). VA's obligation is only to negotiate a new agreement for employees covered by the FSLMRS.

Accordingly, as of August 8, 2026, the Department will no longer apply any collective bargaining agreement or past practice by and between AFGE and VA to any employee not covered by the FSLMRS.

---

[1] The permissive subjects will not extend beyond August 8, 2026, by operation of law for employees covered by EO 14251 because the FSLMRS does not apply to those employees and no notice regarding termination of permissive subjects is thus required.

[2] In EO 14251, the President determined VA has, as a primary function intelligence, counterintelligence, investigative, or national security work, and that the FSLMRS could not be applied to VA and its Non-Exempted Employees in a manner consistent with national security requirements and considerations.



**Assistant Secretary for Human Resources and Administration**
Washington DC 20420

Irrespective of the two matters discussed above, the Department remains committed to working in good faith with the Union to negotiate a new MCBA applicable to the VA employees AFGE continues to represent and who are covered by the FSLMRS.

If you have any questions or need further clarification, do not hesitate to contact me.

Sincerely,

MARK
ENGELBAU
M

Digitally signed by
MARK ENGELBAUM
Date: 2026.07.24
13:01:41 -04'00'

Mark R. Engelbaum