**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305;

Plaintiffs,

*v.*

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and

DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs;

Defendants.

Civil Action No. 25-CV-583-MRD-PAS

District Judge Melissa R. DuBose

EXPEDITED RELIEF REQUESTED
BY AUGUST 21, 2026
(LR Cv 9)

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR RENEWED EMERGENCY MOTION TO STAY PENDING APPEAL**

## INTRODUCTION

The Court's recent order (the "PI Modification Order") substantially modifies and expands the preliminary injunction's duration and scope in ways that threaten irreparable harm to VA.[1]

The Court's original preliminary injunction had a limited duration. It was in place "for the remainder of the agreed-upon term provided in the Master CBA [collective bargaining agreement]"—*i.e.*, the three-year term ending August 8, 2026.[2] By contrast, the Court's most recent order extended the preliminary-injunction's duration until some indefinite future day when Plaintiffs may agree to a new master collective bargaining agreement.[3] That extension would lead to an indefensible result: while it is undisputed in this case that the majority of VA employees are excluded from the Federal Service Labor-Management Relations Statute (FSLMRS) by virtue of Executive Order 14251, Plaintiffs could effectively force VA to indefinitely continue covering those same employees under the FSLMRS under some inoperable, zombie-like agreement that would override the President's determination that the FSLMRS cannot be applied to the majority of VA employees in a manner consistent with national security requirements. An injunction that conscripts an excluded agency into perpetual collective bargaining would not preserve the status quo; it would

[1] *Compare* Order, ECF No. 69, and Order, ECF No. 64 (PI Modification Order), *with* Mem. & Order, ECF No. 30 (Preliminary Injunction); Ex. A, Declaration of Mark Engelbaum (Engelbaum Decl.) ¶¶ 16-22.

Defendants consider the PI Modification Order (ECF No. 64), rather than the amended order correcting a clerical error (ECF No. 69) to be the operative order, for the reasons stated in Defendants' Amended Notice of Appeal, ECF No. 71. So this brief cites to the PI Modification Order (ECF No. 64). However, there is no substantive difference between the two orders, so Defendants' challenges to the PI Modification Order are equally applicable to the amended order.

[2] Preliminary Injunction at 29, ECF No. 30; *see also* Master CBA, Duration of Agreement, §§ 1-2, ECF No. 14-3.

[3] PI Modification Order at 3; Order, ECF No. 69; Master CBA, Duration of Agreement, § 2.

judicially re-create a statutory regime that Congress authorized the President to switch off—after the President has switched it off.[4]

The original preliminary injunction also covered fewer VA employees than those now covered by the PI Modification Order. Specifically, the preliminary injunction applied to only those VA employees who were covered by Executive Order 14251.[5] That made sense given that those VA employees were the only ones who could allege any harm—they were the ones for whom VA had terminated the Master CBA in August 2025 and the only employees on whose behalf Plaintiffs sought a preliminary injunction.[6] By contrast, the PI Modification Order purports to extend the preliminary injunction's coverage to "all VA employees"—apparently including those employees who are exempted from the Executive Order (namely, police officers, security guards, and firefighters).[7] That expansion makes no sense because those "exempt" employees did not, and cannot, allege any harm—they never had their FSLMRS coverage affected or their CBA affected by the original termination.

Those two expansions of the preliminary injunction would cause VA irreparable harm, for the reasons explained in the supporting declaration of

[4] *See* Executive Order 14251 § 2, 90 Fed. Reg. 14553 (Apr. 3, 2025); 5 U.S.C. § 7103(b)(1).

[5] *See* Preliminary Injunction at 4, 29 (acknowledging that the Plaintiffs were seeking a preliminary injunction to stop VA from effectuating its 2025 termination of the Master CBA for employees covered by the Executive Order).

[6] *See* Pls.' Mot. for Prelim. Inj. & Relief Under 5 U.S.C. § 705 at 1, ECF No. 14 (seeking an order enjoining VA from effectuating its 2025 termination of the Master CBA for employees covered by the Executive Order); Mem. of Points & Authorities in Supp. of Mot. for Prelim. Inj. at 1, 30, ECF No. 14-1 (acknowledging that the 2025 termination did not end the Master CBA for all employees, but only those employees covered by the Executive Order).

[7] *See* PI Modification Order at 1, 1-3; Order 1, 1-3, ECF No. 69 (both appearing to prohibit VA from considering "the Master CBA re-terminated *for all VA employees*") (emphasis added); Executive Order 14251 §§ 2, 4.

VA's Assistant Secretary for Human Resources and Administration, Mark Engelbaum.[8]

Alternatively, even if this Court's recent orders could somehow be seen as *not* modifying the preliminary injunction, now that the Court has made clear that the preliminary injunction will extend the Master CBA for all employees until Plaintiffs agree to a new master collective bargaining agreement, VA renews its request for a stay because that indeterminate extension of the Master CBA for all employees threatens irreparable harm to VA.

Defendants are likely to prevail on their appeal of the PI Modification Order because it is fundamentally flawed in five respects, including its lack of a jurisdictional basis. In addition, the equities favor a stay. For those reasons, Defendants respectfully request that the Court stay both the preliminary injunction and the PI Modification Order.[9]

---

[8] *See* Ex. A, Engelbaum Decl. ¶¶ 17-22.

[9] To the extent that the first enforcement order, ECF No. 39, could somehow be read to prohibit the Master CBA from expiring, Defendants seek a stay of that Order as well.

## BACKGROUND

The Court is familiar with the facts of this case, which are largely undisputed. *See* Mem. & Order at 2–4, ECF No. 30; Defs.' Resp. to Pls.' Mot. to Enforce at 4-11, ECF No. 58; PI Modification Order at 1-2, ECF No. 64; Order at 1-2, ECF No. 69.

## LEGAL STANDARD

Courts consider four factors when assessing a motion for a stay pending appeal, all of which are similar to the four factors used to assess the basis for preliminary injunctive relief and to determine whether to dissolve or modify preliminary injunctive relief. Namely, courts assess:

(1) the movant's likelihood of prevailing on the merits of the appeal;

(2) whether the movant will suffer irreparable harm absent a stay;

(3) the harm that other parties will suffer if a stay is granted, and

(4) the public interest.

*See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

As a preliminary matter, the Court's modification of the PI did not consider the typical preliminary-injunction factors set out in *Winter v. Natural Resources Defense Council, Inc.*, 554 U.S. 916 (2008). Given that the PI Modification Order both expanded the preliminary injunction and extended its coverage, the Court was required to consider those factors and its failure to do so is a legal error that independently justifies a stay.

In addition, a stay is manifestly warranted here because the PI Modification Order is fundamentally flawed in six respects. The equities independently favor a stay.

## A. VA is likely to prevail on the merits of its appeal of the PI Modification Order because the order is fundamentally flawed.

### 1. Extending the Master CBA creates an inoperable agreement.

There is a fundamental contradiction in ordering an extension of a collective bargaining agreement for employees who may not collectively bargain. The FSLMRS is the sole source of federal employees' "right . . . to engage in collective bargaining," 5 U.S.C. § 7102(2), and a labor organization's entitlement "to act for, and negotiate collective bargaining agreements covering, all employees in the [relevant] unit," *id.* § 7114(a)(1).

The FSLMRS framework permeates this collective-bargaining agreement. The Master CBA is premised on the American Federation of Government Employees (AFGE) being certified by the U.S. Federal Labor Relations Authority (FLRA) "as the sole and exclusive representative" with "the right to speak for and to bargain on behalf of the employees it represents." Am. Compl. 3, ECF No. 13-1 (CBA art. 1, §§ 1, 3(A)). The rights and procedures set out in the Master CBA depend on the FSLMRS's applicability. The Master CBA provides, for example, that units may be clarified only through an alternative-dispute-resolution process, followed by a petition to the FLRA. *See id.* at 3 (CBA art. 1, § 4). Similarly, the Master CBA's grievance procedures are intertwined with the FSLMRS. *See id.* at 226 (CBA art. 44, § 2(G)) (providing that "[t]he arbitrator's decision shall be final and binding," except insofar as "either party may file an exception [to the FLRA] . . . in accordance with applicable law and regulations"); 5 U.S.C. § 7121 (setting forth requirements for collective

bargaining agreement grievance procedures). And the Master CBA presumes that AFGE may represent employees at all grievance stages, *see* ECF No. 13-1 at 220 (CBA art. 43, § 5), including informal resolutions, *id.* at 220–21 (CBA art. 43, § 6), grievance meetings, *id.* at 221–23 (CBA art. 43, § 7), and national-level grievances, which may be filed only by AFGE or VA, *id.* at 224 (CBA art. 43, § 11).

As this Court recognized, the FSLMRS's provisions no longer apply here because the President excluded VA from the FSLMRS. Order 11; *see also id*. at 12 (clarifying that "[t]his case is not about the constitutionality of the EO"). In this proceeding, AFGE disclaimed any challenge to the Executive Order. *See* Preliminary Injunction at 11, ECF No. 30; Am Compl. ¶ 11, ECF No. 13.

It is therefore undisputed in this case that VA is no longer subject to the FSLMRS for the employees covered by Executive Order 14251 (*i.e.,* the "non-exempted" employees). Accordingly, with limited exceptions, VA employees may not collectively bargain, AFGE may not exclusively represent VA employees, and the Master CBA's negotiated grievance process—which is enforced through arbitration, orders by the FLRA, and limited review by the court of appeals—is no longer available. Nor may VA officials supply what the statute has withdrawn: officers of the United States may bind it only within the actual authority that the law confers, and after exclusion no VA officer possesses authority to maintain, renew, or extend a collective-bargaining relationship under the FSLMRS. *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917); *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424-32 (1990). Even assuming that preserving the collective-bargaining agreement in the first instance was permissible, there is no lawful route to *extending* that agreement, nor any

prospect of the lawful entry into a new agreement with employees who have lost their collective-bargaining rights.

Relatedly, the Court lacks jurisdiction to adjudicate plaintiffs' claim that the evergreen clause has extended the agreement's term. The FSLMRS is the component of the Civil Service Reform Act (CSRA) that "establishes a comprehensive scheme to deal with labor relations in federal employment." *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting *DoD v. FLRA*, 685 F.2d 641, 644 (D.C. Cir. 1982)). This scheme precludes district-court jurisdiction; one "'may not circumvent that structure' by seeking judicial review outside the CSRA's procedures." *Id.* (quoting *Steadman v. Governor, U.S. Soldiers' & Airmen's Home,* 918 F.2d 963, 967 (D.C.Cir.1990)). "[T]o the extent that management enforces a policy that violates a collective bargaining agreement predating the policy, 'any person' can lodge an unfair labor practice charge with the FLRA," with review to follow in the Federal Circuit. *Id.* at 637.

Federal district courts cannot fill any gap in the FSLMRS's judicial-review scheme because the unavailability of Congress's specified enforcement pathway does not "mean the district courts are open. It means that review is precluded in any court." *Id.* (quotation omitted); *accord Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.) (observing that "what you get under the CSRA is what you get"). Stated differently, the FSLMRS's statutory scheme is comprehensive and exclusive, and collective-bargaining agreements made under the FSLMRS cannot be enforced by a district court when an agency is excluded from that statute's purview. There is simply no role for a district court to play here—it is either the FLRA (if the FSLMRS applies) or nothing (if it does not). The FLRA itself has long held that it lacks jurisdiction over cases brought by a union against an agency excluded from FSLMRS coverage under § 7103(b)(1). *See Am. Fed'n of Gov't Emps. v. Trump* (*AFGE I*), 167 F.4th 1247,

as amended, 178 F.4th 456, 466 (9th Cir. 2026) (collecting FLRA decisions); *U.S. Attorney's Office, S.D. Tex. v. AFGE Local 3966*, 57 F.L.R.A. 750, 750 (2002); *Sec'y of the Air Force*, 716 F.3d at 638 ("[T]he fact that National AFGE may not pursue a claim through the CSRA does not mean that it has access to the courts. Rather, it means that National AFGE may not raise the claim at all."). That has been VA's point throughout.

At the very least, this Court certainly lacks jurisdiction to extend the Master CBA for employees not covered by the Executive Order (namely, police officers, security guards, and firefighters). The FSLMRS channels adjudication of labor disputes concerning those employees to the U.S. Federal Labor Relations Authority, followed by direct review in the court of appeals. *See* 5 U.S.C. §§ 7105(a)(2). The FSLMRS's "regime is exclusive," and a union "cannot circumvent [it] by instead bringing suit in district court." *Sec'y of Air Force*, 716 F.3d at 636. Employees who remain covered by the FSLMRS must bring their claims for extending the CBA before the FLRA, not a federal district court.

By ordering that the Master CBA be extended indefinitely, the PI Modification Order extends a collective-bargaining agreement that is legally inoperable. Because there is no FSLMRS coverage, there can be no Master CBA. There is simply no way to extend a FSLMRS-collective bargaining agreement with a federal agency to which the statutory collective-bargaining framework no longer applies. And in adjudicating disputes over the duration of the Master CBA and whether it has terminated, the PI Modification Order decides a claim that Congress intended to be channeled through the FLRA and is beyond the subject-matter jurisdiction of this Court. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994).

For that same reason, the Plaintiffs cannot rely on the clause in the Master CBA's Duration of Agreement provision that states that "[i]f

renegotiation of an Agreement is in progress but not completed upon the terminal date of this Agreement, this Agreement will be automatically extended until a new agreement is negotiated." Master CBA, Duration of Agreement, § 2, ECF No. 14-3 at 290. The Master CBA cannot automatically extend for any amount of time because there can be no collective bargaining agreement for employees who are no longer covered by the FSLMRS and thus can no longer collectively bargain. Were it otherwise, Plaintiffs could effectively override the President's congressionally authorized national-security determination that the FSLMRS cannot extend to most of VA by never agreeing to a new agreement. Indeed, AFGE has represented that it will take eleven years to negotiate a new agreement, and if the current agreement remains in place, AFGE has no incentive to come to a new agreement that, pursuant to the Executive Order, no longer covers those employees whom the President has concluded should no longer have collective-bargaining rights. Ex. A, Engelbaum Decl. ¶¶ 16, 21(b)(v).

The D.C. Circuit's decision in *NTEU v. FLRA*, 45 F.4th 121 (D.C. Cir. 2022), confirms the point. A continuance clause of this kind, the court explained, "manifests the parties' intent to be bound by the terms of their original agreement pending further negotiations" and "remains in effect only while the parties continue to disagree over the terms of any successor agreement." *Id.* at 126. The clause, in other words, is a bridge between one lawful agreement and the next. Its predicate—"renegotiation"—is collective bargaining within the meaning of the FSLMRS, 5 U.S.C. § 7103(a)(12), directed at a successor agreement that would itself be an agreement negotiated "pursuant to the provisions of" the FSLMRS, *id.* § 7103(a)(8). After the President's exclusion, no such renegotiation can lawfully be "in progress" as to employees covered by Executive Order 14251: the VA has no duty or authority to bargain collectively as to those employees, and AFGE is not their statutory

exclusive representative. Where the law forecloses any lawful successor agreement, there is nothing for the bridge to span, and the only operative endpoint that remains is the Master CBA's date certain—August 8, 2026. Reading the clause instead to extend the Master CBA until a successor "is negotiated," when no successor can ever lawfully be negotiated as to those employees, would convert a three-year agreement into a perpetual one—an open-ended commitment of the United States that no statute authorizes, that no lawful act of the government could end, and that no officer of an excluded agency has authority to make. *See Merrill*, 332 U.S. at 384.

**a. Defendants have not forfeited the inoperability argument.**

Plaintiffs contend that VA has forfeited its argument that the CBA is inoperable because most of VA has been excluded from the FSLMRS by not making it at the time the Court considered their request for a preliminary injunction. Mem. in Supp. of Pls.' Mot. to Enforce (Pls.' Mem.) at 9-10, ECF No. 58. Plaintiffs' argument fails for at least two reasons.

**i. First, Plaintiffs gave Defendants the opportunity to reassert the argument, even if Defendants had forfeited it the first time around.[10]**

Because Plaintiffs sought—and this Court granted—significant modifications of the original preliminary injunction, Defendants had an

[10] Defendants do not concede that they forfeited the inoperability argument in the first place. Contrary to the First Circuit's conclusion, Defendants asserted that argument as a jurisdictional argument in their opposition to the preliminary injunction. *Contra AFGE II*, 177 F.4th at 11. Specifically, Defendants argued in their opposition to the preliminary injunction that this Court could not reinstate the Master CBA because the exclusive means through which unions may attack federal agencies' alleged violation of such agreements are those Congress established in the FSLMRS, *i.e.*, through the FLRA (and then, in certain circumstances, in a court of appeals). *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 21–24, ECF No. 17.

opportunity to re-assert the inoperability argument. The PI Modification Order modifies the original preliminary injunction in two ways.

*First*, the PI Modification Order continues the preliminary injunction's *duration*. The PI Modification Order continues the preliminary injunction beyond the Master CBA's agreed-upon term, which was a three-year term ending August 8, 2026. Before filing their second motion to enforce, Plaintiffs had never sought, and the Court had never previously granted, the remedy Plaintiffs sought in their second motion to enforce—*i.e.*, an order requiring "reinstatement of the Master CBA until a new agreement is negotiated." Proposed Order at 2, ECF No. 54-3; *see* Text Order dated March 23, 2026 (prohibiting Defendants from terminating the Master CBA "prior to the end of the three-year term governing the contract"); *see also Am. Fed'n of Gov't Emps. Loc. 2305 v. U.S. Dep't of Veterans Affs.* (*AFGE II*), 177 F.4th 1, 7 (1st Cir. 2026) ("The CBA was signed in August 2023, went into effect on August 8, 2023, and provided that it would 'remain in full force and effect for a period of three years after its effective date.'"). Where there was previously a clear end point to the Master CBA's duration and the preliminary injunction, now there is none.

Instead, under the PI Modification Order, the end is some indefinite future day when AFGE may agree to a new collective bargaining agreement or judgment is issued in defendants' favor. "Negotiating a new master collective bargaining agreement (CBA) between VA and AFGE is a complicated, multi-phase process that takes years; the last such negotiation between the parties lasted approximately five-and-a-half years, while negotiations over the parties' 2011 agreement lasted approximately nine years." Defs.' App'x in Supp. of Defs.' Resp. to Pls.' Mot. to Enforce (Defs.' App'x) at 2 ¶ 6. Here, negotiations are likely to drag on even longer—after the Court's PI Modification Order, AFGE has proposed a bargaining schedule that would last eleven years. *See* Ex. A,

Engelbaum Decl. ¶¶ 16, 21(b)(v). That is because AFGE has no incentive to agree to a new collective bargaining agreement that includes only those employees exempt from Executive Order 14251, *i.e.*, the only VA employees who can still lawfully engage in collective bargaining. *Id.* ¶ 16. In sum, because Plaintiffs sought a significant modification of the preliminary injunction (*i.e.*, the Master CBA's indefinite extension), Defendants were not and are not barred from explaining why that indefinite extension would result in an inoperable collective bargaining agreement.

*Second,* the PI Modification Order purports to extend the original preliminary injunction's *coverage*. Specifically, the PI Modification Order purports to expand the preliminary injunction to cover *all* VA employees, without regard to whether the employees are covered by Executive Order 14251. Certain employees (namely, police officers, security guards, and firefighters) were excluded from the Executive Order, so they remained covered by the FSLMRS and may still collectively bargain. *See* Executive Order 14251 §§ 2, 4. Yet, in their most recent motion to enforce, Plaintiffs sought "a remedial order requiring Defendants to comply with the Master Agreement, with respect to *all of Plaintiffs' represented employees*," regardless of whether those employees were excluded from the Executive Order. *See* Pls.' Mem. 12 (emphasis added); Proposed Order at 2 (seeking reinstatement of the Master CBA, without limitation as to covered employees). The PI Modification Order echoed the Plaintiffs' language; it accurately states that Plaintiffs were seeking to prohibit VA from considering "the Master CBA re-terminated *for all VA employees*." PI Modification Order at 1 (emphasis added). The PI Modification Order then expressly granted Plaintiffs' Motion to Enforce and ordered VA to keep the Master CBA in full force and effect. *Id.* at 2. Consistent with the Plaintiffs' requested relief, the PI Modification Order did not carve out those employees

excluded from the Executive Order. *See* PI Modification Order at 1-3 (emphasis added).

By contrast, the Court's original preliminary injunction covered only those employees subject to Executive Order 14251, which made sense because those employees covered by the Executive Order were the only VA employees for whom VA had terminated the Master CBA and the only employees on whose behalf Plaintiffs sought a preliminary injunction. *See* Preliminary Injunction at 4, 29 (acknowledging that the Plaintiffs were seeking a preliminary injunction to enjoin VA from effectuating its 2025 termination of the Master CBA for employees covered by the Executive Order); Pls.' Mot. for Prelim. Inj. & Relief Under 5 U.S.C. § 705 at 1, ECF No. 14 (seeking an order enjoining VA from effectuating its 2025 termination of the Master CBA for employees covered by the Executive Order); Mem. of Points & Authorities in Supp. of Mot. for Prelim. Inj. at 1, 30, ECF No. 14-1 (acknowledging that the 2025 termination did not terminate the Master CBA for all employees, but only those employees covered by the Executive Order).

In sum, by seeking to modify the preliminary injunction, Plaintiffs gave Defendants a fresh opportunity to challenge the preliminary injunction, including by raising the inoperability argument.

#### ii. Second, the inoperability argument is properly before the Court because it is a reason why the Master CBA expired.

The inoperability argument is properly before the Court for another reason: it served as one of the reasons why the Master CBA expired on its terminal date (August 8, 2026). *See* Defs.' App'x at 48-49, ECF No. 58-2. The preliminary injunction provided that VA must reinstate the Master CBA "until it is terminated or amended in a lawful manner." *See* Text Order dated March 23, 2026. One of VA's explicitly stated reasons why the Master CBA expired was

that the Master CBA "cannot operate with respect to employees excluded from FSLMRS coverage":

> [T]he MCBA and any other collective bargaining agreements and related past practices by and between AFGE and VA cannot legally be extended or applied beyond August 8, 2026, to employees whose positions have been excluded from the FSLMRS' coverage by operation of EO 14251 (i.e., Non-Exempted Employees). . . .
>
> The Duration of Agreement article in the MCBA also cannot operate with respect to employees excluded from FSLMRS coverage. . . .
>
> Accordingly, as of August 8, 2026, the Department will no longer apply any collective bargaining agreement or past practice by and between AFGE and VA to any employee not covered by the FSLMRS.

Defs.' App'x at 48-49, ECF No. 58-2 (internal footnote omitted). This Court would necessarily have to consider VA's stated rationale to determine whether the Master CBA was "terminated in a lawful manner." Text Order at 2 (Mar. 23, 2026). If the Court were to disregard VA's stated rationale, the Court would be unable to "state the reasons why" the PI Modification Order issued, as required by Federal Rule of Civil Procedure 65(d)(1). *See also AFGE II*, 177 F.4th at 20 (recognizing that a failure to explain why VA's re-termination was unlawful could constitute a violation of Rule 65(d)(1)).[11]

[11] Similarly, VA explicitly cited the Master CBA's inoperability as a reason for re-terminating the Master CBA in March 2026, after the Court issued the preliminary injunction. *See Defs.' Ex. A* at 2-3, ECF No. 36-1. Although the First Circuit did not entertain the inoperability argument on appeal, *AFGE II*, 177 F.4th at 10-11, the fact that inoperability served as VA's explanation for the March 2026 re-termination is another reason the argument is preserved and Defendants seek further review on the issue.

**2. Alternatively, the PI Modification Order is based on the flawed finding that renegotiation of a new collective bargaining agreement was in progress upon the Master CBA's terminal date.**

The PI Modification Order is based on flawed findings about the status of the parties' negotiations as of August 8, 2026—the day the Master CBA's three-year term expired. When the parties began negotiations and whether the parties were in active negotiations as of August 8, 2026 matters for AFGE's argument that the CBA remains in force under the evergreen clause in the Duration of Agreement provision:

> Negotiations shall begin no later than 30 days after these conditions [*i.e.*, of one party giving the other timely notice of its intention to renegotiate this Agreement] have been met. If renegotiation of an Agreement is in progress but not completed upon the terminal date of this Agreement, this Agreement will be automatically extended until a new agreement is negotiated.

Master CBA, Duration of Agreement, § 2, ECF No. 14-3 at 290. The PI Modification Order found that renegotiation of the Agreement was in progress but not completed as of August 8, 2026. *See* PI Modification Order at 2-3. That finding is flawed in three respects.

*First*, if this evergreen provision operated as this Court concluded, it would be unenforceable as contrary to public policy because it would allow unions to indefinitely override the President's unchallenged determination in the Executive Order that most VA employees should be excluded from FSLMRS coverage. As a general matter, "a contract term will not be enforced if it violates public policy." *Rosciti v. Ins. Co. of Pennsylvania*, 659 F.3d 92, 97 (1st Cir. 2011). "If a contract provision frustrates a right created by statute, a court will void that provision as against public policy." *Id.* In *Boston Housing Authority v. National Conference of Fireman and Oilers*, for example, the union-plaintiff similarly argued that an "evergreen clause" nearly identical to the one here

allowed the CBA to continue beyond its term because the parties were still negotiating a new agreement. 935 N.E.2d 1260 (Mass. 2010), *superseded by statute on other grounds*, Mass Gen. Laws ch.150E, §7(a). The Massachusetts Supreme Judicial Court nevertheless held that because the clause conflicted with a statute limiting the term of CBAs to three years, the clause could not be enforced. *Id.* at 1266–67. "Contract provisions which go beyond the scope of [a] statute are void," the court held; "[t]he purported policy benefits of an evergreen clause cannot trump the intent of the Legislature, as unambiguously expressed in § 7(*a*), to limit the term of a CBA to no more than three years." *Id.*; *see also Rhode Island Bhd. of Corr. Officers v. Rhode Island*, 264 F. Supp. 2d 87, 100 (D.R.I. 2003), *aff'd*, 357 F.3d 42 (1st Cir. 2004) (holding that "neither a department of state government, nor a union of its employees . . . can agree to relieve the parties to a CBA of their obligation to comply with applicable state law because of an inconsistent CBA provision").

The evergreen clause of this Master CBA cannot be enforced in the way this Court contemplated because it would violate the President's uncontested national-security determination, pursuant to § 7103(b)(1), that most of VA is excluded from FSLMRS coverage. The consequences of the President's determination are that AFGE is no longer the exclusive representative of VA employees; VA employees no longer have collective-bargaining rights; and the grievance and arbitration procedures of the Master CBA—the only enforcement mechanism—are unavailable. The Master CBA cannot legally be extended to an unrecognized union (Article 1) on behalf of employees without collective-bargaining rights with core provisions that are inconsistent with federal law (Articles 43 and 44). Master CBA, Articles 1, 43, and 44, ECF No. 14-3 at 2, 219-226. The evergreen clause is therefore unenforceable as a matter of law. *See Rosciti*, 659 F.3d at 97.

*Second,* even if this provision were enforceable, there were no negotiations in progress because, despite VA's repeated offers to begin negotiations within 30 days of the date it gave AFGE timely notice of its intention to renegotiate the Master CBA (*i.e.*, before the 30-day deadline of June 18, 2026), AFGE continually refused to meet with VA and offered no days or times to meet during the 30-day period required by the Master CBA's duration-of-agreement provision. The timing of events, captured in the parties' correspondence, demonstrates as much:

- On May 27, 2026, AFGE acknowledged receipt of VA's notice to renegotiate but did not offer any dates for the parties to meet and begin negotiations. Defs.' App'x 12.

- Following AFGE's acknowledgement, on May 29, 2026, VA offered to meet to begin ground rules negotiations before June 18, 2026. Specifically, VA offered to start virtual negotiations on June 1, 2026, and communicated its continuing availability and willingness to meet Monday through Friday thereafter until negotiations were complete. Defs.' App'x 14.

- In response to VA's offer, and despite the Master CBA's requirement that the parties meet within 30 days of the renegotiation notice, AFGE rejected VA's proposed dates and, instead, proposed "dates beginning in July or August 2026." Defs.' App'x 16. Further, despite acknowledging the convenience of virtual negotiations, AFGE insisted all negotiations be conducted in person. Defs.' App'x 16.

- On June 10, 2026, in response to AFGE's insistence that the parties meet in-person, VA offered to meet with AFGE in-person on June 15-17, 2026. Defs.' App'x 20.

- On June 12, 2026, AFGE advised VA it would not meet the week of June 15, claiming VA's offered dates, which would have enabled AFGE to comply with the Master CBA's requirements, were "not reasonable." Defs.' App'x 23. Instead, AFGE agreed to meet with VA the week of July 13, 2026 (*i.e.*, more than three weeks after the parties were contractually required to begin negotiations). Defs.' App'x 23.

The parties' correspondence proves that AFGE declined to begin negotiations before the 30-day window closed, despite VA's repeated entreaties and

invitations. Because AFGE failed and refused to negotiate within the 30-day window mandated by the Master CBA, the evergreen clause was never triggered. As a result, all collective bargaining agreements between the parties expired—and did not automatically extend for any employee (*i.e.*, "exempted" or "non-exempted" employees)—beyond the Master CBA's terminal date of August 8, 2026.

The PI Modification Order errs in finding that the parties' written correspondence constituted "negotiations" for purposes of the Duration of Agreement provision. PI Modification Order at 2. The FSLMRS defines the act of negotiating a collective bargaining agreement—"collective bargaining"—as representatives of labor and management performing their mutual obligation to "*meet* at reasonable times and to consult and bargain in a good-faith effort to reach agreement." 5 U.S.C. § 7103(a)(12)(emphasis added); *see also* Defs.' App'x 19 (reminding AFGE of the statutory definition and explaining why the parties' letter writing did not satisfy the 30-day deadline to negotiate).[12] Tellingly, AFGE itself described the back-and-forth correspondence that the parties engaged in before their meeting, not as substantive or even ground-rules collective-bargaining negotiations, but as "discussion of the arrangements for ground rules negotiations" or "ground rules for ground rules." Defs.' App'x 22. In addition, AFGE has publicly and repeatedly taken the position that collective bargaining negotiations did not begin until July 14, 2026 (*i.e.*, the first date VA and AFGE met in person for negotiations):

[12] This statutory definition of collective bargaining remains controlling for negotiations concerning the employees excepted from EO 14251, namely, police officers, security guards, and firefighters.




The PI Modification Order therefore erred in finding that the parties' written correspondence constituted "negotiations" for purposes of the Duration of Agreement provision. PI Modification Order at 2.

*Third,* even if the parties' letter writing could be considered "negotiations" for purposes of the Master CBA's Duration of Agreement provision, there were no such negotiations in progress for VA employees covered by the EO as of the terminal date of the Master CBA (August 8, 2026). When VA notified AFGE of its intention to renegotiate the Master CBA, VA explicitly stated that, pursuant to Executive Order 14251, "as of the terminal date [*i.e.*, August 8, 2026], the 2023 MCBA [Master CBA] or any successor agreement will only extend to employees in positions that remain covered by [the FSLMRS] . . . and will not extend to employees whose positions are excluded from the [FSLMRS's] coverage." Defs.' App'x at 5. Further, VA explicitly ended any back-and-forth that might possibly be construed as a negotiation days before the Master CBA's terminal date. *See* Defs.' App'x at 95. Specifically, in a communication to AFGE dated August 4, 2026, VA wrote:

> [I]f AFGE believes, or a court or the FLRA determines, that negotiations have begun as to Non-Exempted Employees, VA hereby

> ceases negotiations as to Non-Exempted Employees because the Executive Order suspends collective bargaining as to them and the VA is not obligated to enter into a collective-bargaining agreement with AFGE as to Non-Exempted Employees.

*Id.* Therefore, even if the PI Modification Order were correct that the parties' written correspondence constituted "negotiations" for purposes of the duration-of-agreement clause (PI Modification Order at 2-3), VA explicitly ended any such "negotiations" before the Master CBA's terminal date. There was no renegotiation of an Agreement for employees covered by the Executive Order in progress as of the Master CBA's terminal date. Therefore, the evergreen clause was never triggered.[13]

Because the PI Modification Order is based on erroneous findings about the status of the parties' negotiations, there is a likelihood that Defendants will succeed in challenging the order on appeal.

**3. Alternatively, the Court lacked jurisdiction to issue the preliminary injunction and PI Modification Order for three reasons.**

**a. The Court lacked jurisdiction to order VA to reinstate and extend the Master CBA.**

The Court lacked jurisdiction to issue the preliminary injunction in the first place because the preliminary injunction exceeded any regime of government-contract enforcement authorized by Congress. The Court then repeated that error in the PI Modification Order by interpreting the Master CBA's Duration of Agreement provision and then ordering VA to keep the Master CBA in effect.

---

[13] To the extent the PI Modification Order found that the parties reached "agreement as to the ground rules for the contract term-specific negotiations" (PI Modification Order at 3), that would also be a factual error. In fact, ground rules negotiations between the parties remain ongoing; the parties have not reached agreement. Ex. A, Engelbaum Decl. ¶¶ 13, 22(b)(iv). In all likelihood, the parties will soon be at impasse on the ground rules. *Id.*

Courts have long recognized that the Tucker Act and Little Tucker Act create implied exceptions to the Administrative Procedure Act's waiver of sovereign immunity for actions seeking non-monetary relief. *See* 5 U.S.C. § 702. Those two statutes represent "[t]he only remedy to which the United States has consented in cases of breach of contract": "*the payment of money* damages in either the Court of Claims, if the amount claimed is in excess of $10,000, or the district courts, where the amount in controversy is $10,000 or less." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (citing 28 U.S.C. §§ 1491(a)(1), 1346(a)(2)); *accord Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986); *see* 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). Accordingly, district courts lack jurisdiction to issue equitable relief in breach-of-contract cases. *See Coggeshall*, 884 F.2d at 3 ("Federal courts" thus "do not have the power to order specific performance by the United States of its alleged contractual obligations."); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) (holding that "the APA does not waive sovereign immunity" where the plaintiff "is asking the district court to decide what its contract rights are"); *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985) (holding that "the Tucker Act 'impliedly forbids' declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity in suits on government contracts"); *Sharp*, 798 F.2d at 1524 ("We know of no case in which a court has asserted jurisdiction either to grant a declaration that the United States was in breach of its contractual obligations or to issue an injunction compelling the United States to fulfill its contractual obligations."). Accordingly, even if the here-inapplicable FSLMRS did not provide the exclusive means for enforcing a collective-bargaining agreement, the Court exceeded its jurisdiction both when issuing the preliminary injunction and when issuing the PI Modification Order.

**b. Alternatively, this Court lacked jurisdiction to order specific performance of the Master CBA's duration-of-agreement provision.**

On appeal, the First Circuit stayed the portion of the Enforcement Order that required VA to comply with the Master CBA's terms in both form and substance. *See* Order of the Court, ECF No. 51 at 37. The First Circuit concluded that VA was likely to prevail on its challenge to the "kind of district court-ordered specific performance that is contemplated by the 'compliance' portion of the enforcement order." *AFGE II*, 177 F.4th at 19. "The District Court's 'mandat[e], under threat of contempt' 'is utterly foreign to any type of labor-relations or contract suit that Congress has authorized and represents a significant intrusion on the Executive Branch,'" the opinion states. *Id*. "Federal courts," it explained, "do not have the power to order specific performance by the United States of its alleged contractual obligations." *Id.* at 17 (quoting *Coggeshall*, 884 F.2d at 3).

Despite the First Circuit's stay, the Court's PI Modification Order interprets the CBA's Duration of Agreement Provision and orders specific performance according to the Court (and Plaintiffs') interpretation of that CBA provision:

> With the conditions of the Duration of Agreement satisfied, the Defendants' announcement of their intent to consider the Master CBA completely defunct as of August 8, 2026 is in direct contravention of this Court's order that the Master CBA would remain in effect for the duration of the agreed-upon term of the contract. The parties are reminded that this Court's preliminary injunction order, as clarified by this Court and stayed in part by the Circuit, is in full force and effect pending the Circuit Court's resolution of the merits of Defendants' appeal.

Order at 2, ECF No. 64.

Because the First Circuit's stay order prohibits such district court-ordered specific performance of the Master CBA, the PI Modification Order goes too far by interpreting the duration-of-agreement provision and then requiring specific

performance of that interpretation. Where a stay is granted by an appellate court, that stay "divests" the district court's "order of enforceability." *Nken v. Holder*, 556 U.S. 418, 428 (2009); *accord Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2629 (2025). Because the First Circuit's stay order prohibits such district court-ordered specific performance of the Master CBA, Defendants are entitled to a stay of the Court's PI Modification Order.

**4. The Court lacked jurisdiction to decide Plaintiffs' motion, absent a remand from the First Circuit.**

The PI Modification Order erroneously states that the parties "are in agreement that, in this case and under these circumstances, the Defendants' appeal has not divested this Court of jurisdiction to decide the question presented by this pending motion [the Plaintiffs' Motion to Enforce] and a limited remand from the district court is not required." PI Modification Order at 2. Defendants did not so agree. To the contrary, the first argument in their opposition brief bore this heading: "**This Court lacks jurisdiction to decide Plaintiffs' motion to enforce the preliminary injunction, absent a remand from the First Circuit.**" *See* Defs' Resp. to Pls.' Mot. to Enforce at 11, ECF No. 58. As Defendants explained in their brief, "[t]he filing of a notice of appeal is an event of jurisdictional significance" that "divests the district court of its control over those aspects of the case involved in the appeal." *Colon-Torres v. Negron-Fernandez*, 997 F.3d 63, 74 (1st Cir. 2021) (quoting *Griggs v. Provident Consumer Disc.*, 459 U.S. 56, 58 (1982) (per curiam)). "The qualification 'involved in the appeal' is essential." *Bradford-Scott Data Corp. v. Physician Computer Net., Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) (Easterbrook, J.). The First Circuit has thus established that district courts may "enter orders that concern matters unrelated to the substance of the decision being appealed," but otherwise may not interfere in the aspect of the case involved in the appeal

absent "narrow exceptions" such as when the appeal is "frivolous" or where an appellant "seeks interlocutory review of a non-appealable order." *Colon-Torres*, 997 F.3d at 75. District courts may not, of course, "exercise concurrent jurisdiction over a matter after the notice of appeal has been filed." *Id.*

In their brief, Defendants acknowledged the general rule that a district court "retains jurisdiction to enforce its prior order[s]" while the appeal of an "interlocutory order"—like a preliminary injunction—is pending, absent a stay. 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2962 (3d ed., Aug. 2026 update). Defendants then distinguished that general rule by pointing out that Plaintiffs' motion to enforce did *not* merely seek to enforce the preliminary injunction this Court granted; rather, it sought to decide issues "involved in the appeal"—that is, disputes about the preliminary injunction's terms and scope. *See Colon-Torres*, 997 F.3d at 75 (quoting *Griggs*, 459 U.S. at 58). The terms and scope of that preliminary injunction—and what authority this Court has to enforce compliance with the CBA in general—are directly at issue in the First Circuit appeal. The First Circuit has already stayed this Court's enforcement order in part, specifically, the portion of this Court's order requiring Defendants to "compl[y] with the . . . CBA, along with any 'amendments, local supplemental agreements, and memoranda of understanding related thereto' . . . in both form *and* substance." *AFGE II*, 177 F.4th at 21. The First Circuit did so because "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Id.* at 17 (quoting *Coggeshall*, 884 F.2d at 3). Yet here, Plaintiffs explicitly requested that the Court incorporate a particular CBA provision into an enforcement order and order Defendants to comply with Plaintiffs' interpretation of it. *See* Proposed Order, ECF 54-3, at 1. Plainly, Plaintiffs' motion to enforce "is not so unrelated to the substance of the decision

being appealed that it is permissible under *Griggs*." *Colon-Torres*, 997 F.3d at 75 (citing *Griggs*, 459 U.S. at 58). This Court erred by considering Plaintiffs' Motion to Enforce without a remand from the First Circuit.

**5. The PI Modification Order fails to consider—let alone find—that Plaintiffs are likely to prevail on their APA and First Amendment claims now that the Master CBA has expired by its own terms.**

A district court must cite "authority for its decision to modify the injunction in the manner it did." *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 36 (1st Cir. 2006). But this Court has cited no authority for its order enjoining VA from re-terminating the Master CBA or its order reinstating the Master CBA after August 8, 2026. This alone is a basis to issue a stay.

In addition, Plaintiffs are unlikely to succeed on their APA and First Amendment claims for this continued injunction. There are now two degrees of separation from the Court's reasoning that Plaintiffs were likely to succeed on their claims that VA's initial termination was arbitrary and capricious and retaliated in violation of the First Amendment: (1) VA's re-termination of the Master CBA, which included a new explanation that the CBA was incompatible with the President's Executive Order and (2) the self-executing expiration of the CBA's three-year term. This separation means that the Court's original reasoning that VA acted unreasonably or in retaliation against AFGE in the agency's initial termination over a year ago cannot support the Court's decisions continuing to bar VA from effectuating the Executive Order.

When a court invalidates an agency action, "the agency can 'deal with the problem afresh' by taking *new* agency action" supported by "new reasons." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 21 (2020) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)); *Biden v. Texas*, 597 U.S. 785, 788 (2022) (explaining that the agency has the option to "'deal with the problem

afresh' by taking *new* agency action"). And that is true here: the Court deemed the first termination (*i.e.*, in August 2025) unlawful because the Court concluded it "was motivated by retaliation for the Plaintiffs' advocacy on behalf of their membership" based on various statements surrounding the termination, the fact that the Office of Personnel Management (OPM) Guidance at the time directed agencies not to terminate CBAs, and VA allegedly "favored some unions over others" in the April 11 Exemption Order. Preliminary Injunction at 14–18.

Following the Court's determination, however, VA dealt with the problem afresh by taking new agency action.

*First*, faced with the Court's conclusion that its August 2025 termination was invalid, VA decided to "'deal with the problem afresh' by taking *new* agency action" supported by "new reasons." *Regents*, 591 U.S. at 21. It secured the Court's assurance that the preliminary injunction could not "possibly be read" to "wholesale prohibit[]" VA from re-terminating the agreement (Text Order dated March 23, 2026), and then issued a new termination notice, explaining its reasons for doing so. ECF No. 36-1. Notwithstanding the Secretary's thorough explanation of the incompatibility between the Executive Order and the Master CBA, *see id.*, the Court enjoined the new termination without explanation, stating only that it was not conducted "in a lawful manner," Order, ECF No. 39 (emphasis and quotation omitted). The Court's omission of an explanation of the March 2026 re-termination's perceived defect alone warrants a stay.[14] "Every order granting an injunction . . . must . . . state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). This requirement is necessary for the defendant, who could

[14] To the extent that the first enforcement order, ECF No. 39, could somehow be read to prohibit the Master CBA from expiring, Defendants seek a stay of that Order as well.

otherwise receive a "contempt citation on a decree too vague to be understood." *NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.) (quotation omitted).

*Second*, the Master CBA expired on its own, under the Duration of Agreement provision, on August 8, 2026. VA did not terminate the Master CBA after August 8, let alone take any action related to AFGE's protected speech. When VA provided timely notice of its intent to renegotiate the Master CBA (so that the Master CBA would not automatically extend another year pursuant to the Master CBA's terms), VA was explicit that any new or successor agreement would only cover employees who remained subject to the FSLMRS, so negotiations for all other employees (*i.e.*, employees covered by Executive Order 14251 who are excluded from the FSLMRS's coverage) never began. Defs.' App'x 5, 95. Lest there be any confusion whatsoever, VA later notified AFGE that "if AFGE believes, or a court or the FLRA determines, that negotiations have begun as to Non-Exempted Employees, VA hereby ceases negotiations as to Non-Exempted Employees because the Executive Order suspends collective bargaining as to them." Defs.' App'x 95. Then, the Master CBA expired because: (1) AFGE's failure to timely negotiate voided the Master CBA's evergreen clause for all employees (*i.e.*, both employees covered by and excluded from Executive Order 14251); (2) to the extent negotiations began, VA terminated those negotiations as to employees covered by Executive Order 14251 and therefore the Master CBA did not automatically extend as to those employees; and (3) independently, the Master CBA's evergreen clause could not be applied to employees covered by Executive Order 14251. Defs.' App'x at 46-49, 95.

Without a finding that VA took any unlawful action to terminate the Master CBA after August 8 or that the Plaintiffs would prevail on an APA or

First Amendment claim challenging any new agency action, the PI Modification Order is fundamentally flawed.

## B. The Equities Favor a Stay.

The PI Modification Order threatens irreparable injuries to the government and the public, whose interests merge here. *Nken*, 556 U.S. at 435.

### 1. The PI Modification Order irreparably harms VA.

Extending the Master CBA until a new agreement is reached would irreparably harm VA. As a threshold matter, the PI Modification Order inflicts a continuing institutional injury on the Executive Branch: it overrides the President's express statutory authority under 5 U.S.C. § 7103(b)(1) and compels an excluded agency to maintain a statutory bargaining relationship the President has lawfully ended. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). That injury is at its apex where, as here, the challenged orders override a national-security determination that Congress expressly committed to the President.

That harm and others are catalogued in detail in the supporting declaration of VA's Assistant Secretary for Human Resources and Administration, Mark Engelbaum, Ex. A at ¶¶ 17-22, as well as the prior declarations of Mr. Engelbaum, ECF No. 45-2, ¶ 11 and ECF No. 58-2 ¶ 8, and the declaration of VA's Chief Human Capital Officer for HR, Tracey Therit at ¶¶ 18-19, ECF No. 17-1. Two of those harms bear particular mention.

*First*, and most important, binding VA to the Master CBA indefinitely threatens national security. The D.C. and Ninth Circuits have already stayed

and vacated preliminary injunctions against the executive order excluding VA from FSLMRS coverage because those injunctions irreparably harmed the government's national-security interests. *See AFGE I*, 167 F.4th 1247, 1258–59 (9th Cir. 2026); *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) ("The district court's preliminary injunction inflicts irreparable harm on the President by impeding his national-security prerogatives, which were explicitly recognized by Congress."); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853, at *3 (D.C. Cir. June 20, 2025) (same). The First Circuit similarly determined that "because 'the President[] determine[ed] that collective bargaining by most VA employees is inconsistent with national security—an undisputed determination meriting the utmost judicial respect,' the preliminary injunction causes them some irreparable harm by impeding national security." *AFGE II*, 177 F.4th at 12-13. Enjoining an agency from terminating a collective-bargaining agreement based on that same national-security determination—the primary way that agencies comply with the President's order—is the same irreparable harm articulated by the First, D.C., and Ninth Circuits. Indeed, that irreparable harm is compounded by requiring VA to comply with the Master CBA indefinitely beyond its terminal date, as explained by Mr. Engelbaum:

> [I]f VA was required to provide services in response to a war or pandemic and VA's health care system was required as a backup medical system, VA would generally still be required to abide by its contractual obligations, as was the case during the COVID-19 pandemic. This is a more serious irreparable harm to VA than that which was articulated in prior declarations filed in connection with this case because, prior to the Court's August 7, 2026, Order, VA understood the Court's preliminary injunction would only last until August 8, 2026 (i.e., the CBA's terminal date) but now understands the preliminary injunction could last indefinitely (or, consistent with AFGE's proposed bargaining schedule (discussed in more detail below), for more than a decade). When VA believed the preliminary injunction

> order would only last a few months, it was more confident it could absorb or mitigate the harms caused by the preliminary injunction order (*e.g.*, compliance costs associated with abiding by the CBA). However, as the preliminary injunction order extends, potentially indefinitely, VA will have a continuously harder time mitigating the harms of the Order, greatly increasing the risk that a national security incident could arise that VA is unable to adequately respond to, thereby causing serious irreparable harm to VA and those it serves.

*Id.* at ¶ 19. In short, the PI Modification Order threatens national security by restricting VA's ability to respond to acts of war, terrorism, national emergencies, and national disasters.

*Second*, extending the Master CBA until a new agreement is negotiated binds VA to the Master CBA indefinitely. Defs.' App'x at 2, ¶ 6. That is because negotiating a new master collective bargaining agreement between VA and AFGE is a complicated, multi-phase process that takes years. The last such negotiation between the parties lasted approximately five-and-a-half years, while negotiations over the parties' 2011 agreement lasted approximately nine years. Defs.' App'x at 2, ¶ 6. The likelihood of years of negotiations is even greater here because, with the PI Modification Order in place, AFGE now has every incentive to drag out negotiations as long as possible rather than agree to a new agreement of lawful scope, covering only those employees exempted from Executive Order 14251. Ex. A, Engelbaum Decl. ¶¶ 16, 21(b)(v).

AFGE has not been subtle about its intention to drag out negotiations for years to come. *Id.* at ¶ 21(b)(iv)-(v). Among other stall tactics, AFGE has refused to meet virtually, refused to make any substantive concessions, and has refused to use a mediator to help resolve disputes over ground-rules negotiations. *Id.* ¶22(b)(iv). AFGE's most transparent stall tactic occurred days after this Court issued its PI Modification Order. *Id.* ¶ 21(b)(v). On August 12, 2026, AFGE put forth a negotiation schedule that would require *eleven* years of negotiations. *Id.*

Under the schedule, the parties would devote a minimum of four weeks to negotiate each article of the Master CBA, but the parties would only meet every other week, thereby requiring two months for each article, effectively providing a minimum eleven years of negotiations. *Id.*

During those years of negotiations, the deleterious effects of the Master CBA would continue to compound. For example, VA would be put in the impossible position of somehow giving "full force and effect" to an inoperable Master CBA upon threat of contempt. *See supra* Argument, Part A(1); PI Modification Order at 2. The First Circuit previously held that mandating compliance with the Master CBA, under threat of contempt, constituted irreparable harm. *See AFGE II*, 177 F. 4th at 19.

The quantifiable costs for VA to comply with the PI Modification Order, as opposed to the preliminary injunction, are also more significant and irreparable. *See* Engelbaum Decl. ¶¶ 17-22. VA will continue to be harmed by the diversion of VA resources away from its mission. *Id.* at ¶¶ 17(a)-(f), 18. For example:

- VA will be required to continue to allow AFGE representatives to use VA office space and resources. *Id.* at ¶ 18.
- VA will be required to continue to pay employees to perform union duties during their VA work hours, including health professionals such as physicians, physician assistants, and nurse practitioners, whose annual salaries can range from $187,000 to $273,000, notwithstanding the fact these employee representatives are not performing patient care duties or duties on behalf of VA. *Id.* at ¶¶ 17(a), 17(c), 18; Declaration of Mark Engelbaum¶ 8(b), ECF No. 58-2.

On top of those ongoing costs, VA will now face additional costs associated with years of pointless negotiations with AFGE over employees who have no FSLMRS rights. *See* Engelbaum Decl. ¶ 21(b)(v). Most recently, AFGE has insisted that VA pay for the travel expenses of the AFGE bargaining team, a team they are proposing consist of up to twelve members and that VA pay, for each bargaining member, a flat payment of $2,500 per bargaining session (payable directly to AFGE), meaning VA would spend a minimum of $8,200,000 on AFGE's bargaining expenses alone—to enable AFGE to drag out negotiations and to attempt to bargain over employees who no longer have FSLMRS rights. *Id.* These unnecessary expenditures of government funds are an irreparable harm "if the funds 'cannot be recouped' and are thus 'irrevocably expended.'" *Natl'l Insts. of Health v. Am. Pub. Health Ass'n,* 606 U.S. ____, 145 S. Ct. 2658, 2660 (2025); *see also AFGE II*, 177 F.4th at 12-13 (acknowledging that the Master CBA's reinstatement would harm VA by causing it to incur additional financial expenses).

In sum, the PI Modification Order does not just continue the harms from the preliminary injunction — it worsens them in both duration and intensity.

**2. The potential harm to the opposing party and the public interest favor a stay.**

As defendants explained in their earlier filings with respect to the initial and re-termination, AFGE's alleged harms are either speculative, as with their alleged loss of membership, *see AFGE I*, 167 F.4th at 1259 (rejecting the same argument because "union membership is voluntary and the status of the unions could be restored if [the plaintiffs] succeed"), or reparable, as with their alleged loss of union dues, *see NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*, 927 F.3d 1, 5 (1st Cir. 2019) (observing "[t]he general rule" that "traditional economic damages can be remedied by compensatory awards, and

thus do not rise to the level of being irreparable" (quotation omitted)), and loss of collective-bargaining benefits, *see AFGE I*, 167 F.4th at 1259 (concluding such harms "would likely be mitigated to a fair extent by reinstating the terminated agreements if the union plaintiffs were to prevail"); *contra AFGE II*, 177 F.4th at 13 (finding that Defendants did not make the requisite strong showing, as to the preliminary injunction, that they were likely to succeed or that staying the injunction would not harm the plaintiffs or the public). VA's significantly increased harms now clearly outweigh AFGE's alleged harms. Now that the CBA's term has ended, those harms are null. By the terms of the CBA, plaintiffs had no legitimate expectation that the CBA would continue beyond the terminal date of August 8, and yet the Court has given them bonus CBA coverage. They therefore cannot be harmed by, for example, loss of union dues or membership because they are no longer entitled to those things with respect to VA employees no longer entitled to have an exclusive bargaining representative. Furthermore, when parties reach collective-bargaining agreements under the FSLMRS, they understand that the President may determine in the future to exclude the relevant agency from FSLMRS coverage if national security so requires. *See* § 7103(b)(1). Whatever harms plaintiffs might allege, they knew when entering this agreement that it may end because the President determined that national security requirements were inconsistent with FSLMRS coverage of VA.

As for the public interest, the Ninth Circuit has observed that "the government's asserted interest in national security outweighs the interests of the plaintiff unions, considering the balance Congress struck in § 7103(b)(1)." *AFGE I*, 167 F.4th at 1259.

Overall, the balance of harms caused by the PI Modification Order and the public interest in national security favor a stay.

## CONCLUSION

For the reasons identified above, Defendants respectfully request that this Court stay the preliminary injunction and the PI Modification Order pending resolution of Defendants' appeal to the U.S. Court of Appeals for the First Circuit. At a minimum, Defendants request that the Court stay those orders insofar as they (1) prohibit the VA from treating the Master CBA as expired upon the conclusion of its three-year term on August 8, 2026; or (2) require the VA to engage in negotiations toward a successor agreement covering employees excluded from the FSLMRS by Executive Order 14251.

Dated: August 17, 2026

Respectfully submitted,

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs,

By their attorneys,

TODD BLANCHE
*Attorney General*

CHARLES C. CALENDA
*First Assistant U.S. Attorney*
*District of Rhode Island*

*/s/ Andrea Hyatt*
Andrea Hyatt
(TX Bar No. 24007419)
Assistant U.S. Attorney
One Financial Plaza, 17th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5001 (Fax)
Andrea.Hyatt@usdoj.gov

Tyler J. Becker
(VA Bar No. 97636)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
Office of the Assistant Attorney General
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 514-4052
Tyler.Becker@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 17, 2026, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 304.

*/s/ Andrea Hyatt*
ANDREA HYATT
Assistant U.S. Attorney