**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305;

Plaintiffs;

*v.*

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and

DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs;

Defendants.

Civil Action No.
25-CV-583-MRD-PAS

## DECLARATION OF MARK ENGELBAUM

Pursuant to 28 U.S.C. § 1746, I, Mark Engelbaum, declare as follows:

1) I am the Assistant Secretary for Human Resources and Administration in the Department of Veterans Affairs (VA or Department) and have served in this role since February 13, 2025. In my current role, I lead the development and oversight of human capital strategies, policies, and practices across the nation. This portfolio includes Administration, Human Capital, Labor-Management Relations, Senior Executive Management, Employee Development, and Manpower Management.

2) I provide this declaration in support of Defendants' Brief in Support of Their Renewed Emergency Motion to Stay Pending Appeal. I make the following statements based upon my personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the facts contained in this declaration.



GOVERNMENT EXHIBIT
A

3) Executive Order (EO) 14251 was issued on March 27, 2025. That same day, VA and numerous other agencies covered by EO 14251 filed a complaint for declaratory relief in the U.S. District Court for the Western District of Texas asking the court to declare agencies covered by EO 14251 were authorized to terminate their CBAs pursuant to EO 14251 and related OPM guidance. *See DOD v. AFGE*, No. 25-cv-001 (W.D. TX). Although this complaint was dismissed by the court on July 23, 2025, prior to its resolution, on April 3, 2025, AFGE and other federal unions initiated litigation against VA and other federal defendants related to EO 14251 and its effect on collective bargaining agreements. *See AFGE v. Trump*, No. 25-cv-3070 (N.D. Cal.). Pursuant to this litigation and consistent with the Office of Personnel Management (OPM) guidance issued in conjunction with EO 14251, VA did not immediately terminate the collective bargaining agreement (CBA) it held with the American Federation of Government Employees (AFGE). As OPM explained in its guidance, "Agencies should not terminate any CBAs until the conclusion of litigation or further guidance from OPM directing such termination." (Decl. of Travis Silva in Supp. of Pls.' Mot. for Prelim. Inj., Ex. L at 1, ECF No. 14-2).

4) Although VA did not immediately terminate the CBA, VA's decision to continue observing the CBA between March 27, 2025, and August 6, 2025 (*i.e.*, when it terminated the collective bargaining agreements it held with all of its national unions, including AFGE), was not an acknowledgement that continued adherence was administratively sustainable. Rather, it was a provisional, revocable measure calibrated to the status of the litigation of EO 14251's validity. Indeed, VA did not simply leave the CBA untouched – prior to August 6, 2025, VA recognized that continuing to follow the CBA was not durably workable and almost immediately took steps to limit the CBA's operative scope. For example, VA began requesting all grievances and arbitrations be held in abeyance until the litigation related to EO 14251 was resolved. VA also held the negotiations for its expiring CBAs with the Service Employees International Union (SEIU) and National Association of Government Employees (NAGE) in abeyance. Further, on about April 25, 2025, VA terminated automatic dues deductions for all employees covered by EO 14251.

5) On June 24, 2025, the U.S. District Court for the Northern District of California issued a preliminary injunction order preventing VA from implementing EO 14251. However, on July 7, 2025, the Court of Appeals for the Ninth Circuit issued a stay of the June 24, 2025, preliminary injunction order, thereby making EO 14251 operative again and allowing VA to implement the EO; on August 1, 2025, the Ninth Circuit issued a stay pending appeal. Thus, while VA had not initially terminated its collective bargaining agreements due to the ongoing litigation initiated

with or immediately after the issuance of EO 14251, as that litigation concluded (*i.e.*, as was the case in Texas on July 23, 2025) or began to resolve in favor of VA and the implementation of EO 14251 (as was the case in California with the Ninth Circuit's stay), VA began to immediately take steps to terminate its contracts. On August 6, 2025, pursuant to EO 14251 and consistent with the Ninth Circuit's stay, VA terminated the AFGE CBA.

6) On September 10, 2025, OPM updated its guidance related to EO 14251 and instructed most agencies covered by EO 14251 to terminate their CBAs pursuant to EO 14251. OPM's guidance on EO 14251, most recently updated on February 12, 2026, and further supplemented on February 17, 2026, continues to advise agencies covered by EO 14251 to terminate their CBAs for all bargaining units impacted by EO 14251.

7) Notwithstanding its parallel litigation in the Northern District of California, AFGE initiated litigation in this Court on November 4, 2025, and, following the District Court's March 13, 2026, Order granting AFGE's motion for preliminary injunction, March 23, 2026, Clarification Order, and March 27, 2026, Enforcement Order, VA reinstated the AFGE CBA and began complying with the CBA's provisions despite the continued application of EO 14215 to VA. However, VA began taking steps to limit the harms caused by complying with the AFGE CBA by again requesting grievances and arbitrations be held in abeyance. VA remained cognizant of the AFGE CBA's August 8, 2026, terminal date, which limited the period in which VA would be forced to comply with the AFGE CBA with respect to employees who are subject to EO 14251 and no longer covered by the Federal Service Labor-Management Relations Statute (FSLMRS) (collectively referred to as Non-Exempted Employees).

8) With respect to the employees who are exempted from EO 14251's coverage and remain subject to the FSLMRS (collectively referred to as Exempted Employees), VA was actively tracking the AFGE CBA terminal date of August 8, 2026, because of the explicit deadlines in the Duration of Agreement provision (i.e., the section 2 requirement that the CBA be reopened and renegotiated by either party no less than 60 and no more 120 days prior to the CBA terminal date of August 8, 2026 to remain in effect) and AFGE's tendency to historically delay CBA negotiations by design and through litigation.

9) On May 19, 2026, VA notified AFGE it intended to reopen and renegotiate the CBA but further advised the CBA could only legally be extended and applied to Exempted Employees since all other VA employees were excluded from the FSLMRS by operation of EO 14251 (i.e., Non-Exempted Employees).

10) Since May 19, 2026, VA has continued to advise AFGE that any new or successor CBA can only apply to Exempted Employees because, by operation of EO 14251, these are the only VA employees covered by the FSLMRS, which is the legal authority for the AFGE CBA. AFGE, by contrast, has asserted to VA that, notwithstanding EO 14251's application to Non-Exempted Employees and those employees' resulting exclusion from the coverage of the FSLMRS, it continues to represent Non-Exempted Employees and AFGE CBA negotiations with VA will cover both Exempted Employees and Non-Exempted Employees. (App'x in Supp. of Defs.' Rep. to Pls.' Mot. to Enforce (Defs.' App.) at 12, 36, ECF No. 58-2. AFGE has not clarified and VA does not know how a contract, whose sole statutory authority is the FSLMRS, can apply to employees who are expressly excluded from the coverage of the FSLMRS.

11) On June 9, 2026, in a communication to VA, AFGE acknowledged that, under Article 47 of the AFGE CBA, AFGE's own proposals are due before bargaining begins, meaning the exchange of proposals precedes negotiations rather than constitutes them. However, AFGE nonetheless refused to make itself available to meet with VA to begin negotiating the ground rules for bargaining a new or successor agreement until July 14, 2026, and AFGE only provided VA with its actual ground rules proposals on July 13, 2026, making it clear AFGE was not resolved to reach an agreement on ground rules in a timely manner and failed to begin the substantive bargaining of a successor agreement under the explicit requirements in the Duration of Agreement article (i.e., "If renegotiation of **an Agreement** is in progress but not completed upon the terminal date of this Agreement, this Agreement will be automatically extended until a new agreement is negotiated.").

12) As of the date of the filing of this declaration, VA and AFGE still have not reached an agreement on ground rules for a new or successor agreement, let alone begun the renegotiation of a new CBA. The parties have only been discussing how to negotiate ground rules, and did not even reach agreement on those "ground rules for the ground rules" within the 30 days. In all likelihood, the parties will soon be at impasse on the ground rules.

13) On July 24, 2026, VA further advised AFGE that because of AFGE's failure to meet the requirements in the CBA's Duration of Agreement provision, the compliance of which was necessary for the CBA to automatically extend beyond its terminal date of August 8, 2026, the CBA would expire for all employees (i.e., Exempted Employees and Non-Exempted Employees) on August 8, 2026. For Non-Exempted Employees, the effect of the CBA's expiration is that no CBA term would apply; for Exempted Employees, the effect of the CBA's expiration is that only the

mandatory subjects of the CBA (e.g., the grievance and arbitration procedure) would continue to apply, while permissive subjects of the CBA (e.g., bargaining below the level of recognition) would no longer be applicable.

14) In a communication to AFGE dated August 4, 2026, the VA wrote: "[I]f AFGE believes, or a court or the FLRA determines, that negotiations have begun as to Non-Exempted Employees, VA hereby ceases negotiations as to Non-Exempted Employees because the Executive Order suspends collective bargaining as to them and the VA is not obligated to enter into a collective-bargaining agreement with AFGE as to Non-Exempted Employees." (Defs.' App. at 5.) Therefore, even if the parties' written correspondence could somehow be considered "negotiations" for purposes of the duration-of-agreement clause, the VA explicitly ended any such "negotiations" before the Master CBA's terminal date.

15) On August 7, 2026, the Court granted AFGE's Motion to Enforce, requiring VA to continue abiding by the AFGE CBA, notwithstanding the CBA's expiration on August 8, 2026, the limited scope of AFGE's requested preliminary injunction to Non-Exempted Employees, and EO 14251's continued application to VA. The Court's August 7, 2026, Order also purports to cover Exempted Employees who are exempted from EO 14251 and have been, at all times, covered by the FSLMRS.

16) The practical impact of the Court's August 7, 2026, Order is that AFGE will control when it comes to the bargaining table and how long negotiations over a new or successor agreement last. AFGE has every incentive to drag out negotiations as long as possible rather than agree to a new agreement that would cover only those employees exempted from Executive Order 14251.

17) In prior declarations, VA has detailed the significant harms caused by continued compliance with the AFGE CBA and the CBA's significant interference with VA's ability to carry out its missions, causing egregious harm to VA and the Veterans it serves. These harms have become and will continue to be increasingly intolerable as the length of time VA is forced to comply with the AFGE CBA that extends indefinitely pursuant to the Court's August 7, 2026, Order. Specifically, VA will continue being forced to:

   a. Continue paying employees to perform union duties (*i.e.*, taxpayer funded union time) during their VA work hours, including healthcare professionals (*e.g.*, physicians, physician assistants, and nurse practitioners) whose work on behalf of AFGE takes them away from their patient care duties and other duties on behalf of

VA. In FY 2025, VA spent nearly $39 million dollars paying VA employees to perform union work.

b. Delay implementing government-wide rules and regulations and Presidential executive orders that conflict with the CBA while the CBA is in effect unless AFGE is willing to negotiate with VA over the implementation of the rule, regulation, and/or executive order. For example, on July 24, 2026, OPM issued government-wide guidance on the final rule amending 5 CFR parts 351, 430 and 537 (*i.e.*, amendments made to the performance appraisal system used for most federal employees), clarifying agencies may implement the final rule after the term of their CBA(s) expires.[1] However, the Court's August 7, 2026, Order prevents VA from implementing the final rule and requires VA to continue expending government time and resources on performance-related grievances for Exempted Employees and Non-Exempted Employees, which would otherwise be prohibited under the amended government-wide rule.

c. Continue negotiating with AFGE at the local level, in addition to the level of recognition (i.e., national level), for all employees, including the Exempted Employees who are purportedly covered by the Court's August 7, 2026, Order. These local negotiations, in addition to national negotiations, require extensive manpower, time, and money, and result in delays before the VA can make changes to employee working conditions. For example, when VA instituted a nationwide policy requiring VA police officers (who are Exempted Employees pursuant to EO 14251) to wear body cameras, VA was forced to engage in bargaining with AFGE at the national level *and* local level (instead of just conducting bargaining at the level of recognition, *i.e.*, the national level). Local negotiations with AFGE over the use of body cameras delayed implementation of this policy in at least one of VA's Veteran Integrated Service Networks (VISN)[2] by over a year and cost VA an additional $1.5 million dollars;

d. Continue negotiating with AFGE regarding mid-term bargaining changes, including changes to the employment conditions of Non-Exempted Employees (*i.e.*, employees no longer subject to the coverage of the FSLMRS). In fiscal year (FY) 2024, VA spent

[1] U.S. Office of Personnel Management, "Collective Bargaining Guidance Concerning the Final Rule on Performance Appraisal for General Schedule, Prevailing Rate, and Certain Other Employees," (July 24, 2026) (available at https://www.opm.gov/chcoc/latest-memos/collective-bargaining-guidance-concerning-the-final-rule-on-performance-appraisal-for-general-schedule-prevailing-rate-and-certain-other-employees.pdf).
[2] VISNs were regional care systems within the Veterans Health Administration (VHA).

approximately $12,000,000 engaging in mid-term bargaining with AFGE and participating in mediation, arbitration and impasse resolution in connection with collective bargaining disputes related to mid-term changes and bargaining.

e. Continue processing grievances and arbitrations filed by AFGE over matters that cover or address Non-Exempted Employees (*i.e.*, employees subject to EO 14251 who are no longer covered by the FSLMRS), all of which consume a significant amount of time and resources. Each grievance arbitration has an approximate administrative cost of $10,000 for VA to litigate in addition to the costs associated with VA employees preparing case files, scheduling and attending arbitrations, coordinating with witnesses and representatives, conducting legal review, preparing for and attending arbitration hearings, and preparing necessary post-arbitration submissions to the arbitrator and FLRA.[3] In 2024, VA spent approximately $9,000,000 in employee compensation (including salary and benefits) for VA and AFGE employee representatives to process grievances pursuant to the negotiated grievance procedure and another $4,000,000 on arbitral fees. As noted above, since EO 14251 was first issued, VA has requested grievances and arbitrations be held in abeyance; however, AFGE has refused almost of all these requests and demanded matters move forward to arbitration. Furthermore, because EO 14251 excludes most of the VA from the FSLMRS — which, once again, AFGE does not contest in this litigation—the FLRA lacks jurisdiction to enforce arbitral awards. VA would therefore spend millions of dollars arbitrating grievances that ultimately have no effect

f. Delay hiring for positions encumbered by Non-Exempted Employees. Article 23 of the CBA includes areas of consideration and minimum posting requirements for job vacancies that delay the hiring process for VA bargaining unit positions and interfere with VA's ability to meet its mission. Although the Secretary of VA implemented an agency-wide policy requiring the hiring process be completed within 30 days to address ongoing staffing and onboarding issues within VA, VA must still comply with these AFGE CBA hiring requirements, which delay VA's ability to fill vacancies, including positions with patient-care duties.

g. Limit its national security functions pursuant to its fourth mission.

[3] This figure does not include the additional time and cost of VA employee travel and hours spent preparing and serving as witnesses.

As addressed in VA's prior declaration, filed on December 19, 2025, the VA/Department of Defense (DoD) Health Resources Sharing and Emergency Operations Act (Public Law 97-174 (1982)) assigned the VA a fourth primary mission to improve the nation's preparedness for national emergencies, including war, terrorism, and natural disasters. Today, this "Fourth Mission" involves developing plans and taking actions to ensure continued service to Veterans, as well as supporting national, state, and local emergency management efforts that includes, but is not limited to, emergency preparedness, supporting emergency management, continuity of service, collaborations, and serving as a key backup medical system to military personnel and their families during wartime operations. In fact, approximately 97% of VA's personnel are required to continue working during a government shutdown. https://department.va.gov/contingency-planning/

18) The Court's August 7, 2026, Order will cause the VA further irreparable harm. First, the Court has, for all practical purposes, extended a moratorium for an indefinite period of time, which VA never previously understood to last beyond the CBA's terminal date of August 8, 2026. As discussed in more detail below, AFGE is currently proposing a negotiating schedule that would extend the current CBA for a minimum of 11 years. Meanwhile the cumulative impacts of the deleterious effects of the CBA will continue to accumulate, including: effectively delaying the implementation of structural reorganizations that are necessary for VA to accomplish its mission; continued diversion of VA resources away from its mission to AFGE (e.g., to pay VA employees to perform union duties and for AFGE representatives to use VA office space and resources); and the continued interference and delay with VA's personnel accountability and implementation of key legislation. These cumulative impacts demonstrate the deleterious effects that continued enforcement of the CBA have on VA.

19) In the current litigation, AFGE does not contest the validity of EO 14251, which excludes VA from the FSLMRS for national security reasons. Despite this, VA is being ordered to comply with the CBA, which limits VA's ability to respond to and implement its national security duties pursuant to its fourth mission. National security events necessarily require flexibility with VA personnel, something that is not afforded by the CBA's obligations. For example, if VA was required to provide services in response to a war or pandemic and VA's health care system was required as a backup medical system, VA would generally still be required to abide by its contractual obligations, as was the case during the COVID-19 pandemic. This is a more serious irreparable harm to VA than that which was articulated in prior declarations filed in connection with this case because, prior to the Court's August 7, 2026, Order, VA understood

the Court's preliminary injunction would only last until August 8, 2026 (i.e., the CBA's terminal date) but now understands the preliminary injunction could last indefinitely (or, consistent with AFGE's proposed bargaining schedule (discussed in more detail below), for more than a decade). When VA believed the preliminary injunction order would only last a few months, it was more confident it could absorb or mitigate the harms caused by the preliminary injunction order (*e.g.*, compliance costs associated with abiding by the CBA). However, as the preliminary injunction order extends, potentially indefinitely, VA will have a continuously harder time mitigating the harms of the Order, greatly increasing the risk that a national security incident could arise that VA is unable to adequately respond to, thereby causing serious irreparable harm to VA and those it serves.

20) The Court's August 7, 2026, Order effectively requires VA to comply with the 2023 CBA for Exempted Employees as well as Non-Exempted Employees for an indefinite period of time. Had the Court not issued its August 7, 2026, Order, VA would not have been required to follow any provision of the CBA for Non-Exempted Employees, while for Exempted Employees, VA would have only been required to follow CBA provisions related to mandatory subjects, but would not have been obligated to abide by any provision addressing permissive subjects (*e.g.*, bargaining below the level of recognition).

21) The impact of the Court's August 7, 2026, Order includes:

a. Preventing VA from complying with EO 14251 and limiting its negotiations over a CBA that only covers Exempted Employees.

b. Requiring VA to spend significant time and resources preparing for and engaging in contract negotiations that are contrary to EO 14251 and which VA anticipates will take many years based on the parties' bargaining history and the disagreement between the parties regarding the scope of CBA negotiations and the substantive provisions of the CBA. Specifically,

i. CBA negotiations between VA and AFGE have historically taken years to complete because negotiating a new master CBA is a complicated, multi-phase process.

ii. The negotiations and agreement on the 2023 CBA spanned from 2017 to 2023. While VA provided AFGE with notice to renegotiate the CBA on December 15, 2017, the parties did not agree on the ground rules for these negotiations until April 2, 2019 (i.e., approximately sixteen months after notice

was first given to AFGE), and only after participating in mediation and receiving assistance from the Federal Service Impasses Panel (FSIP). Thereafter, AFGE filed a significant amount of litigation, including seven national grievances alleging VA engaged in bad faith during the negotiation and mediation process, and the parties were required to receive extensive assistance from the FSIP, resulting in the substantive contract negotiations lasting approximately four years. Furthermore, AFGE was only willing to renegotiate the CBA under a limited reopener that included the renegotiation of 12 of the 67 total articles in the CBA.

iii. The 2011 AFGE CBA (i.e., the CBA in effect before the 2023 agreement was reached) included a more comprehensive renegotiation of the contract; however, those negotiations lasted approximately nine years.

iv. Negotiations for a new AFGE CBA have already run into numerous roadblocks due to AFGE's refusal to meet virtually, only making their bargaining representatives available for negotiations three days a month, AFGE's refusal to make any substantive concessions, and AFGE's refusal to utilize a mediator to assist with ground rules negotiations. As of the date of this declaration, the negotiations for the ground rules remain ongoing and while neither party has declared impasse, impasse appears to be quickly approaching. Once impasse is reached, the parties can utilize FSIP assistance; however, insomuch as FSIP only obtained a full panel on July 9, 2026, after lacking one for approximately a year and a half, the FSIP likely has a substantial backlog to work through and any assistance from FSIP will likely take substantial time to obtain.

v. On August 12, 2026, AFGE proposed the parties devote a *minimum* of four weeks to negotiate each article of the AFGE CBA (but only meeting every other week, thereby requiring two months for each article), effectively providing VA with a minimum eleven-year timeframe before a new CBA would go into effect. AFGE has also proposed that VA pay for the travel expenses of the AFGE bargaining team, a team they are proposing consist of up to 12 members and that VA pay, for each bargaining member, a flat payment of $2,500 per bargaining session (payable directly to AFGE), meaning VA would spend a minimum of $8,200,000 on AFGE's bargaining

expenses alone.

c. The Court's August 7, 2026, Order requires VA to continue abiding by the CBA for Exempted Employees and Non-Exempted Employees without any time limitation. Therefore, the Court's Order effectively requires VA to engage in negotiations with AFGE over matters directly impacted by the litigation pending in the U.S. District Court for the Northern District of California (i.e., where the validity of EO 14251 is being litigated). VA should not be required to engage in negotiations with respect to Non-Exempted Employees and any such requirement would undoubtedly delay and potentially prevent the parties from reaching a meaningful agreement for Exempted Employees.

d. Considering the parties' bargaining history, it is highly unlikely negotiations with AFGE will be accomplished in a shorter timeframe than what was previously done. This is especially true considering AFGE's insistence that any new or successor agreement apply to employees excluded from the FSLMRS' coverage, a position VA adamantly disagrees with and one that is in direct conflict with EO 14251.

e. If the Court's August 7, 2026, Order is stayed, the negotiations over a new CBA only covering Exempted Employees would go much quicker because the 11 articles addressing Title 38 employees and 5 general provisions in the 2023 CBA would not be necessary. Moreover, the number of covered bargaining unit positions (i.e., the VA police officers, firefighters, and security guards exempted from EO 14251's coverage) would significantly decrease, obviating the need for special provisions addressing occupations other than police officers, firefighters and security guards.

22)Requiring VA to abide by an expired CBA, which is inconsistent with EO

14251 and the President's national security determination concerning Non-Exempted Employees, will continue to have a significant and negative impact on VA's operations, budget, and mission-related, national-security work. These harms will continue until the Court's August 7, 2026, Order is stayed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 17, 2026.

MARK ENGELBAUM Digitally signed by MARK ENGELBAUM Date: 2026.08.17 17:37:08 -04'00'

Mark R. Engelbaum