# United States Court of Appeals
## For the First Circuit

---

No. 26-1321

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VETERANS AFFAIRS COUNCIL,

Plaintiffs - Appellees,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A. COLLINS, in the official capacity as U.S. Secretary of Veterans Affairs,

Defendants - Appellants.

---

No. 26-1904

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VETERANS AFFAIRS COUNCIL,

Plaintiffs - Appellees,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A. COLLINS, in the official capacity as U.S. Secretary of Veterans Affairs,

Defendants - Appellants.

Before

Barron, Chief Judge,
Aframe and Dunlap, Circuit Judges.

**ORDER OF COURT**

Entered: October 2, 2026

This is the second time the U.S. Department of Veterans Affairs ("VA") and its Secretary, Douglas A. Collins, (collectively, the "defendants") have moved for us to stay an order of the District Court in this case. We assume the reader's familiarity with the facts and procedural history as we last recounted them. See Am. Fed'n of Gov't Emps. Loc. 2305 v. U.S. Dep't of Veterans Affs. (AFGE III), 177 F.4th 1, 5-10 (1st Cir. 2026). We thus offer a less comprehensive summary, adding such facts and procedural developments as bear directly on the stay motion before us. We then turn to the stay motion itself.

**I.**

On November 4, 2025, the American Federation of Government Employees Local 2305 and the American Federation of Government Employees National Veterans Affairs Council (collectively, the "plaintiffs") filed a complaint in the U.S. District Court for the District of Rhode Island alleging that the defendants unlawfully terminated the Master Collective Bargaining Agreement ("CBA") between them and the VA on August 6, 2025. Specifically, the plaintiffs contended that the defendants' termination of the CBA violated the Administrative Procedure Act, the First Amendment's protection against retaliation, and the equal protection component of the Due Process Clause of the Fifth Amendment. The plaintiffs principally sought a declaratory judgment and a permanent injunction preventing the defendants from "implementing or enforcing the August 6 [t]ermination" of the CBA.

On March 13, 2026, the District Court granted the plaintiffs' motion for a preliminary injunction, ordering that the defendants "shall reinstate the . . . CBA -- as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the . . . CBA -- for the remainder of the agreed-upon term provided in the . . . CBA." In the following weeks, the District Court granted the defendants' motion to clarify and the plaintiffs' motion to enforce the preliminary injunction. In its order granting the motion to enforce ("the first enforcement order"), the District Court stated that the defendants' attempted re-termination of the CBA was unlawful and "shall not be given any force or effect." The order further required that "[t]he [d]efendants' reinstatement of and compliance with the . . . CBA . . . be in both form and

substance" and that the defendants continue processing "the currently pending grievances and arbitrations submitted under the . . . CBA."

The defendants then filed in this Court a motion for a stay pending appeal of both the preliminary injunction and the first enforcement order. AFGE III, 177 F.4th at 10. On May 16, 2026, we granted the defendants' motion in part as to the portion of the District Court's order directing them to "'compl[y] with the . . . CBA . . . in both form and substance,' as well as its directive that the defendants 'continue to . . . process[]' 'the currently pending grievances and arbitrations submitted under the . . . CBA.'" Id. at 21. We otherwise denied the motion. Id.

Following our decision on the defendants' first stay motion, the plaintiffs again moved the District Court to enforce the preliminary injunction, arguing that the defendants violated it by announcing their intention to consider the CBA terminated for all VA employees as of August 8, 2026. On August 7, 2026, the District Court issued an order granting the plaintiffs' second motion to enforce ("the second enforcement order").

The District Court first observed that the preliminary injunction ordered the defendants to reinstate the CBA "for the remainder of the agreed-upon term provided within the contract." The District Court determined that "the agreed-upon term provided within the . . . CBA" is defined by the CBA's "Duration of Agreement provision." That provision states, in relevant part:

> This Agreement shall remain in full force and effect for a period of three years after its effective date. It shall be automatically renewed for one year periods unless either party gives the other party notice of its intention to renegotiate this Agreement no less than sixty nor more than one hundred twenty days prior to its termination date. Negotiations shall begin no later than 30 days after these conditions have been met. If renegotiation of an Agreement is in progress but not completed upon the terminal date of this Agreement, this Agreement will be automatically extended until a new agreement is negotiated.

The District Court then concluded that "the conditions of the Duration of Agreement" provision for the CBA's automatic extension were "satisfied."

In so concluding, the District Court found that the parties had engaged in "correspondence . . . directly related to the [d]efendants' notice of intent to renegotiate the . . . CBA (rather than allow it to auto-renew as is on August 8)" and, further, that the parties exchanged "communications . . . within the 30 days immediately following the [d]efendants' announcement of their intent to renegotiate [that] were laser-focused on negotiations." Thus, the District Court found that "[n]either party allowed the negotiations to languish" at the time the CBA had been set to terminate. Accordingly, the District Court concluded that the conditions for the CBA's automatic extension were satisfied and that the defendants' announcement of their intent to consider the CBA terminated as of August 8, 2026, was "in direct contravention of" the preliminary

injunction's directive that the CBA "remain in effect for the duration of the agreed-upon term of the contract."

The defendants timely appealed the second enforcement order and moved the District Court to stay that order pending appeal. After the District Court denied a stay, the defendants filed in this Court a motion for a stay pending appeal of the second enforcement order.

## II.

"A stay is an extraordinary intervention into the usual process of appellate adjudication." AFGE III, 177 F.4th at 10 (citing New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025)). As the movants, the defendants bear the burden to "(1) make 'a strong showing' that [they are] likely to succeed on the merits of [their] appeal and also show that (2) [they] 'will be irreparably injured absent a stay'; (3) the issuance of the stay will not 'substantially injure the other parties interested in the proceeding'; and (4) the public interest weighs in favor of a stay." California v. Trump, 183 F.4th 52, 63 (1st Cir. 2026) (quoting Washington v. HUD, 171 F.4th 473, 488 (1st Cir. 2026)). "We review legal questions de novo." AFGE III, 177 F.4th at 10. We address each factor in turn.

## III.

Beginning with the defendants' likelihood of success on the merits, we assume that the parties do not dispute that we have appellate jurisdiction over the District Court's order only if it was an order "continuing" or "modifying" its preliminary injunction. 28 U.S.C. § 1292(a)(1). Moreover, we need not decide whether the second enforcement order likely "continu[ed]" the preliminary injunction because we conclude that, at a minimum, it likely "modif[ied]" it. Id.

We have recognized that "an order modifies an injunction" where it "substantially readjusts the legal relations of the parties . . . and does not relate simply to the conduct or progress of litigation." Morales Feliciano v. Rullan, 303 F.3d 1, 7 (1st Cir. 2002) (citation omitted). By contrast, an order does not modify an earlier injunction if the order's contents are "simply another way of expressing what is reasonably to be expected from the" injunction and "do no more than identify particular areas in which [compliance] is required" without "modify[ing] the status quo in any meaningful way." Id. at 8-9. In assessing whether an order modifies an injunction, we examine its "operative terms and effect, not its vocabulary and label." Fryzel v. Mortg. Elec. Registration Sys., Inc., 719 F.3d 40, 43 (1st Cir. 2013) (Souter, J.).

We also draw guidance from decisions of our sister circuits, which have looked to, among other factors, whether the subsequent order resolves new issues not previously argued or presented. See, e.g., Hunter v. Hamilton Cnty. Bd. of Elections, 635 F.3d 219, 246-47 (6th Cir. 2011) (an order modifies a prior injunction where it "resolv[es] disputed facts" or relies on facts that "did not exist until well after" the injunction issued and that it did "not discuss[]"); Am. River Transp. Co.

v. Ryan, 579 F.3d 820, 824 (7th Cir. 2009) (an order modifies a prior injunction where it "alters the legal relationship between the parties" or "raises new substantive issues or material" (citations omitted)); see also 16 Wright & Miller's Federal Practice & Procedure § 3924.2 (3d ed., Apr. 2026 update) ("[T]he line between construction and modification may be drawn by looking to the presentation of matters not considered in the original injunction proceedings, an arguable effect on the legal relationships established by the injunction, or possibly the risk of serious, perhaps irreparable consequences.").

The parties dispute whether the preliminary injunction's reference to the CBA's "agreed-upon term" includes not only the CBA's initial three-year time period that ended on August 8, 2026, but also any extension under the terms of the CBA's Duration of Agreement provision. Even assuming that the preliminary injunction did include the possibility of an extension under the CBA's Duration of Agreement provision, we conclude that the second enforcement order likely modified that injunction.

On this score, the defendants contend that the second enforcement order "reaches well beyond the original injunction's scope by imposing on the parties, on pain of contempt, the [D]istrict [C]ourt's resolution of a disputed contract-interpretation question," namely, whether the parties' communications "automatically extend[ed] the [CBA]." That dispute, the defendants assert, is "distinct from" the dispute the District Court addressed in the preliminary injunction: whether the defendants' "initial CBA termination was unlawful." We agree.

The second enforcement order determined that "the conditions of the Duration of Agreement" provision for the CBA's automatic extension were "satisfied." Under the terms of the CBA, drawing that conclusion required the District Court to find that "either party g[ave] the other party notice of its intention to renegotiate [the CBA] no less than sixty nor more than one hundred twenty days prior to its termination date," that "[n]egotiations . . . beg[a]n no later than 30 days after these conditions [were] met," and that "renegotiation of [a CBA] [wa]s in progress but not completed upon the terminal date of [the CBA]." The preliminary injunction did not make such findings and determinations. Indeed, we do not see how it could have given that it issued on March 13, 2026, before the 120-day period during which the facts triggering automatic extension of the CBA must occur. Accordingly, the second enforcement order nowhere suggests that its conclusion that the CBA's conditions for automatic extension were "satisfied" and its related factual findings were merely interpretations of determinations made in the preliminary injunction. Further, the parties hotly contest the findings in the second enforcement order about the timing and characterization of the parties' communications.

As such, the second enforcement order did not merely "express[] what [wa]s reasonably to be expected from the" preliminary injunction. Morales Feliciano, 303 F.3d at 8. Rather, it "raise[d] new substantive issues" and "resolv[ed] disputed facts" that "did not exist until well after" the

preliminary injunction issued. Am. River Transp. Co., 579 F.3d at 824; Hunter, 635 F.3d at 246-47. And, in determining that the parties' communications had automatically extended the CBA, we think the second enforcement order "substantially readjust[ed] the legal relations of the parties." Morales Feliciano, 303 F.3d at 7. Thus, the second enforcement order likely modified the preliminary injunction, and we likely have appellate jurisdiction to review that order.[1]

## IV.

Having concluded that we likely possess appellate jurisdiction, we turn to the defendants' argument that the District Court likely lacked jurisdiction to issue the second enforcement order. No party disputes that the District Court lacked jurisdiction to modify the preliminary injunction once the defendants appealed that injunction, absent a remand. See Contour Design, Inc. v. Chance Mold Steel Co., 649 F.3d 31, 34 (1st Cir. 2011) ("[O]nce an appeal has been taken, a district court ordinarily may not alter the judgment under review, without leave of the appellate court."). Accordingly, we conclude that the defendants are likely to succeed on the merits of their appeal of the second enforcement order because the District Court likely lacked jurisdiction to issue it. We therefore have no need to address the defendants' separate contention that the District Court lacked jurisdiction to issue the second enforcement order under Coggeshall Development Corp. v. Diamond, 884 F.2d 1 (1st Cir. 1989), for reasons akin to those that led us to conclude that the District Court likely lacked jurisdiction under Coggeshall to modify the preliminary injunction in the first enforcement order by appearing to order specific performance of the CBA's terms, see AFGE III, 177 F.4th at 17-18.

[1] In our prior decision, we declined to treat a portion of the first enforcement order as a modification of the preliminary injunction. See AFGE III, 177 F.4th at 19-20. In that portion, the District Court determined that the defendants' "second termination of the CBA [was] unlawful and therefore ineffective." Id. at 19. We explained that the defendants had not developed an argument that this portion was a modification beyond conclusorily stating that it "greatly expanded the injunction's scope." Id. at 19-20. And we noted that the defendants' "failure [wa]s conspicuous" because they "did develop such an argument as to the 'compliance' portion of the enforcement order" that we ultimately stayed. Id. at 20. We did note that "a mere disagreement about whether the re-termination was in fact lawful would appear to be just a disagreement about whether the defendants complied with the injunction as clarified." Id. But we made that observation in the context of the defendants having made no developed argument that the nature of the disagreement that the District Court resolved in the first enforcement order made that portion of the order a modification rather than merely the enforcement of a determination about what constituted an unlawful termination on which the preliminary injunction had been premised. Here, by contrast, the defendants have developed an argument that "the [D]istrict [C]ourt's resolution of [the] disputed contract-interpretation question" of whether the parties' communications "automatically extend[ed] the [CBA]" concerned a dispute "entirely distinct from the claim underlying the preliminary injunction." And that argument likely has merit for the reasons set forth above.

## V.

The remaining stay factors likewise favor the defendants. To begin, the defendants are "likely to suffer irreparable harm from the District Court['s] entry of" an order that "likely exceed[s]" its jurisdiction and that appears to require them to treat the CBA as reinstated and operative even past the August 8, 2026, termination date. See Trump v. CASA, Inc., 606 U.S. 831, 860-61 (2025). For similar reasons, the balance of equities and the public interest, which "merge when the Government is the opposing party," see Nken v. Holder, 556 U.S. 418, 435 (2009), favor the defendants as well. As for the plaintiffs' interests, we do not think they can have a particularly weighty interest in their reliance on an enforcement order the District Court likely lacked jurisdiction to enter. Cf. AFGE III, 177 F.4th at 13 (accounting for "the public's interest in the CBA . . . being kept in place as a binding agreement until lawfully terminated" given our conclusion that the defendants had failed to show "that the preliminary injunction likely was issued in error").

We recognize that there remains an unresolved dispute between the parties as to whether their communications satisfied the CBA's automatic extension provision. But that is a function of the fact that the preliminary injunction's directive to "reinstate" the CBA leaves open potential questions of interpretation of and compliance with the CBA. As we observed in our prior decision, "[t]he duty to 'reinstate' the CBA as a binding agreement" and a "duty not to violate the reinstated CBA in any particular instance" are "distinct obligations," because "an individual breach would not in and of itself suffice to show that the CBA had not been reinstated as a binding agreement." AFGE III, 177 F.4th at 16, 18.

## VI.

For the reasons set forth above, the motion for a stay of the second enforcement order is **granted**.[2]

By the Court:

Anastasia Dubrovsky, Clerk

cc:
Hon. Melissa R. DuBose
Hanorah Tyer-Witek, Clerk, United States District Court for the District of Rhode Island

---

[2] Because we grant a stay of the second enforcement order, we need not address the defendants' request, "[i]n the alternative to a stay pending appeal" of the second enforcement order, "for a stay pending appeal [of the preliminary injunction] given the injunction's now-indefinite term." We express no view as to the effect of this stay on the defendants' pending appeal of the preliminary injunction.

Carly Beauvais Iafrate
Travis Silva
Brook Dooley
JiLon Li
Alexandra Wheeler
David Zimmer
Edwina Bullard Clarke
Lauren S. Zurier
Kevin M. Bolan
Melissa N. Patterson
Weili Justin Shaw
Joshua Koppel
Benjamin Thomas Takemoto
Tyler J. Becker
Andrea Lena Hyatt
Taylor L. Reeves